UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| PAUL G. AMANN,<br><br>Plaintiff,<br><br>v.<br><br>OFFICE OF THE UTAH ATTORNEY GENERAL; SEAN REYES; BRIDGET ROMANO; CRAIG BARLOW; SPENCER AUSTIN; TYLER GREEN; and DANIEL WIDDISON,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER DENYING MR. HANKS' SECOND MOTION TO QUASH SUBPOENA TO R. JASON HANKS (DOC. NO. 132)**<br><br>Case No. 2:18-cv-00341-JNP-DAO<br><br>Judge Jill N. Parrish<br><br>Magistrate Judge Daphne A. Oberg |

Before the court is pro se nonparty Robert Jason Hanks' Objection to and Motion to Quash Second Subpoena to R. Jason Hanks ("Hanks' Second Mot. to Quash," Doc. No. 132), which seeks to quash a subpoena for production of documents issued to Mr. Hanks by Defendant Office of the Utah Attorney General ("AGO"). The court held a hearing on the motion on May 26, 2021. For the reasons stated at the hearing and set forth below, the court DENIES the motion but orders the AGO and Mr. Hanks to meet and confer regarding time limitations and search terms to reduce the burden of responding to the subpoena.

Mr. Hanks and Plaintiff Paul G. Amann are both attorneys and former AGO employees. In this case, Mr. Amann alleges he was wrongfully terminated by the AGO in retaliation for whistleblowing activities, including his support of Mr. Hanks' sexual harassment claim against the AGO. (Second Am. Compl. ¶¶ 56, 74, 134–36, Doc. No. 89.) The AGO asserts Mr. Amann was terminated for nonretaliatory reasons, including his alleged harassment of another employee,

1

Cynthia Poulson, in which Mr. Hanks participated. (*See* Opp'n. to Pl.'s Mot. to Quash Subpoena Duces Tecum 2, Doc. No. 105.)

The AGO's subpoena to Mr. Hanks contains three requests for the following documents: (1) correspondence between Mr. Amann and Mr. Hanks from December 1, 2013 to the present concerning specified topics, including the AGO, Mr. Amann's and Mr. Hanks' alleged whistleblowing activities, Cynthia Poulson, and Mr. Amann's termination; (2) documents regarding Cynthia Poulsen; and (3) documents regarding Mr. Amann's participation in or support of Mr. Hanks' claims of sexual harassment against the AGO. (Ex. A to Def.'s Opp'n to Hanks' Second Mot. to Quash, Subpoena, Doc. No. 136-1 at 6.)

Mr. Hanks and Mr. Amann have both filed prior, unsuccessful motions to quash this same subpoena. The court denied Mr. Hanks' first motion to quash the subpoena, which alleged insufficient service. (Mot. to Quash Subpoena to R. Jason Hanks, Doc. No. 122; Order Den. Mot. to Quash Subpoena to R. Jason Hanks, Doc. No. 129). The court also denied Mr. Amann's motion to quash the subpoena, which argued the subpoena sought irrelevant documents and was intended to harass and embarrass him. (Pl.'s Mot. to Quash Subpoena Duces Tecum, Doc. No. 104); Order Den. Pl.'s Mot to Quash Subpoena Duces Tecum and Short Form Mot. for Protective Order, doc. No. 114.) The district judge overruled Mr. Amann's objection to that order. (Order Affirming Magistrate Judge Order Den. Pl.'s Mot to Quash Subpoena Duces Tecum and Short Form Mot. for Protective Order, Doc. No. 141.)

Mr. Hanks now challenges the subpoena on the grounds that it is unduly burdensome, overbroad, irrelevant, and seeks privileged communications. (Hanks' Second Mot. to Quash 6–7, Doc. No. 132.) He estimates he has 400,000 emails, hundreds of gigabytes of computer data, and dozens of boxes in storage, and he asserts responding to the subpoena would require fifty to

one hundred hours of his time.  (*Id.* at 4.)  He claims this process would take him six months to a year because he works eleven hours a day and has a family.  (*Id.*)  If he is required to comply, he argues the AGO should pay him his attorney billing rate of $56 per hour for his time, for a total of $2,800 to $5,600.  (*Id.*)  He also argues the request for nine years of communications is overbroad and irrelevant, and he asserts the AGO can and should obtain the requested documents from Mr. Amann instead.  (*Id.* at 4–5.)  Finally, he contends his communications with Mr. Amann are protected by attorney-client privilege because he and Mr. Amann provided legal advice to each other.  (*Id.* at 7.)

