FILED
2022 JAN 25
CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| PAUL G. AMANN,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>OFFICE OF THE UTAH ATTORNEY GENERAL; SEAN REYES; BRIDGET ROMANO; CRAIG BARLOW; SPENCER AUSTIN; TYLER GREEN; and DANIEL WIDDISON,<br><br>　　　　　　　Defendants. | **MEMORANDUM DECISION AND ORDER SUSTAINING IN PART AND OVERRULING IN PART PLAINTIFF'S OBJECTIONS**<br><br>Case No. 2:18-cv-00341-JNP-DAO<br><br>Judge Jill N. Parrish |

Plaintiff Paul G. Amann sued the Office of the Utah Attorney General ("OAG"), Utah Attorney General Sean Reyes, Bridget Romano, Craig Barlow, Tyler Green, and Daniel Widdison (collectively, "Defendants"), alleging violations of the Utah Protection of Public Employees Act, UTAH CODE §§ 67-21-1 *et seq.*, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, among other claims. Before the court are Amann's objections to the magistrate judge's orders denying his motion to compel the deposition of Sean Reyes (ECF No. 180); finding his motion to compel Defendants to produce a privilege log moot and awarding attorney's fees to Defendants (ECF No. 184); and awarding attorney's fees to Defendants for the expenses associated with defending against his motion to compel subpoena responses (ECF No. 185). ECF No. 187.

The court SUSTAINS Amann's objections to the magistrate judge's orders denying his motion to compel the deposition of Reyes (ECF No. 180) and awarding attorney's fees to Defendants for the expenses associated with defending against Amann's motion to compel subpoena responses (ECF No. 185). The court OVERRULES Amann's objection to the magistrate

judge's order finding his motion to compel production of Defendants' privilege log moot and awarding attorney's fees to Defendants (ECF No. 184).

## BACKGROUND

In August 1998, OAG hired Paul Amann as an attorney. Amann served in that role until December 2, 2016, at which time OAG terminated Amann's employment. Amann subsequently sued OAG and Attorney General Sean Reyes, Chief Civil Deputy Attorney General Bridget Romano, Criminal Deputy Craig Barlow, Chief Criminal Deputy Spencer Austin, Solicitor General Tyler Green, and Assistant Attorney General Daniel Widdison,[1] alleging violations of the Utah Protection of Public Employees Act, UTAH CODE §§ 67-21-1 *et seq.*, and unlawful retaliation in violation of Title VII, 42 U.S.C. §§ 2000e *et seq.*, among other claims.

On May 29, 2018, the court, pursuant to 28 U.S.C. § 636(b)(1)(A), referred the case so that a magistrate judge would hear and determine all nondispositive pretrial matters. Three such matters are at the core of the present dispute.

First, on July 30, 2021, Amann moved the magistrate judge to compel the deposition of Sean Reyes. To demonstrate Reyes's knowledge of and involvement in Amann's termination, Amann attached various exhibits to his motion, including letters regarding Amann's termination on which Reyes was copied and a text message that Reyes sent to his campaign manager, Alan Crooks, on September 7, 2016—the day before Romano sent Amann a Notice of Intent to Terminate Employment—in which Reyes wrote, "Amann reneged on our deal so he wants to 'burn us to the ground,'" and Crooks responded, "Amann Really??!! What an idiot!" ECF No. 157-2.

---

[1] The positions listed are those in which the individuals served during the times relevant to Amann's claims.

Defendants opposed Amann's motion and attached to their opposition a declaration from Romano, in which she testified that it was Green—and not Reyes—"who reviewed the evidence supporting the allegations in the Notice of Intent and determined that Mr. Amann's employment should be terminated for cause." ECF No. 160-1 at 3. Attached to Romano's declaration was an email chain between Romano and Reyes in which Romano attached Amann's reply to the Notice of Intent to Terminate and recommended that Reyes designate Tyler Green to review the evidence and make a final determination regarding whether Amann should be terminated. Reyes replied, "Let's discuss a little more but I think Tyler would be a good choice." *Id.* at Ex. 2.

On August 9, 2021, Amann filed another nondispositive motion, this time requesting that the court compel Defendants to produce a privilege log identifying all of the documents that they were withholding on the basis of privilege. The following morning, Defendants' counsel provided Amann's counsel with a copy of an eleven-page privilege log. Defendants' counsel expressed surprise that the motion had been filed because they had not communicated with Amann's counsel about the log since a telephone call in mid-July, during which they had informed Amann's counsel that they expected to produce the log by July 23, but that it was a lengthy task. Indeed, "[a]t no time prior to August 9 did [Amann's] counsel inform [Defendants] that [Amann] was about to file a motion if AGO did not produce the privilege log by a certain date." ECF No. 195 at 6. Defendants requested that Amann's counsel withdraw her motion to compel production of the privilege log, but Amann's counsel did not respond to that request. Accordingly, Defendants filed an opposition to Amann's motion.

