IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| PAUL G. AMANN,<br><br>                Plaintiff,<br><br>v.<br><br>OFFICE OF THE UTAH ATTORNEY GENERAL; SEAN REYES; BRIDGET ROMANO; CRAIG BARLOW; SPENCER AUSTIN; TYLER GREEN; and DANIEL WIDDISON,<br><br>                Defendants. | **MEMORANDUM DECISION AND ORDER DENYING DEFENDANTS' MOTION FOR RECONSIDERATION**<br><br>Case No. 2:18-cv-00341-JNP-DAO<br><br>Judge Jill N. Parrish |

      Plaintiff Paul G. Amann sued the Office of the Utah Attorney General ("OAG"), Utah Attorney General Sean Reyes, Bridget Romano, Craig Barlow, Tyler Green, and Daniel Widdison, alleging violations of the Utah Protection of Public Employees Act, UTAH CODE § 67-21-1 *et seq.*, and 42 U.S.C. § 1983, among other claims. ECF Nos. 89–90. During discovery, Amann moved to compel the deposition of Reyes, ECF No. 157, which the magistrate judge denied, ECF No. 180. Amann objected to that ruling and, after providing Reyes with an opportunity to respond to the objection, the court sustained Amann's objection and ordered Reyes to sit for a deposition. ECF Nos. 187, 195, 224.

      Before the court is defendants OAG and Reyes's (collectively, "Defendants") Motion for Reconsideration of the Court's Memorandum Decision and Order Sustaining in Part and Overruling in Part Plaintiff's Objections. ECF No. 236. Specifically, Defendants move the court to reconsider its order compelling Reyes to sit for a deposition in this matter. For the reasons

1

presented herein, the court DENIES Defendants' Motion for Reconsideration and ORDERS Reyes to sit for a deposition.

The Tenth Circuit has "held that a motion to reconsider may be granted when the court has misapprehended the facts, a party's position, or the law." *United States v. Huff*, 782 F.3d 1221, 1224 (10th Cir. 2015). "Specific situations where circumstances may warrant reconsideration include '(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice.'" *Id.* (quoting *Servants of The Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000)). "A motion to reconsider is not a second chance for the losing party to make its strongest case or to dress up arguments that previously failed," *id.* (citation omitted), and the Tenth Circuit has "specifically held that '[a] motion to reconsider should not be used to revisit issues already addressed or advance arguments that could have been raised earlier,'" *id.* (quoting *United States v. Christy*, 739 F.3d 534, 539 (10th Cir. 2014)).

Here, Defendants do not contend that there has been "an intervening change in the controlling law" or that previously unavailable evidence has surfaced since the court ordered Reyes to sit for a deposition. *See id.* Rather, at bottom, Defendants assert that the court should grant their motion for reconsideration because the court's order compelling Reyes's deposition was in error. However, the court concludes that circumstances warranting reconsideration are not present here.

As an initial matter, Defendants' motion simply advances "dress[ed] up" versions of previously rejected arguments, as well as arguments that could have been raised when Defendants

responded to Amann's objection to the magistrate judge's order.[1] *See id.* (citation omitted). Such is an inappropriate use of a motion to reconsider. *See id.*

More importantly, though, Defendants implicitly concede that the court did not commit clear error when it ordered Reyes's deposition. Specifically, Defendants acknowledge that "[t]he Tenth Circuit has not yet . . . articulate[d] the legal standard necessary to compel the deposition of a high-ranking government official" and that "the Seventh Circuit has not applied the four-part 'extraordinary circumstances' test" that other circuits have applied when determining whether a high-ranking government official can be deposed.[2] *See* ECF No. 246 at 6. Under Tenth Circuit law,

