UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| PAUL G. AMANN,<br><br>    Plaintiff,<br><br>v.<br><br>OFFICE OF THE UTAH ATTORNEY GENERAL; SEAN REYES; BRIDGET ROMANO; and TYLER GREEN,<br><br>    Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S SHORT FORM MOTION TO COMPEL PRODUCTION OF FLASH DRIVE (DOC. NO. 262)**<br><br>Case No. 2:18-cv-00341<br><br>District Judge Jill N. Parrish<br><br>Magistrate Judge Daphne A. Oberg |

Plaintiff Paul G. Amann brought this action against his former employer, the Office of

the Utah Attorney General ( "AGO"), Attorney General Sean Reyes, and other current and

former AGO officials and employees, alleging he was wrongfully terminated in retaliation for

whistleblowing activities.[1]  Mr. Amann has filed a motion to compel production of a flash drive

containing emails to and from four AGO attorneys.[2]  The AGO opposes the motion, arguing the

emails are irrelevant and likely privileged, and producing a privilege log would be unduly

---

[1] (*See generally* Second Am. Compl., Doc. No. 90.)  Docket number is an erratum to the Second Amended Complaint initially filed at docket number 89.  The erratum is the operative Second Amended Complaint.  (*See* Mem. Decision and Order Granting in Part and Den. in Part Defs.' Partial Mot. to Dismiss Second Am. Compl. 2 n.2, Doc. No. 172.)

[2] (Pl.'s Short Form Mot. to Compel Prod. of Flash Drive ("Mot."), Doc. No. 262.)

burdensome.[3]  The court held a hearing, ruled the AGO had not waived its objections, and took

the motion under advisement.[4]

     Mr. Amann's motion is granted in part and denied in part.  The AGO is ordered to

produce certain documents from the flash drive and to provide a privilege log, as described

below.  Mr. Amann's request for attorney fees is denied.

## BACKGROUND

     Mr. Amann claims he was terminated in retaliation for reporting misconduct at the AGO,

including concerns about an inappropriate relationship between AGO employees Craig Barlow

and Cindy Poulson.[5]  Mr. Amann alleges he initially reported his concerns within the AGO, then

made a report to the Utah Department of Human Resource Management ("DHRM") in 2014.[6]

DHRM conducted an investigation and found the relationship was consensual and there was no

sexual harassment by Mr. Barlow.[7]  (The AGO contends DHRM conducted the investigation at

the AGO's request, not Mr. Amann's.)[8]  According to Mr. Amann, this investigation was

---

[3] (Defs.' Opp'n to Pl.'s Short Form Mot. to Compel Prod. of Flash Drive ("Opp'n"), Doc. No. 265.)

[4] (*See* Minute Entry, Doc. No. 268.)

[5] (*See* Second Am. Compl. ¶¶ 19–26, 34, 64, 97–98, 106, Doc. No. 90.)

[6] (*See id.* ¶ 34.)

[7] (*See id.* ¶ 43.)

[8] (*See* Opp'n 2, 4, Doc. No. 265.)

"tightly controlled" by the AGO and "ignored how the relationship created a hostile work environment for others in the office."[9]

The AGO suspended Mr. Amann in 2015 and later terminated him.[10]  According to the AGO, Mr. Amann was terminated because of his involvement in sending a packet of information about Ms. Poulson's criminal history to the head of a training she was attending.[11]  Mr. Amann alleges the AGO's stated reasons for terminating him were false, and he was actually terminated for whistleblowing activities.[12]  Mr. Amann filed this action, asserting a claim for violation of Utah's whistleblower protection statute, a Title VII retaliation claim, and constitutional claims for violations of the First and Fourth Amendments.[13]

The AGO provided the flash drive at issue here to DHRM during the 2014 investigation into the relationship between Mr. Barlow and Ms. Poulson.[14]  According to the AGO, the flash drive contains emails sent to and from Mr. Barlow, Ms. Poulson, and two other AGO attorneys on their AGO email accounts during a one-and-a-half to two year period.[15]  Mr. Amann issued a

---

[9] (Second Am. Compl. ¶ 43, Doc. No. 90.)