In an effort to reduce the burden of responding to the subpoena, the AGO offered to pay for a neutral, third-party vendor to perform the initial search for emails between Mr. Hanks and Mr. Amann, and then to allow Mr. Hanks to review the emails for responsiveness and privilege.  (Opp'n to Hanks' Second Mot. to Quash 3, Doc. No. 136.)  Mr. Hanks rejected this offer.  (*Id.*)  At the hearing, the AGO also agreed to limit the timeframe of Requests 2 and 3 in the subpoena and to propose search terms to reduce Mr. Hanks' burden of responding.

Rule 45 of the Federal Rules of Civil Procedure requires a court to quash or modify a subpoena if it calls for disclosure of privileged matter or subjects a person to undue burden, among other reasons.  Fed. R. Civ. P. 45(d)(3)(A)(iii)–(iv).  This rule also requires the party issuing the subpoena to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."  Fed. R. Civ. P. 45(d)(1).  An order enforcing a subpoena "must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance."  Fed. R. Civ. P. 45(d)(2)(B)(ii).

As an initial matter, overbreadth and irrelevance are not included among the grounds to quash a subpoena listed in Rule 45.  *See* Fed. R. Civ. P. 45(d)(3)(A)–(B).  Moreover, the court

has already determined this subpoena seeks documents relevant to the claims and defenses in this case and is not overbroad. (Order Den. Pl.'s Mot to Quash Subpoena Duces Tecum and Short Form Mot. for Protective Order, doc. No. 114; Order Overruling Obj. to Magistrate Judge Order, Doc. No. 141.) All three requests in the subpoena are relevant to the parties' claims and defenses, including Mr. Amann's claim that he was retaliated against for supporting Mr. Hanks' sexual harassment claim and the AGO's defense that Mr. Amann was, instead, terminated for harassing Ms. Poulson. The timeframe from 2013 to the present is also relevant for the reasons stated in the prior orders, and the AGO has agreed to propose greater time limitations for the requests within this broader timeframe.

     Mr. Hanks has not shown the subpoena is unduly burdensome or will impose significant expense. Mr. Hanks has not alleged a monetary cost, but he argues it will take him significant time to search his emails, computer files, and boxes of documents. Mr. Hanks' claim that compliance will require fifty to one hundred hours of work is not supported by the information he provided to the court. The universe of potentially responsive emails is limited to those concerning Mr. Amann and Ms. Poulson, which may be obtained by performing a simple search for those individuals' names and/or email addresses. Because Mr. Hanks has provided no estimate of how many such emails exist, the court has no basis to find that reviewing and producing this limited subset of emails would impose an undue burden. Moreover, Mr. Hanks cannot fairly complain about the burden of conducting the initial search where he rejected the AGO's offer to pay a neutral third party to perform this step. Mr. Hanks also failed to explain why a search of his computer files or boxes would require fifty to one hundred hours. Thus, Mr. Hanks has not demonstrated responding to the subpoena would impose an undue burden or significant expense.

The AGO, on the other hand, did adequately explain why it cannot obtain the requested documents directly from Mr. Amann. Mr. Amann testified in his deposition that he deleted some of his emails with Mr. Hanks from the relevant time period. (Ex. C to Opp'n to Hanks' Second Mot. to Quash, Dep. of Paul G. Amann ("Amann Dep.") 322:14–323:2, Doc. No. 136-3.) Because there is no way for the AGO to determine which emails Mr. Amann deleted, it is reasonable for the AGO to subpoena these documents from Mr. Hanks as an alternative source. Additionally, the second and third requests in the subpoena seek documents other than communications with Mr. Amann.

Finally, Mr. Hanks has failed to establish the requested documents are protected by attorney-client privilege. "[T]he mere fact that an attorney was involved in a communication does not automatically render the communication subject to the attorney-client privilege, rather, the communication between a lawyer and client must relate to legal advice or strategy sought by the client." *In re Grand Jury Proceedings*, 616 F.3d 1172, 1182 (10th Cir. 2010) (internal quotation marks omitted) (citations omitted). Mr. Hanks has not provided information showing an attorney-client relationship with Mr. Amann which would justify a protective order covering all communications with Mr. Amann. In fact, he also has not shown, at this stage, that any of the communications at issue were made for the purpose of providing legal advice to Mr. Amann. If Mr. Hanks believes specific communications are privileged, he must produce a privilege log.

For these reasons, the court DENIES Mr. Hanks' second motion to quash the subpoena (Doc. No. 132). The parties are ORDERED to meet and confer regarding time limitations and

5

search terms by June 2, 2021. The court will hold a follow-up hearing on June 2, 2021, at 4:00 p.m. to resolve any remaining disputes and to set a deadline for compliance.

DATED this 28th day of May, 2021.

BY THE COURT:

_____
Daphne A. Oberg
United States Magistrate Judge