On August 9, 2021, Amann also filed a motion to compel Defendants to respond to a subpoena that was served in April 2021. The subpoena sought production of communications concerning Amann from Reyes's personal email addresses and cell phone. In the motion, Amann's

counsel stated that, before filing the motion, she spoke with Defendants' counsel on the phone on July 13, 2021, and "asked if Defendants would reconsider the objection to producing Mr. Reyes' personal emails, but they have not." ECF No. 164 at 2 n.1. In addition, to support his motion, Amann attached multiple emails from Reyes's personal email accounts in which Amann was mentioned, as well as a text message that Reyes sent on December 7, 2016, to Parker Douglas, OAG's chief of staff. In the text message, Reyes wrote, in part, "This job has stopped being fun for me six months ago. I'm so tired, I can't tell you. Maybe it's because I'm sick in my room still drafting documents when I need to be sleeping, we've got a crapload of people gunning for us from all sides, and my own generals (the people I trust most and rely on most) are causing me more stress than Paul A and Jason Hanks." ECF No. 164-6. Defendants opposed the motion.

On September 27, 2021, the magistrate judge heard oral argument on these three motions. The magistrate judge denied without prejudice Amann's motion to compel Reyes to sit for a deposition (ECF No. 180), denied as moot Amann's motion to compel production of Defendants' privilege log and awarded attorney's fees associated with opposing that motion to Defendants (ECF No. 184), and granted in part and denied in part Amann's motion to compel the production of communications concerning Amann from Reyes's personal email addresses and cell phone (ECF No. 185). The magistrate judge also awarded to Defendants attorney's fees associated with the latter motion.

Amann objects to all of these decisions, except for the magistrate judge's decision to grant in part and deny in part his motion to compel production of communications from Reyes's personal email addresses and cell phone. ECF No. 187.

## LEGAL STANDARD

"Under Federal Rule of Civil Procedure 72(a), a district court is required to consider timely objections to a nondispositive order from a magistrate judge and modify or set aside any part of the order that is clearly erroneous or is contrary to law." *Vivint, Inc. v. Alarm.com, Inc.*, No. 2:15-cv-392, 2020 U.S. Dist. LEXIS 141702, at *15 (D. Utah Aug. 6, 2020) (internal quotation marks and alterations omitted); *see also* 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."). "The 'clearly erroneous' standard under Rule 72(a) applies to factual findings," *Vivint, Inc.*, 2020 U.S. Dist. LEXIS 141702, at *15 (citation omitted), and it "requires that the reviewing court affirm unless it 'on the entire evidence is left with the definite and firm conviction that a mistake has been committed,'" *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). "The 'contrary to law' standard permits 'plenary review as to matters of law,'" *Cooper v. Noble Casing, Inc.*, Nos. 15-cv-1907-WJM-CBS, 16-cv-2799-WJM-CBS, 2017 U.S. Dist. LEXIS 223227, at *13–14 (D. Colo. Oct. 27, 2017) (quoting 12 Charles Alan Wright *et al.*, *Federal Practice & Procedure* § 3069 (2d ed., Apr. 2016 update)), and "[a] magistrate judge's order is contrary to law if it 'fails to apply or misapplies relevant statutes, case law or rules of procedure,'" *Hawkins v. Ghiz*, No. 2:18-cv-00466-DBB-JCB, 2021 U.S. Dist. LEXIS 19484, at *3 (D. Utah Jan. 29, 2021) (citation omitted).

## ANALYSIS

### I.    Amann's Motion to Compel the Deposition of Sean Reyes (ECF No. 157)

Amann moved to compel the deposition of Sean Reyes. The magistrate judge denied this motion without prejudice, finding that, although "Mr. Amann presented evidence that Attorney

General Reyes had some personal knowledge of the investigation and termination, . . . Mr. Amann has not shown a deposition of Attorney General Reyes is essential to his case, where he has presented no evidence of Attorney General Reyes' direct involvement in his termination and alternative sources of information are available." ECF No. 180 at 2. Amann objects to the magistrate judge's order denying his motion to compel Reyes's deposition, arguing, in essence, that such a deposition is essential to ascertain the degree of Reyes's involvement in the investigation and termination of Amann, and that he has produced sufficient evidence of Reyes's involvement to justify deposing Reyes.

In response, Defendants argue that the magistrate judge's decision was neither clearly erroneous nor contrary to law because the magistrate judge applied the proper standard when she evaluated the motion and "properly concluded Amann failed to meet [that] test, observing that 'information regarding the reasons for Mr. Amann's termination can be obtained from alternative sources, including Ms. Romano and Mr. Green.'" ECF No. 195 at 2–3 (citation omitted). Defendants further argue that the magistrate judge's order is also supported by caselaw because "[n]one of the evidence [Amann] provided with his motion to compel disputes the testimony that General Reyes was not the decisionmaker." *Id.* at 3. Moreover, Defendants contend that Amann's argument that he cannot get evidence of Reyes's involvement without deposing him is unconvincing because he can ask—and has asked—others about Reyes's involvement in his termination. Defendants assert that "[d]espite the extensive discovery [already] conducted by [Amann], he has found no evidence showing General Reyes was directly involved in firing [him]." *Id.* at 5. The court disagrees and concludes that the magistrate judge's order was clearly erroneous and contrary to law.