---

[1] Defendants contend that they failed to fully develop their arguments and to present all of the relevant caselaw and arguments in their previous filings—especially their response to Amann's objection to the magistrate judge's ruling—because of page limitations. The court rejects that argument. First, before filing the brief that Defendants now contend was governed by an overly restrictive page limit, Defendants moved the court for leave to file an overlength brief, which the court granted. *See* ECF Nos. 194, 196. If Defendants needed even more pages to fully present all of their arguments, they could have moved for leave to file a brief of sufficient length. Throughout this litigation, the court has demonstrated a willingness to grant such motions. *See, e.g.*, ECF Nos. 32, 96, 117, 135, 196, 239, 247. Moreover, if the court were to credit Defendants' argument, it would effectively render the page limits associated with briefs—which serve important interests—null and void. Specifically, if, as Defendants are attempting to do here, parties who lose after filing a brief within the page limit can subsequently file a motion to reconsider that exceeds the previous page limit and contains all of the arguments that were omitted from the initial brief, then the original page limit was meaningless. Therefore, the court rejects Defendants' argument and their attempt to get "a second bite at the apple." *See Johnson v. Henry Vogt Mach. Co.*, No. 2:06-CV-00622DAK, 2008 U.S. Dist. LEXIS 41245, at *7 (D. Utah May 22, 2008) ("Although a motion for reconsideration is an opportunity for a court to correct its 'own alleged errors,' it is not designed to give a party a second bite at the apple." (internal citation omitted)); *Santonio v. Tracy*, No. 2:05-CV-17 PGC, 2006 U.S. Dist. LEXIS 83227, at *2 (D. Utah Nov. 6, 2006) ("A motion to reconsider is not a second opportunity for the losing party to make its strongest case, to rehash arguments, or to dress up arguments that previously failed." (citation omitted)).

[2] In *Stagman v. Ryan*, 176 F.3d 986, 994–95 (7th Cir. 1999), the Seventh Circuit explained that high-ranking government officials "should not have to spend their time giving depositions in cases arising out of the performance of their official duties unless there is some reason to believe that the deposition will produce or lead to admissible evidence." (Citation omitted.) *See also Bless v. Cook Cnty. Sheriff's Off.*, 9 F.4th 565, 570–71 (7th Cir. 2021) (applying the same standard); *Martin v. Cook Cnty.*, No. 17 C 2330, 2018 WL 8263915, at *1 (N.D. Ill. May 11, 2018) ("Even when a public official is a named defendant in a lawsuit, courts have recognized that a public official need

3

"[i]f neither the Supreme Court nor the Tenth Circuit has ruled on the subject, [the Tenth Circuit] cannot find plain error if the authority in other circuits is split." *United States v. Iverson*, 818 F.3d 1015, 1024 (10th Cir. 2016) (citing and quoting *United States v. Teague*, 443 F.3d 1310, 1319 (10th Cir. 2006)); *see also United States v. Smith*, 815 F.3d 671, 675 (10th Cir. 2016) ("An error is *clear* 'when it is contrary to well-settled law.' For us to characterize a proposition of law as well-settled, we normally require precedent directly in point from the Supreme Court or our circuit or a consensus in the other circuits." (internal citation omitted)). Accordingly, in the absence of Tenth Circuit precedent or a consensus among the other circuits, neither the test that the court employed

---

not give a deposition in every case arising from the performance of his/her official duties 'unless there is some reason to believe that the deposition will produce or lead to admissible evidence.' . . . If, on the other hand, the public official has discoverable information, 'the parties may not be deprived of that information simply because of the official's status.'" (citations omitted)). Accordingly, the Seventh Circuit has adopted a different standard than the "exceptional" or "extraordinary" circumstances test that some other circuits apply. *See, e.g.*, *In re Bryant*, 745 F. App'x 215, 220 (5th Cir. 2018) (unpublished) ("Involuntary depositions of highly-ranked government officials are only allowed when 'exceptional circumstances . . . exist.'" (citation omitted)).