[10] (*See id.* ¶¶ 78, 106.)

[11] (*See* Opp'n 2, Doc. No. 265; *see also* Second Am. Compl. ¶¶ 71–72, 97–98, 106, Doc. No. 90 (describing the termination documents provided by the AGO).)

[12] (*See* Second Am. Compl. ¶¶ 97–98, 106, 136, 143, Doc. No. 90.)

[13] (*See id.* ¶¶ 126–171.)

[14] (*See* Mot. 1, Doc. No. 262; Opp'n 2, Doc. No. 265.)

[15] (Opp'n 2, Doc. No. 265; Defs.' Suppl. Br. 2, 6, Doc. No. 269; Defs.' Resp. to Pl.'s Suppl. Br. 2, Doc. No. 271.)

discovery request for a copy of the flash drive in August 2021.[16] The AGO initially responded

that the flash drive could not be located.[17] The AGO later supplemented its response to indicate

the flash drive had been found, and objected to the request on grounds of relevance, undue

burden, attorney-client privilege, and work-product protection.[18] The AGO did not produce a

copy of the flash drive or a privilege log, and agreed to produce only the emails the DHRM

investigator reviewed.[19] Mr. Amann then filed the instant motion to compel production of the

flash drive.[20]

In support of its opposition, the AGO provided declarations from the IT director who

originally compiled the flash drive's contents,[21] the DHRM investigator who reviewed the flash

drive in 2014,[22] and a forensic examiner who reviewed the flash drive after it was recently

located.[23] According to the IT director, in connection with the 2014 DHRM investigation, he

was asked to provide emails exchanged among certain AGO employees.[24] He collected the

---

[16] (*See* Ex. 4 to Mot., Def.'s Answers and Resps. to Pl.'s Second Set of Disc. Reqs. 13, Request No. 20, Doc. No. 262-4.)

[17] (*See id.*)

[18] (*See* Ex. 6 to Mot., Def.'s Suppl. Resp. to Pl.'s Doc. Req. No. 20, Doc. No. 262-6.)

[19] (*See* Opp'n 4, Doc. No. 3.)

[20] (Mot., Doc. No. 262.)

[21] (Ex. 2 to Opp'n, Decl. of Chris Earl ("Earl Decl."), Doc. No. 265-2.)

[22] (Ex. 3 to Opp'n, Decl. of Rosanne Ricks ("Ricks Decl."), Doc. No. 265-3.)

[23] (Ex. 1 to Opp'n, Decl. of Lane Perkins ("Perkins Decl."), Doc. No. 265-1.)

[24] (Earl Decl. ¶ 3, Doc. No. 265-2.)

emails from the AGO servers, compiled them on the flash drive, and provided the flash drive to the DHRM investigator.[25]  The DHRM investigator states she only reviewed approximately 100 of the emails, which she summarized in a spreadsheet attached to her declaration.[26]  She concluded that "further review would be of little value because the emails were primarily work-related and chatty emails among colleagues that were largely irrelevant to the investigation."[27]  According to the forensic examiner, the flash drive contains approximately 14 GB of data comprised of about 53,750 documents, which primarily appear to be copies of emails.[28]

## LEGAL STANDARDS

Rule 26 permits discovery on "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."[29]  Factors to be considered in determining proportionality include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."[30]

---

[25] (*Id.*)

[26] (Ricks Decl. ¶ 6, Doc. No. 265-3.)

[27] (*Id.* ¶ 7.)

[28] (Perkins Decl. ¶ 5, Doc. No. 265-1.)

[29] Fed. R. Civ. P. 26(b)(1).