As the magistrate judge properly noted, district courts in the Tenth Circuit "have required parties seeking to depose high-ranking government officials to 'demonstrate whether (1) the official has first-hand knowledge related to the claim being litigated[,] (2) the testimony will likely lead to the discovery of admissible evidence, (3) the deposition is essential to the party's case, and (4) the information cannot be obtained from an alternative source or via less burdensome means." *FTC v. Nudge, LLC*, No. 2:19-cv-00867-DBB-DAO, 2020 U.S. Dist. LEXIS 218269, at *6 (D. Utah Nov. 20, 2020) (quoting *White v. City & Cnty. of Denver*, No. 13-cv-01761, 2014 U.S. Dist. LEXIS 95987, at *7 (D. Colo. July 10, 2014)). The court concludes, however, that the magistrate judge misapplied that test to the facts of this case. *See Hawkins*, 2021 U.S. Dist. LEXIS 19484, at *3.

First, the magistrate judge correctly noted that Amann has presented evidence that Reyes had personal knowledge of the investigation into Amann's conduct and Amann's ultimate termination. ECF No. 180 at 2. However, contrary to what the magistrate judge's decision suggests, the evidence of Reyes's personal knowledge of—and interest in—Amann's situation is far more than a few emails regarding Amann's investigation and termination on which Reyes was copied. Specifically, Amann produced a text exchange between Reyes and Alan Crooks, Reyes's campaign manager, in which Reyes wrote, "Amann reneged on our deal so he wants to 'burn us to the ground.'" ECF No. 157-2. Crooks responded, "Amann Really??!! What an idiot!" *Id.* This exchange occurred on September 7, 2016. The following day, September 8, 2016, Romano "issued Plaintiff Paul Amann a letter titled 'Notice of Intent to Terminate Employment.'" ECF No. 160-1 at 2.

Moreover, Defendants produced an email chain between Reyes and Romano in which Romano attached Amann's reply to the Notice of Intent to Terminate Employment and

recommended that Reyes designate Tyler Green to consider Amann's response, rather than Reyes considering the response himself. Reyes responded, "Let's discuss a little more but I think Tyler would be a good choice." ECF No. 160-1 at Ex. 2.

Furthermore, there is evidence that, after Amann's employment with OAG was terminated on December 2, 2016, Reyes sent a text message to Parker Douglas, OAG's chief of staff, on December 7, 2016, in which he wrote, in part: "This job has stopped being fun for me six months ago. I'm so tired, I can't tell you. Maybe it's because I'm sick in my room still drafting documents when I need to be sleeping, we've got a crapload of people gunning for us from all sides, and my own generals (the people I trust most and rely on most) are causing me more stress than *Paul A* and Jason Hanks." ECF No. 164-6 (emphasis added).

This evidence not only suggests that Reyes "has first-hand knowledge related" to Amann's claims, *see Nudge*, 2020 U.S. Dist. LEXIS 218269, at *6 (citation omitted), but also raises the reasonable inference that Reyes had an interest in how Amann's situation was resolved. Although Reyes may not have been the ultimate decisionmaker who signed Amann's termination letter, this evidence raises the reasonable inference that Reyes was involved in OAG's decision to terminate Amann. At minimum, it appears that Reyes played a role in selecting Green to review Amann's response to the Notice of Intent to Terminate Employment, *see* ECF No. 160-1 at Ex. 2, and that the Amann situation caused Reyes stress, *see* ECF No. 164-6.

Moreover, Reyes's testimony will likely lead to the discovery of admissible evidence. As described above, there is evidence that suggests that Reyes played—at least to some degree—a role in Amann's termination. Reyes's testimony is likely to lead to a fuller picture of the circumstances surrounding Amann's termination, which is highly relevant to Amann's claims. Indeed, as head of OAG, Reyes's testimony may be particularly relevant. In addition, because

Reyes is a party to this lawsuit, Reyes's personal involvement in the investigation into and ultimate termination of Amann is at issue. Reyes's testimony will likely lead to the discovery of admissible evidence regarding the degree of his involvement.

Based on the evidence described above, the court "is left with the definite and firm conviction that" Reyes's deposition is essential to Amann's case and that the information cannot be obtained from an alternative source. *See Ocelot*, 847 F.2d at 1464 (citation omitted). Specifically, Reyes's testimony is likely essential to establish a full and complete picture of the circumstances surrounding Amann's termination, including the degree to which Reyes was involved. In addition, as suggested previously, the evidence that has already been produced suggests that Reyes had an interest in how Amann's situation was resolved. The extent of that interest and the impact—if any—that it had on Amann's termination are likely essential to Amann's case. It may be a mere coincidence, but the court notes that Reyes's text messages to his campaign manager, in which Reyes stated that "Amann reneged on *our* deal," ECF No. 157-2 (emphasis added), and to OAG's chief of staff, in which Reyes intimated that Amann was causing him stress, ECF No. 164-6, both closely coincided in time with Romano's decision to issue the Notice of Intent to Terminate Amann's Employment and Green's decision to terminate Amann, respectively. Reyes is likely the only source who can fully explain the connection—if any—between the text messages and the adverse employment actions taken against Amann, and Reyes is definitely the only source who can provide the complete picture of the degree to which he was involved in Amann's termination.