The court further notes that even the circuits that apply an "exceptional" or "extraordinary" circumstances test do not apply the exact same test. Specifically, under the Ninth Circuit's test, "extraordinary circumstances sufficient to justify the taking of a cabinet secretary's deposition exist when the party seeking the deposition can demonstrate: (1) a showing of agency bad faith; (2) the information sought from the secretary is essential to the case; and (3) the information sought from the secretary cannot be obtained in any other way." *In re U.S. Dep't of Educ.*, Nos. 21-71108, 21-71109, 2022 U.S. App. LEXIS 3209, at *24 (9th Cir. Feb. 4, 2022). Under the Fifth Circuit's test,

> [i]n determining whether exceptional circumstances exist, a court must consider (1) the high-ranking status of the deponents, (2) the potential burden that the depositions would impose upon them, and (3) the substantive reasons for taking the depositions. As an overarching consideration, the court must also consider that it will be the rarest of cases . . . in which exceptional circumstances can be shown where the testimony is available from an alternate witness.

*In re Bryant*, 745 F. App'x at 220 (citations and internal quotation marks omitted). In short, there is clearly no consensus among the circuits regarding the proper test that courts should apply when considering an objection to a request to depose a high-ranking government official.

4

nor the court's application of the test could be clear error. Thus, none of the situations that would warrant granting a motion for reconsideration is present here, and, as a result, the court denies Defendants' motion for reconsideration.

That said, even if the court were to consider the arguments that Defendants present in their motion for reconsideration, the court would still conclude that it did not err in compelling Reyes's deposition. In their motion, Defendants cite numerous cases that, according to Defendants, support their position that Reyes should not be deposed. However, none of these cases are controlling since the Tenth Circuit has yet to rule on the applicable test. Additionally, they are distinguishable because many of the cited cases involved high-ranking *federal* officials,[3] challenges to governmental policy,[4] or attempts to depose high-ranking government officials who were not parties to the suit.[5] Under such circumstances, there may be legitimate separation-of-powers concerns, as a co-equal branch of the federal government imposes its power and authority on a high-ranking official of another branch. *See In re U.S. Dep't of Educ.*, 2022 U.S. App. LEXIS 3209, at *19–20. Moreover, because government policy often affects a large segment of the population—thereby creating a large pool of potential plaintiffs—the concern that the high-ranking official's time will be "monopolized by preparing and testifying" if he or she were deposed in each case challenging a governmental policy is likely legitimate. *See id.* at *20 (citation omitted). And, if the

---

[3] *See, e.g.*, *Camacho v. McCarthy*, No. EDCV 15-2043-JGB (KKx), 2020 WL 6712254, at *1 (C.D. Cal. Apr. 17, 2020); *Alexander v. FBI*, Nos. CIV 96-2123, 97-1288, 1999 WL 270022, at *1 (D.D.C. Apr. 21, 1999); *In re United States*, 197 F.3d 310, 312–13 (8th Cir. 1999).

[4] *See, e.g.*, *In re U.S. Dep't of Educ.*, 2022 U.S. App. LEXIS 3209, at *7–8; *In re Bryant*, 745 F. App'x at 217; *Lederman v. N.Y.C. Dep't of Parks & Rec.*, 731 F.3d 199, 201 (2d Cir. 2013).

[5] *See, e.g.*, *United States v. Newman*, 531 F. Supp. 3d 181, 188–91 (D.D.C. 2021); *McCowan v. City of Philadelphia*, No. 2:19-cv-03326-KSM, 2020 U.S. Dist. LEXIS 197065, at *2 (E.D. Pa. Oct. 23, 2020); *Tomaszewski v. City of Philadelphia*, No. 17-4675, 2018 U.S. Dist. LEXIS 210909, at *1 (E.D. Pa. Dec. 13, 2018).

high-ranking official is not being sued in his or her personal capacity, it is more likely that the official plays only a tangential role in the case and that the information sought from the high-ranking official can be obtained from someone else.