[30] *Id.*

**ANALYSIS**

The AGO contends the emails on the flash drive are irrelevant and likely include attorney-client-privileged communications and work-product-protected materials.[31]  The AGO argues requiring it to review all 53,000 emails and provide a privilege log would be unduly burdensome, given their lack of relevance.[32]  Mr. Amann argues the flash drive's contents are relevant, and the AGO waived any claim of privilege or protection by providing the emails to DHRM.[33]

    1.  Relevance

The emails between AGO attorneys compiled on the flash drive are relevant to Mr. Amann's claims.  Mr. Amann claims he was terminated due to whistleblowing activities, including reporting concerns about the relationship between Mr. Barlow and Ms. Poulson.  The flash drive contains documents which the AGO provided to DHRM for its investigation of the relationship.  These documents are relevant to show how the AGO responded to Mr. Amann's reports, and they may also contain evidence of the underlying alleged misconduct which Mr. Amann was reporting.  Under these circumstances, the emails provided to DHRM are relevant.

---

[31] (Opp'n 3, Doc. No. 265.)

[32] (*Id.*)

[33] (Mot. 2–3, Doc. No. 262.)  Mr. Amann also argued all the AGO's objections should be deemed waived because the AGO did not assert them in its initial response to his discovery request.  The court rejected this argument at the hearing, ruling the AGO's objections were not waived due to untimeliness, or, alternatively, any waiver was excused.  (*See* Minute Entry, Doc. No. 268.)

Indeed, the DHRM investigator's spreadsheet summary indicates even the limited sample she reviewed contains emails relevant to the claims in this case.  The investigator summarized one email from Ms. Poulson to Mr. Barlow as follows: "Thinking of you; I miss you; I wish you were here with me."[34]  Based on this description, the email could contain evidence supporting Mr. Amann's report of an inappropriate workplace relationship between Ms. Poulson and Mr. Barlow.  The investigator also described a January 2014 email from Ms. Poulson to another AGO attorney as "Fwd: Packer Leaked Emails Story."[35]  This appears to refer to media reports regarding inappropriate emails between Ms. Poulson and Mr. Barlow.[36]  Emails between AGO attorneys on this topic are relevant to Mr. Amann's claims, where Mr. Amann alleges the AGO retaliated against him for reporting his concerns about this relationship, among other whistleblowing activities.  The presence of relevant emails among the small sample reviewed by the investigator suggests other emails on the flash drive are relevant as well.

The AGO argues the DHRM investigation and its conclusions are not central to Mr. Amann's 2016 termination.[37]  The AGO points to Mr. Amann's motion for summary judgment, which stated (as an undisputed fact) that Mr. Amann was terminated "because of his purported involvement in sending the packet of information about Ms. Poulson's criminal history to the

---

[34] (Ricks Decl. Ex. A, Doc. No. 265-3 at 6.)

[35] (*Id.* at 7.)

[36] (*See* Second Am. Compl. ¶¶ 31–32, Doc. No. 90 (describing media reports regarding emails between Mr. Barlow and Ms. Poulson in January 2014).)

[37] (Opp'n 2, Doc. No. 265.)

director of an out-of-state training meeting."[38]   However, Mr. Amann's summary judgment

motion merely refers to the AGO's stated reasons for terminating him—arguing these reasons

violated the First Amendment and Utah's whistleblower protection statute.[39]   This does not

preclude Mr. Amann from pursuing his claim that his earlier whistleblowing activities (related to

Ms. Poulson's relationship with Mr. Barlow) also motivated his termination.

The AGO also suggests all emails other than the 100 which the DHRM investigator

reviewed are irrelevant, because the other emails were not considered in the investigation.   But

the fact that DHRM never reviewed or considered the other emails does not render them

irrelevant.   The flash drive contains documents the AGO considered relevant, at the time, to the

issues being investigated.   Thus, these documents are relevant to show how the AGO responded

to Mr. Amann's whistleblowing activities, regardless of whether the investigator considered

them.