Accordingly, the court concludes that the magistrate judge's order denying Amann's motion to compel Reyes's deposition was clearly erroneous and contrary to law, and that Reyes should be compelled to sit for a deposition. The court's conclusion is not affected by its review of

*Stagman v. Ryan*, 176 F.3d 986 (7th Cir. 1999), on which Defendants heavily rely. In *Stagman*, the Seventh Circuit affirmed the district court's conclusion that deposing the attorney general "would serve no useful purpose" in a 42 U.S.C. § 1983 case in which the plaintiff was dismissed from the Attorney General's Office. *Id.* at 994. In reaching that conclusion, the Seventh Circuit noted that, although the affidavit on which the plaintiff relied suggested that the attorney general, "at most, approved or condoned the decision" to dismiss the plaintiff, the affidavit "did not contradict the assertion that [the attorney general] was not personally involved in the evaluation and decision to fire" the plaintiff. *See id.* Moreover, the plaintiff presented no evidence that the attorney general was even aware of his union-related activities, which were at the center of his claims. *Id.*

Here, the situation is far different. The evidence not only establishes that Reyes knew of Amann's termination—which is at the center of his claims—but also suggests that Reyes had a personal interest in the resolution of Amann's situation. Although the degree of Reyes's personal involvement in Amann's termination is unclear, the evidence that has been produced thus far raises a reasonable inference that Reyes was personally involved at least to some extent. Therefore, the court concludes that *Stagman* is not directly on point, and that the current situation, based on the reasonable inferences that can be drawn from the evidence that has already been produced, is more analogous to cases in which courts have permitted high-ranking government officials to be deposed. *See, e.g.*, *Nudge*, 2020 U.S. Dist. LEXIS 218269, at *8–9; *P.J. v. Utah*, No. 2:05-cv-739, 2007 U.S. Dist. LEXIS 110535, at *7 (D. Utah May 2, 2007).

While the court is sensitive to the inconvenience and burden that this places on Reyes, the evidence that has been produced thus far suggests that "this is not a run-of-the-mill case in which the attorney general has very limited involvement." *P.J.*, 2007 U.S. Dist. LEXIS 110535, at *9.

Therefore, the court orders Reyes to sit for an oral deposition in this matter. The deposition shall last no longer than four hours, absent a showing of good cause that a longer deposition is necessary.

## II.    Amann's Motion to Compel Production of Defendants' Privilege Log (ECF No. 163)

Amann moved to compel the production of Defendants' privilege log and requested that Defendants pay his attorney's fees incurred in relation to the motion. ECF No. 163. Because Defendants produced the privilege log the morning after the motion was filed, the magistrate judge denied the motion as moot, and she also awarded attorney's fees to Defendants, finding that Amann's counsel failed to meaningfully meet and confer before filing the motion and failed to withdraw the motion upon Defendants' production of the privilege log. Amann objects to the magistrate judge's order, arguing that "[t]he magistrate judge erred in finding his motion was moot and awarding Defendants their fees in responding to the motion." ECF No. 187 at 4. The court addresses both arguments in turn.

### A.  Whether the Motion to Compel Was Moot

Amann argues that the magistrate judge erred when she concluded that his motion to compel the privilege log was moot because he "considered the log [Defendants] produced to be deficient." *Id.* at 5–6. Amann contends that "it violates the principle of judicial efficiency to require him to file a new motion to address the deficient privilege log Defendants provided in response to his motion seeking the privilege log." *Id.* at 8. Accordingly, the magistrate judge should have "consider[ed] Mr. Amann's argument that the privilege log was deficient," and should not have ruled that the motion was moot. *Id.* Amann further argues that his motion was not moot because he "believed he was still entitled to his fees as requested in the motion, because he had to file the motion to get Defendants to finally provide the log." *Id.* at 5–6.

In response, Defendants argue that the magistrate judge's order was neither clearly erroneous nor contrary to law because Defendants did, in fact, produce the privilege log the morning after Amann filed his motion to compel, and Amann "did not file a motion challenging the deficiency of the privilege log." ECF No. 195 at 9. "Thus," according to Defendants, "that issue was not before [the magistrate judge]." *Id.* Defendants do not directly address whether—even though they had produced the privilege log—Amann's request for attorney's fees rendered his motion a live controversy.

The court agrees with Defendants that the alleged deficiency of Defendants' privilege log was not before the magistrate judge. Indeed, the motion before the magistrate judge was Amann's motion to "compel[] Defendants to produce their privilege log." ECF No. 163 at 1. Because the motion was filed before Defendants produced their privilege log, the motion obviously did not raise any concerns regarding the adequacy of the log. Because the issue was not raised in Amann's motion and it appears that Amann attempted to raise the issue for the first time at oral argument, the magistrate judge properly refused to hear Amann's argument on that issue, because "raising an issue for the first time at oral argument affords the opposing party an inadequate opportunity to address it." *See Cannon v. Trammell*, 796 F.3d 1256, 1267 (10th Cir. 2015) (internal alterations and citation omitted). Thus, the court determines that the magistrate judge's conclusion that Amann's motion to compel was moot—despite Amann's concerns regarding the adequacy of what was produced—was neither clearly erroneous nor contrary to law.