However, such concerns are minimized in a case such as the one here, in which a state government official is sued in his personal capacity over an employment matter. In such a situation, there is no separation-of-powers concern[6] and the concern that the official's time will be consumed by depositions is minimized because it is likely to be an isolated case. In addition, testimony from a high-ranking official who, presumably in good faith, has been sued in his or her personal capacity is likely to be central to the case, particularly when the case involves issues of credibility.

For these reasons, the court finds that the "exceptional" or "extraordinary" circumstances test advocated by Defendants should not be applied in a case such as the one here. Under the "exceptional" or "extraordinary" circumstances test that has been applied by some district courts in the Tenth Circuit, a party seeking to depose a high-ranking government official must demonstrate that "(1) the official has first-hand knowledge related to the claim being litigated[,]

---

[6] *See Clinton v. Jones*, 520 U.S. 681, 699 (1997) ("The doctrine of separation of powers is concerned with the allocation of official power among the three co-equal branches of [the United States] Government."); *Ariz. State Legis. v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 803 n.12 (2015) ("[A] suit between Congress and the President would raise separation-of-powers concerns absent here [in a case involving state government]. The Court's standing analysis, we have noted, has been 'especially rigorous when reaching the merits of the dispute would force the Court to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional.'" (citation and internal alterations omitted)); *Bd. of Educ. v. Memphis City Bd. of Educ.*, No. 2:11-cv-02101-SHM-CGC, 2012 U.S. Dist. LEXIS 178713, at *17–18 (W.D. Tenn. Dec. 18, 2012) ("First, as to whether a federal court may consider the constitutionality of a state legislative enactment, there is no separation-of-powers concern. As the *Gillock* [C]ourt succinctly noted, "under our federal structure, we do not have the struggles for power between the federal and state systems.' For this reason, 'federal interference in the state legislative process is not on the same constitutional footing with the interference of one branch in the affairs of a coequal branch.'" (internal alterations omitted) (quoting *United States v. Gillock*, 445 U.S. 360, 370 (1980)).

(2) the testimony will likely lead to the discovery of admissible evidence, (3) the deposition is essential to the party's case, and (4) the information cannot be obtained from an alternative source or via less burdensome means." *FTC v. Nudge, LLC*, No. 2:19-cv-00867-DBB-DAO, 2020 U.S. Dist. LEXIS 218269, at *6 (D. Utah Nov. 20, 2020) (citation omitted). According to Defendants, this standard requires a party to demonstrate that the deposition is "*absolutely needed*" for a case before the court can order the deposition of a high-ranking government official. *See* ECF No. 236 at 10 (citing *In re U.S. Dep't of Educ.*, 2022 U.S. App. LEXIS 3209, at *26). Indeed, according to Defendants, even if the high-ranking official has knowledge of information "that may be helpful if discovered," *id.* at 9 (quoting *Tomaszewski*, 2018 WL 6590826, at *3), a court cannot compel his or her deposition unless the information is "*absolutely necessary*" to the case, *id.*

As an initial matter, the court notes that it is difficult, if not impossible, to determine whether a high-ranking official has information that is "absolutely needed" and that cannot be obtained from any other source until the party has deposed the official and explored the extent of the official's knowledge. Thus, the party seeking to depose the official is put in an impossible bind, prevented from obtaining the very information necessary to justify the deposition. Moreover, in many—if not all—cases, a court will be unable to determine that deposition testimony is "absolutely needed" until the end of discovery or its review of any motions for summary judgment. As a result, at the very least, the standard proposed by Defendants severely interferes with a party's ability to develop its case and evidence.[7] While such a stringent standard—which practically

---

[7] Defendants similarly argue that the standard requires a party to first depose other witnesses before attempting to depose a high-ranking government official. *See* ECF No. 236 at 10–12. However, Defendants then contend that, because of the depositions that have already been conducted, the high-ranking official's deposition is likely to only produce duplicative evidence and, therefore, should not be conducted. *See* ECF No. 246 at 16. In addition to the fact that the court cannot determine whether a deposition will merely produce duplicative evidence before the deposition

7

forecloses the possibility of deposing high-ranking government officials—may be sensible when there are separation-of-powers concerns and a real possibility that high-ranking officials will face constant depositions in cases in which they are only tangentially involved, the standard makes little sense when those concerns are absent. Rather, such a standard is likely to only interfere with and delay the administration of justice.