However, the flash drive's contents are relevant only to the extent they comprise internal

AGO communications.   The AGO's supplemental briefing suggests the flash drive contains not

only emails between the four AGO attorneys, but also emails with "other government lawyers,

agents or offices."[40]   To the extent the flash drive contains correspondence with individuals and

---

[38] (Pl.'s Mot. for Partial Summ. J. ¶ 35, Doc. No. 219 (internal quotation marks omitted).)   This motion was later denied without prejudice with leave to refile.   (*See* Order, Doc. No. 256.)   Due to ongoing discovery disputes, the motion has not yet been refiled.

[39] (*See* Pl.'s Mot. for Partial Summ. J. ¶¶ 34–35, pp. 10, 19, Doc. No. 219.)

[40] (Defs.' Resp. to Pl.'s Suppl. Br. 2, Doc. No. 271.)   The IT director's declaration, on the other hand, indicates the flash drive contains "copies of emails exchanged *among* certain AGO employees." (Earl Decl. ¶ 3, Doc. No. 265-2 (emphasis added).)   The forensic examiner's

entities outside the AGO, Mr. Amann has not demonstrated this outside correspondence is

relevant to his claims.  Such emails are unlikely to contain evidence of the underlying

misconduct Mr. Amann reported or the AGO's response to his reports.  Accordingly, the AGO

need not produce such outside correspondence.

    2.  <u>Undue Burden</u>

The AGO asserts the flash drive likely contains attorney-client privileged

communications and work-product-protected materials because the emails compiled on the flash

drive were "sent or received in the ordinary course of the attorneys' practice of law on behalf of

[the] AGO."[41]  The AGO acknowledges its counsel has not reviewed all the emails, and the

AGO has not provided a privilege log asserting privilege or protection for specific documents.[42]

But the AGO argues requiring it to review the emails for privilege and provide a privilege log

would be unduly burdensome.[43]

---

declaration also suggests the flash drive primarily contains emails between the four attorneys.
(*See* Perkins Decl. ¶¶ 6–9, Doc. No. 265-1.)  According to the forensic examiner, the flash drive
contains a "main file folder" entitled "Craig [Barlow] to-from Cindy [Poulson]."  (*Id.* ¶ 6.)  It
also contains a "GMD Exports" folder with subfolders for emails between each of the four AGO
attorneys whose correspondence was compiled.  (*Id.* ¶ 8.)  Finally, it contains a "Novus Exports"
folder with subfolders labeled with each attorney's name.  (*Id.* ¶ 9.)  It is unclear whether this last
folder contains external communications.

[41] (Defs.' Suppl. Br. 6, Doc. No. 269; *see also* Opp'n 2, Doc. No. 265.)

[42] (*See* Defs.' Suppl. Br. 6 n.3, Doc. No. 269; Opp'n 3, Doc. No. 265.)

[43] (*See* Opp'n 3, Doc. No. 265.)

Mr. Amann argues the AGO waived any claim of privilege or protection when it disclosed the emails to DHRM.[44]  The AGO responds that privilege or protection was not waived because the DHRM was acting as the AGO's agent when it conducted the investigation.[45]  If the AGO waived any claim of privilege and work-product protection by providing the flash drive to the DHRM investigator, no privilege review would be necessary—thereby rendering the AGO's undue burden argument moot.  Accordingly, the issue of waiver is addressed first.

Typically, in federal courts, federal common law governs the existence of privilege unless state law supplies the rule of decision as to an element of the claim or defense.[46]  When privilege is claimed as to evidence relating to both federal and state law claims, "most circuit courts have either held that federal privilege law governs or approved of such an approach without explicitly adopting it."[47]  But the Tenth Circuit takes a different approach, holding where there are federal and state law claims, "[a]s to state causes of action, a federal court should look to state law in deciding privilege questions."[48]  That said, "it appears that the Tenth Circuit has not confronted the issue of which law applies where evidence allegedly subject to a privilege is relevant to both the federal and state-law claims in the case."[49]

---

[44] (Mot. 2–3, Doc. No. 262.)

[45] (Opp'n 4, Doc. No. 265; Defs.' Suppl. Br. 7–8, Doc. No. 269.)