Moreover, Amann's contention that the magistrate judge erred when she denied his motion as moot when she still needed to resolve his request for attorney's fees is unavailing. As detailed in the order finding Amann's motion to compel moot, the magistrate judge did, in fact, consider the issue of attorney's fees on the merits. The magistrate judge denied Amann's request for

attorney's fees—and awarded attorney's fees to Defendants—because, in part, "Mr. Amann's counsel failed to meaningfully confer before filing the motion to compel on August 9." ECF No. 184 at 2. Accordingly, even though the magistrate judge stated that she denied the motion to compel "as moot," *id.* at 1, she did not treat the issue of attorney's fees as such. *See generally id.* Thus, Amann's argument that the magistrate judge should not have denied his motion as moot is groundless because, with respect to the issue of attorney's fees, the magistrate judge did not treat the motion as moot and denied it on the merits.

### B.  Whether Defendants Should Have Been Awarded Attorney's Fees

Amann further argues that the magistrate judge erred in awarding attorney's fees to Defendants because (1) Amann's counsel did, in fact, meaningfully meet and confer with Defendant's counsel before filing the motion; (2) the magistrate judge misapplied Federal Rule of Civil Procedure 37; and (3) Defendants incurred the attorney's fees improperly because they violated Utah's procurement statute when they hired Ray Quinney & Nebeker to represent them. The court addresses each of these arguments in turn.

### i.    Failure to Meet and Confer

The District of Utah's local rules require parties to "make reasonable efforts to resolve a discovery dispute . . . before seeking court assistance." DUCivR 37-1(a)(1). In awarding attorney's fees to Defendants, the magistrate judge concluded that Amann failed to comply with this requirement. Specifically, the magistrate judge concluded that "Mr. Amann's counsel failed to meaningfully confer before filing the motion to compel on August 9[, 2021]" because although Amann's counsel allegedly "had attempted for many months to obtain the privilege log" and had threatened to file a motion to compel if the log was not produced by July 12, 2021, Amann's counsel "continued to discuss production of the privilege log after that date" and, at no time during

13

these continued discussions, did she "indicate [that] she intended to file a discovery motion." ECF No. 184 at 2. The magistrate judge further concluded that "[t]his failure [was] compounded by the fact that Mr. Amann failed to withdraw the motion after the privilege log was produced." *Id.* at 2–3.

Amann argues that the magistrate judge's conclusion is erroneous because "Mr. Amann had been asking for the privilege log, which Defendants had a duty to provide without request, for eight months," and "there is no duty to continue to wait for production of a document ten months overdue . . . , particularly when it could be important to upcoming depositions." ECF No. 187 at 5–7. In addition, Amann contends that "there is significance to the fact that Defendants finally provided the log the morning after Mr. Amann filed the motion . . . . [T]he timing of Defendants' production suggests they were holding on to the log until Mr. Amann finally took steps to compel them to provide it." *Id.* at 7.

In response, Defendants assert, in part, that "[a]t no time prior to August 9"—when Amann filed the motion to compel—"did [Amann's] counsel inform [Defendants] that [he] was about to file a motion if [Defendants] did not produce the privilege log by a certain date." ECF No. 195 at 6. Although Defendants' counsel told Amann's counsel during a mid-July telephone call that they expected to produce the log by July 23, Defendants' counsel explained that "it was a lengthy task given the number of attorneys who were AGO custodians and the need to carefully review for attorney-client privileged communications and work product." *Id.* Defendants contend that, at the time the motion was filed, there had been no further communication about the privilege log, and that they were continuing to work on the log and were about to produce it.

"The meet and confer requirement adheres to all motions to compel and is not dispensed with based upon the passage of time or prior communications addressing similar issues." *Am.*

*Charities for Reasonable Fundraising Regul., Inc. v. O'Bannon*, No. 2:08-cv-00875, 2015 U.S. Dist. LEXIS 103814, at *4–5 (D. Utah Aug. 5, 2015). "Rather, a meaningful meet and confer contemplates that the parties make a genuine effort to determine 'precisely what the requesting party is actually seeking; what responsive documents or information the discovering party is reasonably capable of producing; and what specific, genuine objections or other issues, if any, cannot be resolved without judicial intervention.'" *Id.* at *4 (citation omitted). Indeed, "parties do not satisfy the conference requirements simply by requesting or demanding compliance with the requests for discovery. . . . They must deliberate, confer, converse, compare views, or consult with a view to resolve the dispute without judicial intervention." *Jackson v. Dollar Gen. Store*, No. 2:11-cv-00726-TC-DBP, 2014 U.S. Dist. LEXIS 17159, at *4 (D. Utah Feb. 10, 2014) (quoting *Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 456, 459 (D. Kan. 1999)).

Here, the court concludes that the magistrate judge's determination that Amann's counsel failed to meaningfully meet and confer before filing the motion to compel was neither clearly erroneous nor contrary to law. Because Amann's counsel did not communicate with Defendants' counsel about the privilege log between the mid-July telephone call and when she filed the motion—including to inform Defendants' counsel about the impending motion—the magistrate judge's conclusion is not clearly erroneous. The court is not left with the "definite and firm conviction" that Amann's counsel genuinely attempted to "deliberate, confer, converse, compare views, or consult with a view to resolve the dispute without judicial intervention" before filing the motion. *See Jackson*, 2014 U.S. Dist. LEXIS 17159, at *4 (citation omitted). Moreover, the length of time that Amann was forced to wait for the privilege log to be produced does not change the court's conclusion. *See O'Bannon*, 2015 U.S. Dist. LEXIS 103814, at *4–5. Although Amann may be correct that Defendants would not have produced the privilege log if the motion had not been

filed, that does not excuse Amann's counsel's failure to meet and confer and, at minimum, give Defendants one final opportunity to produce the log before filing the motion.