Indeed, in a whistleblowing case such as the one here, pretext and credibility are central to resolution of the case. Although it may be possible for a plaintiff to cobble together circumstantial evidence that the high-ranking official terminated a whistleblower based on his protected activity, the official's testimony is likely to be the most powerful evidence of the motives behind the official's conduct. Thus, it is simply not possible to ascertain prior to the deposition if the testimony is "absolutely needed." Whether the testimony is necessary for a plaintiff to prevail will likely not become apparent until after the deposition or perhaps after the jury considers the evidence presented at trial. A party should "not be deprived of that information simply because of the official's status." *Martin*, 2018 WL 8263915, at *1 (citation omitted). Consistent with this analysis, in most of the analogous cases that Defendants cite, courts have either applied a different, lower standard, *see Bless*, 9 F.4th at 570–71 (explaining that "public officials, even those named in a lawsuit, need not 'giv[e] depositions in cases arising out of the performance of their official duties

---

has occurred, the court also notes that such a standard practically insulates high-ranking officials from ever sitting for depositions. As discussed in the main text, while such a standard may be justifiable in some contexts, it is not appropriate in situations such as the one here. Indeed, although it may be wise counsel that "[l]itigants should ordinarily be required to depose those individuals with the most knowledge of the relevant facts before taking the depositions of high-ranking government officials," in cases such as the one here, in which the high-ranking government official has been sued in his or her personal capacity over an employment matter, the high-ranking government official is likely the "individual[] with the most knowledge of the relevant facts." *See Alexander*, 1999 WL 270022, at *2. Therefore, postponing the official's deposition until other depositions have been conducted is only likely to, at a minimum, delay the case's progress.

*unless* there is some reason to believe that the deposition will produce or lead to admissible evidence.' (emphasis added and citation omitted)); *Stagman*, 176 F.3d at 994–95 (applying same standard); *Martin*, 2018 WL 8263915, at *1 (same), and/or required the high-ranking official to answer questions, *see Brennan v. City of Philadelphia*, 388 F. Supp. 3d 516, 523 (E.D. Pa. 2019); *Martin*, 2018 WL 8263915, at *2–3.

Moreover, even if the court applies the "exceptional" or "extraordinary" circumstances test to the facts of this case, the court still concludes that Reyes must sit for a deposition. First, there is evidence that Reyes "has first-hand knowledge related to the claim being litigated." *See Nudge*, 2020 U.S. Dist. LEXIS 218269, at *6. Specifically, there is evidence that Reyes has first-hand knowledge regarding the process that ultimately resulted in Amann's termination. Bridget Romano, who, at least formally, made the decision to place Amann on administrative leave testified that she discussed her decision with Reyes before notifying Amann that he was being placed on administrative leave. *See* ECF No. 244-5 at 191:3–10 ("Q. Okay. So you talked to Mr. Reyes about putting Mr. Amann on administrative leave? A. I gave Mr. Reyes as much information as was necessary to validate my choice to place him on administrative leave but not to provide too much information in the event I made an ultimate disciplinary decision which was grieved and he may be the final decision-maker."); *id.* at 214:4–11 ("[Q.] And I was just wondering, why did you copy Sean Reyes on this email putting Paul on administrative leave? A. I specifically – I'm assuming – well, it wasn't a mystery to General Reyes that I was taking the act to place Mr. Amann on administrative leave. So we talked about it. We discussed it. This letter is a follow-up to that conversation.").