[46] *See* Fed. R. Evid. 501; *see also Entrata, Inc. v. Yardi Sys.*, No. 2:15-cv-00102, 2018 U.S. Dist. LEXIS 149239, at *6 (D. Utah Aug. 30, 2018) (unpublished).

[47] *Entrata, Inc.*, 2018 U.S. Dist. LEXIS 149239, at *6 (internal quotation marks omitted).

[48] *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1551 (10th Cir. 1995).

[49] *Entrata, Inc.*, 2018 U.S. Dist. LEXIS 149239, at *6–7 (internal quotation marks omitted).

Mr. Amann asserts both state and federal claims, which largely rely on the same underlying allegations regarding his whistleblowing activities and termination. Thus, documents on the flash drive are relevant to both the state and federal claims. Nevertheless, both parties urge the court to apply federal privilege law to the instant dispute.[50] Where this case arises from federal question jurisdiction, and the parties agree federal privilege law applies, the court looks to federal law to determine whether the AGO's claims of privilege and work-product protection were waived.[51]

### a. Waiver of Attorney-Client Privilege

In the Tenth Circuit, "attorney-client privilege protects confidential communications by a client to an attorney made in order to obtain legal assistance from the attorney in his capacity as a legal advisor."[52] The privilege also protects attorney-to-client communications which "constitute legal advice, or tend directly or indirectly to reveal the substance of a client

---

[50] (Defs.' Suppl. Br. 4–5, Doc. No. 269; Pl.'s Suppl. Br. 1, Doc. No. 270.)

[51] *Cf. Am. W. Bank Members, L.C. v. Utah*, No. 2:16-cv-00326, 2022 U.S. Dist. LEXIS 6227, at *7 (D. Utah Jan. 11, 2022) (unpublished) ("Where this case is one arising out of federal question jurisdiction, no entity argued which law should apply, and no party indicated which claim(s) the documents relate to, the court looks to federal law." (citation omitted)). As noted below, Utah law applies similar standards for privilege, work-product protection, and waiver. Thus, the outcome would be the same under Utah law.

[52] *In re Grand Jury Proceedings*, 616 F.3d 1172, 1182 (10th Cir. 2010) (internal quotation marks omitted). Similarly, under Utah law, a party claiming attorney-client privilege must establish: "(1) an attorney-client relationship, (2) the transfer of confidential information, and (3) the purpose of the transfer was to obtain legal advice." *S. Utah Wilderness All. v. Automated Geographic Reference Ctr., Div. of Info. Tech.*, 2008 UT 88, ¶ 33, 200 P.3d 643, 655 (Utah 2008).

confidence."[53]  "Because confidentiality is the key to maintaining the attorney-client privilege, a

party waives the privilege when he voluntarily discloses to a third party material or information

that he later claims is protected."[54]

It is undisputed the AGO voluntarily disclosed the flash drive containing attorney emails

to DHRM, an outside agency.  But the AGO argues this did not result in waiver because DHRM

was acting as the AGO's agent by conducting an investigation at the AGO's request.[55]

Several district courts in this circuit have recognized the "presence of a third-party will

not destroy the attorney-client privilege if the third-party is the attorney's or client's agent or

possesses commonality of interest with the client."[56]  However, these cases also considered

"whether the third-party communication was made in confidence for the purpose of obtaining

legal advice from the lawyer."[57]  For example, in *Graystone Funding Company, LLC v. Network*

---

[53] *In re Grand Jury Proceedings*, 616 F.3d at 1182 (quoting *United States v. Defazio*, 899 F.2d 626, 635 (7th Cir. 1990)).

[54] *Id.* at 1184; *see also Burke v. Regalado*, 935 F.3d 960, 1023 (10th Cir. 2019) ("Any voluntary disclosure by the client to a third party waives the privilege . . . ." (internal quotation marks omitted)).  Likewise, under Utah law, voluntary disclosure by the privilege holder waives attorney-client privilege.  *See Moler v. CW Mgmt. Corp.*, 2008 UT 46, ¶ 17, 190 P.3d 1250, 1254 (Utah 2008); *Krahenbuhl v. Cottle Firm*, 2018 UT App. 138, ¶ 8, 427 P.3d 1216, 1219 (Utah Ct. App. 2018) (explaining Utah courts "have long held that [attorney-client privilege] can be waived by a client" (internal quotation marks omitted)).