ii.     Failure to Apply Federal Rule of Civil Procedure 37 Correctly

Amann further argues that, even if he failed to meaningfully meet and confer before filing the motion, "the magistrate judge erred in awarding fees to Defendants as the non-moving party, because the relevant rules simply do not provide for such a remedy." ECF No. 187 at 7. According to Amann, Federal Rule of Civil Procedure 37(a)(5)(A) addresses the current situation, because Defendants provided the "requested discovery"—the privilege log—"after the motion was filed." Amann contends that, in such circumstances, the producing party must pay the movant's attorney's fees, unless the movant failed to adequately meet and confer before filing the motion. Amman asserts that in no instance, though, does Rule 37 "provide that a court may award fees to the non-moving party if that party provides the requested discovery after a motion was filed." ECF No. 187 at 8.

In response, Defendants argue that Amann fails to account for the remainder of Rule 37, which provides that, if the motion is denied, the court is permitted "to order the movant to pay the party who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees." ECF No. 195 at 9 (citing FED. R. CIV. P. 37(a)(5)(B)). Defendants contend that, because the magistrate judge denied the motion as moot, the magistrate judge's decision to award attorney's fees to Defendants was not contrary to law. The court agrees.

Federal Rule of Civil Procedure 37(a)(5) "governs the award of fees and expenses in connection with motions to compel." *Presbyterian Manors, Inc. v. SimplexGrinnell, L.P.*, No. 09-2656-KHV, 2010 U.S. Dist. LEXIS 126390, at *1 (D. Kan. Nov. 30, 2010). Rule 37(a)(5)(A) provides that "[i]f the motion is granted—or *if the disclosure or requested discovery is provided*

*after the motion was filed*—the court must . . . require the party . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." (Emphasis added.) However, "the court must not order this payment if . . . the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action." FED. R. CIV. P. 37(a)(5)(A)(i). Moreover, "[i]f the motion is denied, the court . . . must . . . require the movant . . . to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees." FED. R. CIV. P. 37(a)(5)(B).

Here, after Amann filed the motion to compel production of the privilege log, Defendants produced the log. Thus, under Rule 37(a)(5)(A), Defendants ordinarily would be required to pay Amann's "reasonable expenses incurred in making the motion, including attorney's fees." However, because the magistrate judge concluded that Amann failed to meaningfully meet and confer before filing the motion—and, as discussed above, this conclusion is not clearly erroneous—Amann was precluded from recovering any attorney's fees. *See* FED. R. CIV. P. 37(a)(5)(A)(i). Accordingly, the magistrate judge appropriately did not award attorney's fees to Amann.

Rather than withdrawing his motion upon production of the privilege log[2]—as Defendants' counsel requested—Amann persisted. The magistrate judge subsequently denied the motion as moot, and also denied Amann's request for attorney's fees, finding that Amann failed to adequately

---

[2] If Amann had withdrawn his motion to compel after the privilege log was produced, he still could have pursued attorney's fees related to the motion. *See Wager v. G4S Secure Integration, LLC*, No. 1:19-cv-03547-MKV-KNF, 2021 U.S. Dist. LEXIS 16448, at *12–13 (S.D.N.Y Jan. 28, 2021) (noting that, in the Southern District of New York, "it is common and accepted practice for litigants to file separate applications for attorneys' fees and costs under Rule 37(a)(5)(A) after prevailing on a motion to compel"). However, because the magistrate judge concluded that Amann failed to meaningfully meet and confer before filing the motion, such an application likely would have been denied.

meet and confer before filing the motion. Accordingly, under Federal Rule of Civil Procedure 37(a)(5)(B), Defendants were entitled to their "reasonable expenses incurred in opposing the motion, including attorney's fees." Thus, the magistrate judge's order awarding such attorney's fees to Defendants was not contrary to law.[3]

### iii.    Defendants' Attorney's Fees Were Incurred Improperly

Amann further argues that "an additional basis for not awarding Defendants their fees . . . is that Defendants have incurred those fees improperly." ECF No. 187 at 8. Specifically, Amann argues that Defendants violated Utah's procurement statute when they hired Ray Quinney & Nebeker to represent them in this matter. Amann contends that "Defendants should not be awarded fees incurred through self-dealing, in violation of the procurement statute." *Id.* at 9. In response, Defendants assert, in part, that this alleged impropriety "is not part of [Amann's] complaint nor did [Amann] raise it in his motion," and that "[t]his discovery motion is not the time or place for [Amann] to raise such assertions." ECF No. 195 at 9 n.4. The court agrees.