In addition, there is evidence that Reyes played a role in selecting Tyler Green as the ultimate decisionmaker—at least on paper—regarding Amann's employment status with OAG.

9

*See* ECF No. 160-1 at 11 (email from Reyes to Romano: "Let's discuss a little more but I think Tyler would be a good choice."); ECF No. 244-6 at 18:6–12 (Green's deposition testimony: "Q. Okay. Do you know how you came to be involved in Paul Amann's discipline? A. Yes. Q. How? A. I was appointed. Sean appointed me to be involved in it. He asked me to be his – to be more precise, he appointed me as his designee.").

There is also evidence that suggests that Reyes may have influenced (directly or indirectly) or has first-hand knowledge regarding the allegedly unlawful motivation behind Amann's termination. In particular, according to Amann's Second Amended Complaint, Reyes was appointed to serve as the Attorney General of Utah following the resignation of his predecessor, at least in part, "to clean[] up corruption in OAG." *See* ECF No. 90 ¶¶ 28–29. Consequently, the extent to which OAG was perceived by the public as free of corruption would likely have a significant impact on whether Reyes was viewed as successful and would have implications for his re-election campaign. Amann has produced evidence that, shortly after Reyes was appointed, Reyes wrote to his campaign manager, Alan Crooks, that Amann and his wife "may be more of a liability than help. I cannot investigate every person these guys have a beef with," after Reyes received a forwarded email in which Amann's wife raised concerns about employment fraud at OAG. *See* ECF No. 243-1. In addition, in an email that Reyes sent from his *wife's* email account to his own *personal* email account on July 8, 2015, Reyes listed "Amann" on his to-do list. *See* ECF No. 220-7. And on the day before Romano issued the notice of intent to terminate Amann's employment with OAG, Reyes sent Crooks a text message in which he wrote, "Amann reneged on our deal so he wants to 'burn us to the ground.'" ECF No. 157-2. Crooks responded, "Amann Really??!! What an idiot!" *Id.* Although the significance—or lack thereof—of this evidence remains to be seen, the court finds that Amann has raised a legitimate issue as to the extent of

10

Reyes's involvement in Amann's termination, thereby satisfying the first requirement of the "exceptional" or "extraordinary" circumstances test.

Second, Reyes's "testimony will likely lead to the discovery of admissible evidence." *See Nudge*, 2020 U.S. Dist. LEXIS 218269, at *6. As a named party in the litigation, any statement made by Reyes during the deposition will be non-hearsay and, accordingly, admissible against him at trial, unless some other rule of evidence would render the statement inadmissible. *See* FED. R. EVID. 801(d)(2)(A). Similarly, as the head of OAG, any statement made by Reyes would likely be admissible against OAG at trial. *See* FED. R. EVID. 801(d)(2)(D). In addition, given the evidence that Reyes viewed Amann as a potential "liability" and was at least peripherally involved in the investigation into Amann's conduct and Amann's ultimate termination, Reyes's testimony is likely to lead to the discovery of admissible evidence regarding the process by which Amann was ultimately terminated and the motivations underlying the termination.

Third, it appears that Reyes's "deposition is essential to [Amann's] case." *See Nudge*, 2020 U.S. Dist. LEXIS 218269, at *6. As discussed in the court's Memorandum Decision and Order Sustaining in Part and Overruling in Part Plaintiff's Objections, ECF No. 224, Reyes's deposition is the only way for Amann to obtain a complete picture of the circumstances surrounding the investigation into his conduct and his ultimate termination, including the degree to which Reyes was involved and/or influenced the decision. Indeed, Reyes's deposition is essential to ascertain whether Reyes was "the man behind the curtain," as Amann alleges, ECF No. 242 at 9, or totally removed from Amann's termination, as Defendants assert. Without the opportunity to question Reyes regarding his involvement in Amann's termination, Amann may not be able to succeed on his claims against Reyes. *See Brennan*, 388 F. Supp. 3d at 522.