[55] (Opp'n 4, Doc. No. 265; Defs.' Suppl. Br. 7–8, Doc. No. 269; Defs.' Resp. to Pl.'s Suppl. Br. 3–4, Doc. No. 271.)

[56] *Graystone Funding Co., LLC v. Network Funding, L.P.*, No. 2:19-cv-00383, 2020 U.S. Dist. LEXIS 263633, at *8 (D. Utah Dec. 11, 2020) (unpublished) (quoting *Roe v. Catholic Health Initiatives Colo.*, 281 F.R.D. 632, 637 (D. Colo. 2012)); *see also Bethel v. United States*, No. 05-cv-01336-PSF-KLM, 2008 U.S. Dist. LEXIS 1680, at *21 (D. Colo. Jan. 2, 2008) (unpublished).

[57] *Roe v. Catholic Health Initiatives Colo.*, 281 F.R.D. at 637.

*Funding, L.P.*,[58] the court found privilege was not waived for emails between company

executives, in-house counsel, and a third party because the third party was acting as the

company's agent in business negotiations and these communications were made for the purpose

of seeking legal advice from in-house counsel.[59]  In *Roe v. Catholic Health Initiatives

Colorado*,[60] the court found "confidential communications between the attorneys retained by the

company and the Human Resources Department personnel [did] not necessarily lose their

protected character so long as the confidential information [was] revealed for the purpose of

obtaining legal advice."[61]  And in *Bethel v. United States*,[62] the court found a government agency

did not waive privilege by sharing attorney communications with an agency employee, where

"the communications were made in an attempt to convey or gain information related to the

pending litigation."[63]

Here, the AGO did not share the attorney emails with DHRM for the purpose of

obtaining legal advice but, rather, for the purpose of investigating alleged workplace misconduct

by those attorneys.[64]  This investigation was unrelated to the underlying legal matters giving rise

---

[58] 2020 U.S. Dist. LEXIS 263633.

[59] *Id.* at *9.

[60] 281 F.R.D. 632.

[61] *Id.* at 637.

[62] 2008 U.S. Dist. LEXIS 1680.

[63] *Id.* at *23–24.

[64] (*See* Opp'n 2, Doc. No. 265; Defs.' Resp. to Pl.'s Suppl. Br. 4, Doc. No. 271.)

13

to the privileged communications—i.e., the cases or other legal matters the attorneys were

working on.  Instead, the investigation concerned allegations of an inappropriate workplace

relationship between the attorneys.[65]  In other words, the AGO voluntarily disclosed purportedly

privileged attorney emails to DHRM, an outside entity, to facilitate a workplace misconduct

investigation unrelated to the underlying legal matters the attorneys were working on.  And the

AGO does not argue the investigation itself was conducted for the purpose of obtaining legal

advice regarding the workplace misconduct issue.  Under these circumstances, the AGO waived

attorney-client privilege by disclosing the attorney emails to DHRM.

   The AGO also suggests the disclosure was limited to the approximately 100 emails the

DHRM investigator actually reviewed.  But waiver depends on whether privileged

communications were voluntarily disclosed, not what the recipient did with them.  Where the

AGO voluntarily provided the flash drive to the investigator, this disclosure operates as a waiver

of the entire contents of the flash drive regardless of how many emails the investigator actually

reviewed.