"It is well-settled that an objecting party generally may not raise new issues that were not presented to the magistrate judge." *Africano v. Atrium Med. Corp.*, No. 17-cv-7238, 2020 U.S. Dist. LEXIS 177096, at *6 (N.D. Ill. Sept. 3, 2020) (citing cases); *see also Rodriguez v. Pataki*, 293 F. Supp. 2d 313, 315 (S.D.N.Y. 2003) ("The Court denies Plaintiffs' and Defendant's requests contained in their objections for rulings on issues not addressed by [the magistrate judge]. The

---

[3] Rule 37(a)(5)(B) does provide that "the court must not order [payment of attorney's fees to the party opposing the motion] if the motion was substantially justified or other circumstances make an award of expenses unjust." Although the magistrate judge did not explicitly consider whether this exception applies to the current situation, because the magistrate judge concluded that the motion was moot, that it should have been withdrawn, and that Amann's counsel failed to meaningfully meet and confer before filing the motion—and, indeed, awarded attorney's fees to Defendants—the court concludes that the magistrate judge determined that the exception does not apply and also concludes that such a conclusion is neither clearly erroneous nor contrary to law.

Court has referred all discovery disputes in this case to [the magistrate judge] and he is in the best position to review them in the first instance."). Because this issue has not been presented to the magistrate judge, the court declines to review it here. Moreover, the court agrees with Defendants' contention that this is not the proper venue to raise such an objection. Indeed, in reviewing Amann's objection to the magistrate judge's order awarding attorney's fees to Defendants, the court views its task as quite narrow. Specifically, the court is merely considering whether, based on the relevant facts and law, the magistrate judge's decision to award attorney's fees to Defendants—regardless of who their attorneys are or how they hired their attorneys—was clearly erroneous or contrary to law. The court concludes that it was not.

In sum, the court overrules Amann's objections to the magistrate judge's order awarding attorney's fees related to the motion to compel (ECF No. 163) to Defendants.

### III.   Amann's Motion to Compel Production of Reyes's Communications (ECF No. 164)

Amann moved to compel "Defendants to respond to a subpoena served in April 2021, seeking Defendant Reyes' communications regarding Mr. Amann from his personal email addresses and from his personal cell phone." ECF No. 164 at 1–2. The motion was granted in part and denied in part by the magistrate judge. ECF No. 185. Specifically, because Defendants represented "that [they] produced all responsive text messages about Mr. Amann from Attorney General Reyes' personal phone," the magistrate judge denied Amann's request for cell phone communications as moot. *Id.* at 3. However, because Amann produced an email from one of Reyes's personal email accounts that "addresses a matter directly relevant to Mr. Amann's claims," the magistrate judge ordered that the email account be searched for any emails sent or received between December 2013 and March 2017 containing the terms "Amann" or "Paul." *See id.* at 4. In addition, the magistrate judge awarded Defendants their "attorney['s] fees in responding to the

motion based on Mr. Amann's counsel's complete failure to confer before filing the motion." *Id.* at 1. Amann objects to the magistrate judge's decision to award attorney's fees to Defendants.

Amann argues that the magistrate judge erred in multiple ways: (1) the magistrate judge's conclusion that "Amann's counsel admitted she made no attempt to meet and confer" before filing the motion "ignores footnote 1 in the motion, which describes Mr. Amann's counsel's attempt to meet and confer on the issue"; (2) "if the magistrate judge found Mr. Amann's efforts to confer on this issue inadequate, the court could deny Mr. Amann his attorneys' fees in bringing the motion, but the rules do not provide a basis for awarding attorneys['] fees to the nonmoving party when they did not prevail on the motion"; and (3) if the magistrate judge was invoking Federal Rule of Civil Procedure 37(a)(5)(C), which governs when a motion to compel is granted in part and denied in part, "Mr. Amann should be awarded some of his fees for the part of the motion he prevailed on." ECF No. 187 at 10.

In response, Defendants argue that "[h]ad [Amann's] counsel adequately met and conferred before filing the [motion to compel], she would have understood that AG Reyes' text messages from his personal phone *had already been produced* to [Amann]. Furthermore, counsel for the parties would have had the opportunity to attempt to resolve the dispute over the personal emails prior to seeking court intervention." ECF No. 195 at 10. Moreover, Defendants contend that, even taking Amann's counsel's alleged efforts to meet and confer at face value, they are insufficient because DUCivR 37-1(a)(2) requires, "[a]t a minimum," a "prompt written communication sent to the opposing party," and the footnote to which Amann's counsel points details only a telephone call. Furthermore, Defendants argue that, because the motion was granted in part and denied in part, Federal Rule of Civil Procedure 37(a)(5)(C) governs and, accordingly, it was within the magistrate judge's discretion to "apportion the reasonable expenses for the motion." *See* ECF No.

195 at 10–11. Defendants contend that "in light of [the magistrate judge's] denial of part of the motion, [Amann's] failure to meet and confer, and his pattern of doing so," the magistrate judge apportioned the fees entirely to Defendants. *See id.* at 11.

First, the court agrees with Defendants that, taking Amann's counsel's contentions at face value, she did not adequately meet and confer before filing the motion to compel. As stated previously, the District of Utah's local rules require the parties to "make reasonable efforts to resolve a discovery dispute . . . before seeking court assistance." DUCIvR 37-1(a)(1). "At a minimum, those efforts must include a prompt written communication sent to the opposing party," which specifies various aspects of the discovery dispute. DUCIvR 37-1(a)(2). Here, Amann points to footnote 1 of his motion, which states that, "[i]n a phone call between the parties' counsel on July 13, 2021 on a wide range of discovery issues, Mr. Amann's counsel . . . asked if Defendants would reconsider the objection to producing Mr. Reyes' personal emails, but they have not." ECF No. 164 at 2 n.1. Because Amann's admittedly limited efforts to meet and confer before filing the motion at issue did not include any written communication, the court finds that the magistrate judge's conclusion that Amann failed to adequately meet and confer before filing the motion was neither clearly erroneous nor contrary to law.