In addition, in a case such as this, in which credibility and alleged pretext are key, there is little substitute for oral testimony with an opportunity to ask follow-up questions. Reyes's answers to questions such as why he considered Amann a potential liability, *see* ECF No. 243-1, why he included Amann on his to-do list, *see* ECF No. 220-7, why he texted his campaign manager about Amann on the eve of Romano issuing the notice of intent to terminate Amann's employment, *see* ECF No. 157-2, and why he emailed OAG's chief of staff that Amann was causing him stress, *see* ECF No. 164-6, are essential to ascertain whether Amann's whistleblowing activities motivated Reyes to influence those who terminated Amann. And, without a deposition, it is not possible to know whether Reyes's testimony on these issues will be consistent or inconsistent with the testimony of other witnesses and therefore essential to Amann's ability to prevail on his claims. For these reasons, the court concludes that Reyes's deposition testimony is essential to Amann's case.

Fourth, the court concludes that "the information cannot be obtained from an alternative source or via less burdensome means." *See Nudge*, 2020 U.S. Dist. LEXIS 218269, at *6. As an initial matter, only Reyes can definitively answer the questions raised above and fully explain his involvement—or lack thereof—in Amann's termination. Moreover, although Defendants argue that "deposition by written questions, preapproved by this Court, would be a sufficient and less burdensome means for Amann to obtain the information he seeks," ECF No. 236 at 16, the court is not persuaded. While it is true that some courts that have permitted high-ranking officials to be questioned have limited such questioning to written questions, concluding that such an alternative is, at least in the first instance, a sufficient, less-burdensome alternative to an oral deposition, *see, e.g.*, *Nudge*, 2020 U.S. Dist. LEXIS 218269, at *9; *Brennan*, 388 F. Supp. 3d at 522–23; *Martin*, 2018 WL 8263915, at *2–3, the court finds that written questions and responses are not an adequate

12

alternative for an oral deposition in this case. Unlike an oral deposition, written questions do not enable a party to ask follow-up or clarification questions if the deponent's response is evasive or unclear. Similarly, written questions do not permit a party to pursue new or unanticipated lines of questioning if the deponent provides unexpected revelations. More importantly, in a case such as the one here, in which credibility is central, written responses that are carefully crafted and edited by attorneys are no substitute for the witness's spontaneous answers during a live deposition. Moreover, written questions deny the plaintiff the opportunity of assessing the official's demeanor and credibility.

Finally, the court is not convinced that, under the current circumstances, an oral deposition would be significantly more burdensome than responding to written deposition questions. The court has limited Reyes's deposition to four hours (absent a showing of good cause that a longer deposition is necessary), and if Reyes, as Defendants assert, has little knowledge regarding the circumstances surrounding the investigation into Amann's conduct and his ultimate termination, then it should make for a short deposition. In addition, it is also unclear why Reyes will be required to spend significant time preparing for the deposition if, as Defendants contend, Reyes had effectively no involvement in the investigation into Amann's conduct and Amann's ultimate termination. More preparation will only be necessary if Reyes was more involved than Defendants have suggested, but, in that case, Reyes's testimony will be all the more essential. Finally, the court trusts that Amann's attorney will avoid asking harassing or irrelevant questions during the live deposition.

For the foregoing reasons, the court DENIES Defendants' Motion for Reconsideration (ECF No. 236). The court ORDERS Reyes to sit for a deposition, not to exceed four hours in length

(absent a showing of good cause that a longer deposition is necessary), within 21 days of entry of this order.[8]

DATED May 13, 2022.

BY THE COURT

Jill N. Parrish

United States District Court Judge

---

[8] In his opposition to Defendants' motion for reconsideration, "Amann request[ed] that he be awarded his attorney's fees in responding to the motion." ECF No. 242 at 2. Because Amann cites no rule, statute, or caselaw that would justify such an award of attorney's fees here, the court declines to award attorney's fees to Amann.