   For these reasons, the AGO waived any claim of attorney-client privilege for the contents

of the flash drive when it provided the flash drive to the DHRM investigator.  However, this

waiver is inapplicable to attorney-client privileged communications where the client was an

---

[65] These circumstances are distinguishable from another case cited by the AGO: *Stewart v. Kempthorne*, No. 2:06-CV-209 TC, 2007 U.S. Dist. LEXIS 40525 (D. Utah June 4, 2007) (unpublished).  In that case, the court found disclosure of attorney communications to a person who was "acting as an agent" of the Bureau of Land Management did not result in waiver because "he was acting in the role of an employee on the very issue for which the BLM (the client) obtained legal advice."  *Id.* at *5–6.

outside agency or entity.  Attorney-client privilege belongs to the client,[66] and there has been no

showing of waiver by any outside client.  Accordingly, the AGO's disclosure to DHRM waived

privilege only as to communications for which the AGO is the privilege holder.[67]  Thus, the

AGO may only withhold documents from the flash drive based on a claim of attorney-client

privilege where the privilege-holder is an outside client.

### b.   Waiver of Work-Product Protection

The work-product doctrine "prevents disclosure of information that was prepared by [an]

attorney in anticipation of litigation or for trial."[68]  Under this doctrine, "[a]ttorneys' mental

impressions are broadly protected in order to further 'society's interest in protecting the

adversary system by shielding litigants' work-product from their opponents, and thus freeing

lawyers to create such materials without fear of discovery and exploitation.'"[69]  Waiver of work

---

[66] *See In re Vargas*, 723 F.2d 1461, 1466 (10th Cir. 1983); *see also Burke*, 935 F.3d at 1023 (stating privilege may be waived by the client).

[67] Portions of the AGO's briefing suggest the AGO itself is the client for purposes of the AGO's privilege claim.  (*See* Defs.' Suppl. Br. 6, Doc. No. 269; Defs.' Resp. to Pl.'s Suppl. Br. 2, Doc. No. 271 (citing *Tax Analysts v. Internal Revenue Serv.*, 117 F.3d 607, 618 (D.C. Cir. 1997), for the proposition that "[i]n the governmental context, the 'client' may be the agency and the attorney may be the agency lawyer.").)  However, elsewhere, the AGO suggests its attorneys may have represented outside Utah agencies or officers.  (*See* Defs.' Resp. to Pl.'s Suppl. Br. 2, Doc. No. 271.)

[68] *In re Grand Jury Proceedings*, 616 F.3d at 1184; *see also* Fed. R. Civ. P. 26(b)(3) (protecting materials prepared in anticipation of litigation or trial from discovery except in limited circumstances).  Utah law contains "nearly identical" protections for work-product materials as the federal rules.  *Gold Standard v. Am. Barrick Res. Corp.*, 805 P.2d 164, 168 (Utah 1990); *see also S. Utah Wilderness All.*, 2008 UT 88, ¶¶ 23–24.

[69] *Larson v. One Beacon Ins. Co.*, No. 12-cv-03150-MSK-KLM, 2013 U.S. Dist. LEXIS 81181, at *21–22 (D. Colo. June 10, 2013) (unpublished) (quoting *In re Foster*, 188 F.3d 1259, 1272 (10th Cir. 1999)).

product "is limited to disclosures that are likely to fall into an adversary's possession."[70] Thus,

"the pertinent question is not whether the information was disclosed, as with the attorney-client

privilege, but whether the information was disclosed to an adversary."[71] Because of this

distinction, "it is less likely that work-product protection has been waived by disclosure to others

than that the attorney-client privilege has been waived under the same circumstances."[72]

The AGO argues DHRM was not an adversary because it conducted the investigation at

the AGO's request.[73] The AGO submitted a supporting declaration from the DHRM investigator

stating she "conducted [the] investigation for the Utah Attorney General's Office."[74] Mr.