Moreover, the court agrees with Defendants that Federal Rule of Civil Procedure 37(a)(5)(C) governs because the magistrate judge granted in part and denied in part the motion.[4] Rule 37(a)(5)(C) provides that "[i]f the motion is granted in part and denied in part, the court may . . . apportion the reasonable expenses for the motion." Although it is possible that the magistrate

---

[4] Accordingly, the court disregards Amann's argument that "the rules do not provide a basis for awarding attorney[']s fees to the nonmoving party when they did not prevail on the motion," ECF No. 187 at 10, because Defendants did, in fact, prevail, in part, on the motion. Thus, Rule 37(a)(5)(C) governs the current situation, rather than Rule 37(a)(5)(A).

judge intentionally apportioned all of the expenses in Defendants' favor, the court is not convinced. Indeed, the magistrate judge repeatedly stated that Defendants were entitled to an award of attorney's fees because "Mr. Amann's counsel failed to meet and confer." *See* ECF No. 185 at 1, 3, 4–5. At no point does the magistrate judge indicate that she considered the extent to which Amann prevailed on the motion when she decided to award attorney's fees to Defendants.[5] Accordingly, the court concludes that the magistrate judge's decision to award all of the attorney's fees to Defendants was contrary to law because the magistrate judge's order either "fail[ed] to apply or misapplie[d]" the relevant law. *See Hawkins*, 2021 U.S. Dist. LEXIS 19484, at *3 (citation omitted).

Thus, the court "finds that the most sensible approach is to return this matter to the Magistrate Judge for further proceedings." *See Benson v. Hartford Life & Accident Ins. Co.*, No. 2:10-cv-275-TS, 2010 U.S. Dist. LEXIS 107603, at *2 (D. Utah Oct. 5, 2010). Specifically, the court instructs the magistrate judge to "*apportion* the reasonable expenses for the motion" between Amann and Defendants. *See* FED. R. CIV. P. 37(a)(5)(C) (emphasis added). In deciding how to apportion such expenses, the magistrate judge should certainly consider Amann's failure to meet and confer before filing the motion, *see, e.g.*, *Wager*, 2021 U.S. Dist. LEXIS 16448, at *8 (noting that, in the Second Circuit, "in determining whether to award expenses under Rule 37(a)(5)(C), courts must consider the three exceptions listed under Rule 37(a)(5)(A)," one of which is a failure

---

[5] The magistrate judge granted in part and denied in part the motion "[f]or the reasons stated at the hearing [that was held on the motion] and explained" in the written order. ECF No. 185 at 1. Admittedly, it is possible that the magistrate judge explained her decision to apportion all of the attorney's fees to Defendants—in spite of the fact that Amann's motion was granted in part—at the hearing. Although the hearing was approximately three hours long, only the first 48 minutes of the hearing were recorded. The court has reviewed this recording, but it does not contain any argument or discussion relevant to the current issue. Accordingly, the court treats the written order as the complete explanation for the magistrate judge's decision.

to adequately meet and confer), but it should also consider the extent to which Amann's motion was successful, *see Morgan Hill Concerned Parents Ass'n v. Cal. Dep't of Educ.*, No. 2:11-CV-03471-KJM-AC, 2017 U.S. Dist. LEXIS 114293, at *14 (E.D. Cal. July 20, 2017) (citing cases that apportioned fees under Rule 37(a)(5)(C) and noting that "[i]nstead of supporting a rigid formula, these cases stand for the proposition that courts aim to roughly approximate the movant's level of success in apportioning fees"). Moreover, because Defendants opposed Amann's motion—rather than voluntarily producing Reyes's personal emails—the magistrate judge should account for the extent to which additional meeting and conferring would have, realistically, been productive and obviated the need for court intervention.

## CONCLUSION AND ORDER

The court rules as follows:

1.  The court SUSTAINS Amann's objection to the magistrate judge's order denying Amann's motion to compel the deposition of Sean Reyes (ECF No. 180).

2.  The court OVERRULES Amann's objection to the magistrate judge's order finding Amann's motion to compel production of Defendants' privilege log moot and awarding attorney's fees to Defendants (ECF No. 184).

3.  The court SUSTAINS Amann's objection to the magistrate judge's order awarding to Defendants attorney's fees related to Amann's motion to compel subpoena responses (ECF No. 185).

As a result, the court ORDERS that fact discovery be reopen for 30 days from the entry of this order for the sole purpose of conducting Reyes's deposition and, if Amann so elects, reissuing a subpoena to the Utah Department of Public Safety that fully complies with Federal Rule of Civil Procedure 45, *see* Memorandum Decision and Order Overruling Plaintiff's Objection to

Magistrate Judge's Order Granting Non-Party Utah Department of Public Safety's Motion to Quash Subpoena.

DATED January 25, 2022.

BY THE COURT

_____

Jill N. Parrish

United States District Court Judge