Amann presented no contrary evidence suggesting DHRM was in an adversarial role.  In fact,

Mr. Amann alleges in his complaint that the AGO "tightly controlled" the DHRM

investigation.[75] On this record, the AGO has demonstrated DHRM was not an adversary when

---

[70] *Id.* at *22 (quoting *In re Commercial Fin. Servs., Inc.*, 247 B.R. 828, 853 n.33 (N.D. Okla. 2000)); *see also In re Urethane Antitrust Litig.*, No. 04-MD-1616-JWL, 2009 U.S. Dist. LEXIS 60496, at *41 (D. Kan. July 15, 2009) (unpublished) ("Work-product protection is waived when privileged documents are voluntarily disclosed to an adversary because [d]isclosure to an adversary is clearly inconsistent with the rule's goal of promoting the adversarial system." (alteration in original) (internal quotation marks omitted).)  Similarly, the Utah Supreme Court has recognized "work product protection is waived when disclosure substantially increases the opportunity for potential adversaries to obtain the information."  *Gold Standard*, 805 P.2d at 172 (internal quotation marks omitted).

[71] *Larson*, 2013 U.S. Dist. LEXIS 81181, at *22–23.

[72] *Id.* at *22.

[73] (Opp'n 4, Doc. No. 265; Defs.' Suppl. Br. 7–8, Doc. No. 269; Defs.' Resp. to Pl.'s Suppl. Br. 3–4, Doc. No. 271.)

[74] (Ricks Decl. ¶ 3, Doc. No. 265-3.)

[75] (Second Am. Compl. ¶ 43, Doc. No. 90.)

the AGO disclosed the flash drive.  Further, the record contains no basis to find disclosure to DHRM made the flash drive likely to fall into an adversary's possession.  Therefore, the AGO did not waive its claim of work-product protection by disclosing the flash drive to DHRM.

### c.  Burden of Producing a Privilege Log

The court next addresses the AGO's argument that requiring it to review all the emails and provide a privilege log would be unduly burdensome.  The AGO has failed to make a showing of undue burden.  The AGO's burden argument is premised, in part, on its assertion that the documents on the flash drive are irrelevant,[76] which the court has rejected.  The AGO's only other basis for asserting undue burden appears to be the fact that the flash drive contains 53,000 emails.  However, the AGO provided no supporting evidence or estimate of the time or expense required to review these emails and to produce a privilege log.  Because the documents are relevant to Mr. Amann's claims, and the AGO has not provided evidence of the burden required to review them for privilege and work product, any burden does not outweigh the likely benefit of this discovery.

Accordingly, the AGO must provide a privilege log for any documents it seeks to withhold on the basis of (1) work-product protection or (2) attorney-client privilege where the privilege holder is an outside client.

### 3.  Fee Request

Mr. Amann requests an award of attorney fees incurred in bringing the motion to compel. Because the motion is granted in part and denied in part, and because the AGO's position was

---

[76] (*See* Opp'n 3, Doc. No. 265; Defs.' Suppl. Br. 6 n.3, Doc. No. 269.)

17

substantially justified as to the portions of the motion on which Mr. Amann prevailed, Mr. Amann's fee request is denied.[77]  The court apportions each party its own expenses related to this motion.

## CONCLUSION

Mr. Amann's motion to compel is granted in part and denied in part, and the court ORDERS as follows:

1.      The AGO need not produce documents from the flash drive which are communications between AGO attorneys and outside individuals or entities, as these outside communications are irrelevant to the claims and defenses in this case.

2.      For any other documents from the flash drive which the AGO seeks to withhold on the basis of (1) work-product protection or (2) attorney-client privilege where the privilege holder is an outside client, the AGO is ordered to provide a privilege log.

3.      The AGO is ordered to produce all other documents from the flash drive.

---

[77] *See* Fed. R. Civ. P. 37(a)(5)(A)(ii) (providing if a motion to compel is granted, the court must not award fees "if the opposing party's nondisclosure, response, or objection was substantially justified"); Fed. R. Civ. P. 37(a)(5)(C) (providing if a motion to compel is granted in part and denied in part, the court "may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion.").

4.      The AGO must comply with this order within thirty days unless the parties
stipulate to a different deadline.

5.      Mr. Amann's request for attorney fees is denied.

DATED this 20th day of December, 2022.

BY THE COURT:

_Daphne A. Oberg_

Daphne A. Oberg
United States Magistrate Judge