# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| PAUL G. AMANN,<br><br>      Plaintiff,<br><br>v.<br><br>OFFICE OF THE UTAH ATTORNEY GENERAL, SEAN REYES, BRIDGET ROMANO, and TYLER GREEN, in their individual and official capacities,<br><br>      Defendants. | **MEMORANDUM DECISION & ORDER DENYING PARTIES' CROSS-MOTIONS FOR SANCTIONS**<br><br>Case No. 2:18-cv-00341-JNP-DAO<br><br>District Judge Jill N. Parrish |

Through this action, Plaintiff Paul Amann ("Plaintiff" or "Mr. Amann") asserts a number of claims against the Office of the Utah Attorney General ("AGO") and Sean Reyes, Bridget Romano, and Tyler Green in their individual and official capacities (collectively, "Defendants"). Before the court at this time are the parties' cross-motions for sanctions based on the alleged spoliation of evidence. For the reasons set out below, Plaintiff's Motion for Default Judgment Based on Defendants' Spoliation of Evidence, ECF No. 286 ("Pl.'s Sanctions Mot."), and Defendants' Motion for Sanctions Based on Plaintiff's Spoliation of Evidence, ECF No. 297 ("Defs.' Sanctions Mot."), are both **DENIED**.

## BACKGROUND

The court considers the parties' motions against the backdrop of significant litigation history. The factual background underlying Mr. Amann's claims, as well as the procedural history of this case, can be found elsewhere. *See Amann v. Office of the Utah AG*, 2019 U.S. Dist. LEXIS

33091, at *2-7 (D. Utah Feb. 28, 2019); *In re Off. of the Utah AG*, 56 F.4th 1254, 1256 (10th Cir. 2022). However, to briefly restate the factual predicate for this action in broad strokes, Mr. Amann's lawsuit stems from his termination from the AGO in September 2016, which he claims was in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., and the Utah Protection of Public Employees Act, UTAH CODE ANN. § 67-21-1 *et seq*. ("Whistleblower Act"), *see* ECF No. 89 ("SAC") at 2, generally constituting retaliation for Mr. Amann's alleged anti-corruption whistleblowing activities. *See id*. ¶¶ 19-97, 127-36, 141-42.

The AGO, on the other hand, maintains that Mr. Amann's termination was legitimate and non-retaliatory, ultimately resulting from Mr. Amann's alleged harassment of a co-worker, Cynthia Poulson. *See* Defs.' Sanctions Mot. at 1, 5-6. Relevant to one of the AGO's defenses is its allegation that Mr. Amann sent, or was otherwise involved in sending, an anonymous packet of documents regarding Ms. Poulson to the National Computer Forensics Institute ("NCFI packet"). *Id*. at 5-6.

Through their respective motions, the parties seek issuance of sanctions for counter-party spoliation of evidence. Mr. Amann seeks entry of default judgment, arguing that the Defendants failed to implement an adequate litigation hold upon his request and thereby failed to preserve relevant documents and information. Defendants, in turn, argue that Mr. Amann intentionally deleted relevant email correspondence after the initiation of this action and seek an adverse inference or adverse presumption instruction at trial and the striking of a potential witness. Both parties also seek attorneys' fees for work in conjunction with the sanctions motions.

## LEGAL STANDARD

"Spoliation is . . . the intentional destruction of evidence that is presumed to be unfavorable to the party responsible for its destruction." *Moreno v. Taos Cty. Bd. of Comm'rs*, 587 F. App'x 442, 444 (10th Cir. 2014) (quoting *United States v. Copeland*, 321 F.3d 582, 597 (6th Cir. 2003)).

Sanctions for spoliation of evidence are appropriate when the party "had a duty to preserve the evidence because it knew or should have known that litigation was imminent, and [the other party] was prejudiced by the destruction of the evidence." *103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 989 (10th Cir. 2006); *Burlington N. & Santa Fe Ry. v. Grant*, 505 F.3d 1013, 1032 (10th Cir. 2007).

Although it is within this court's discretion whether sanctions may issue for spoliation, *Jones v. Norton*, 809 F.3d 564, 580 (10th Cir. 2015), "[t]he entry of default judgment or the imposition of adverse inferences require a showing of bad faith[.]" *Id.*; *Lee v. Max Int'l, LLC*, 638 F.3d 1318, 1321 (10th Cir. 2011). "Mere negligence in losing or destroying" evidence is not enough to warrant these two forms of sanctions. *Turner v. Pub. Serv. Co.*, 563 F.3d 1136, 1149 (10th Cir. 2009) (quoting *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1407 (10th Cir. 1997)). This court's finding of bad faith is reviewed for clear error. *Id.* at 1149.[1] Because of courts' strong preference to resolve suits on their merits, *Lee*, 638 F.3d at 1318, entry of judgment based on a spoliation motion represents "an extreme sanction," *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920 (10th Cir. 1992), which should be used as "a weapon of last, rather than first, resort." *Id.* (quoting *Meade v. Grubbs*, 841 F.2d 1512, 1520 n.6 (10th Cir. 1988)). *Ehrenhaus* outlines five factors courts must consider before resorting to entry of judgment as a sanction:

> (1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; . . . (3) the culpability of the litigant," *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1465 (10th Cir. 1988) (quoting *Meade*, 841 F.2d at

---

[1] Additionally, the court assumes that the burden lies on the party seeking sanctions for the spoliation of evidence, and that such burden is by a preponderance of the evidence. *See, e.g., Franklin v. Stephenson*, 2022 U.S. Dist. LEXIS 184832, at *12 (D.N.M. Feb. 16, 2022) (citing *Turner v. United States*, 736 F.3d 274, 282 (4th Cir. 2013)); *Wolff v. United Airlines, Inc.*, 2019 U.S. Dist. LEXIS 158350, at *6 (D. Colo. Sep. 17, 2019); *Zbylski v. Douglas Cty. Sch. Dist.*, 154 F. Supp. 3d 1146, 1160 (D. Colo. 2015).

3

> 1521 n.7 (10th Cir. 1988)); (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance, *see, e.g.*, *Willner v. University of Kansas*, 848 F.2d 1023, 1030 (10th Cir. 1988) (per curiam), *cert. denied*, 488 U.S. 1031 (1989); . . . and (5) the efficacy of lesser sanctions. *See Ocelot Oil*, 847 F.2d at 1465; *Meade*, 841 F.2d at 1520[.]

965 F.2d at 921. "These factors do not constitute a rigid test; rather, they represent criteria for the district court to consider prior to imposing dismissal as a sanction." *Id*. As a general principle, then, "[o]nly when the aggravating actors outweigh the judicial system's strong predisposition to resolve cases on their merits is dismissal an appropriate sanction." *Id*. (quoting *Meade*, 841 F.2d at 1521 n.7).

Rule 37(e) of the Federal Rules of Civil Procedure governs the imposition of sanctions when "electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery." Upon finding that the spoliating party acted "with the intent to deprive another party of the information's use in the litigation," the court may "(A) presume that the lost information was unfavorable to the party; [or] (B) instruct the jury that it may or must presume the information was unfavorable to the party." FED. R. CIV. P. 37(e)(2); *accord EEOC v. JetStream Ground Servs.*, 878 F.3d 960, 965 (10th Cir. 2017). As the Advisory Committee Note explains,

> [a]dverse-inference instructions were developed on the premise that a party's intentional loss or destruction of evidence to prevent its use in litigation gives rise to a reasonable inference that the evidence was unfavorable to the party responsible for loss or destruction of the evidence. Negligent or even grossly negligent behavior does not logically support that inference. Information lost through negligence may have been favorable to either party, including the party that lost it, and inferring that it was unfavorable to that party may tip the balance at trial in ways the lost information never would have.

FED. R. CIV. P. 37 (Advisory Committee Note to Subdivision (e)(2) (2015 Amendment)).

4

Ultimately, however, the decision of whether or not to impose sanctions is a matter of this court's discretion and will not be disturbed unless the district court bases its ruling on an erroneous conclusion of law or relies on clearly erroneous fact findings. *Xyngular v. Schenkel*, 890 F.3d 868, 872 (10th Cir. 2018); *Ashby v. McKenna*, 331 F.3d 1148, 1149 (10th Cir. 2003).

## ANALYSIS

In the following parts, the court introduces the parties' motions and arguments before turning to the appropriate resolution of both. The court begins its analysis here, however, by reiterating that the sanctions sought by the parties through their motions are severe—particularly in the case of Plaintiff, who "seeks a default judgment as to Defendant's liability," Pl.'s Sanctions Mot. at 2, 18, emphasizing that "no sanction less than default judgment will cure the prejudice to him from Defendants' conduct. *Id*. at 2; *accord id*. at 19 ("[S]anctions in the form of a default judgment are warranted, and are the only remedy . . . that can cure the prejudice caused by Defendants' conduct."). Defendants request an adverse inference by the court, an adverse presumption instruction, and an order striking a particular witness from testifying at trial on behalf of Mr. Amann's claims, in addition to attorneys' fees for work in conjunction with the motion. Defs.' Sanctions Mot. at 2. Thus, Plaintiff's request, and the gravamen of Defendant's request (regarding adverse inferences and presumption instructions) necessarily require a finding of bad faith by the court. *See Max Int'l*, 638 F.3d at 1321; Fed. R. Civ. P. 37(e)(2).

I. **Plaintiff's Sanctions Motion**

A. **Litigation Holds**

Mr. Amann's Motion for Default Judgment Based on Defendants' Spoliation of Evidence centers on the AGO's alleged failure to respond to his request that they implement an adequate litigation hold as to documents and information relating to the grounds for his 2016 termination.

5

*See* Pl.'s Sanctions Mot. at 1-2. In his motion, Mr. Amann argues that Defendants, given their position of authority in law enforcement, ought to have been especially aware of and sensitive to ethical obligations surrounding the preservation of relevant documents in the face of imminent litigation given Mr. Amann's termination. *Id*. at 13-14.

Mr. Amann further argues that it follows from the AGO's sophistication that its failure to implement the hold evidences the requisite bad faith to support the drastic sanction he seeks. *See* ECF No. 312 at 18-19. And further, as a result of the lack of an adequate and timely litigation hold, Mr. Amann maintains, it can be properly deduced that other relevant evidence was spoliated and that he is entitled to default judgment as a result. *See id*. at 13. Defendants argue in response that, the AGO did, in fact, have in place a litigation hold at the time of Mr. Amann's termination.

Such hold was allegedly implemented by an April 30, 2015 memorandum mandating the preservation of "any and all documents," including paper documents, word processing documents, emails, metadata, etc., "[p]ertaining to Assistant Utah Attorney General Paul Amann," at least "pertaining to the potential or actual litigation identified" in that memorandum. ECF No. 300-6 at 1 ("2015 Litigation Hold"); *see also* ECF No. 299 at 3. Mr. Amann, in turn, argues that the 2015 Litigation Hold is "so vague" as to be meaningless, ECF No. 312, at 1, and that the "litigation identified" therein was totally unrelated to this matter. Further, Mr. Amann argues that the hold was inadequate because Bridget Romano, Tyler Green, and Cynthia Poulson did not receive the notice. *Id*. at 2. Defendants cite, as a backstop, the existence of the office's "Swallow litigation hold," a standing practice to retain emails. *See* ECF No. 299 at 5. Given the parties' competing narratives and characterizations, the inferences properly drawn from the AGO's management of the litigation hold is ultimately a matter of fact and necessarily turns on issues of witness credibility.

6

### B. Bridget Romano Documents

In addition to the AGO's failure to implement an adequate litigation hold, Mr. Amann also points to several categories of documents or information that he claims have been spoliated. The first of these involves documents previously in the custody of then-Chief Civil Deputy Bridget Romano, who placed Mr. Amann on administrative leave in 2015 and sent Mr. Amann a Notice of Intent to Terminate in September 2016. Pl.'s Sanctions Mot. at 3. Plaintiff alleges that certain hard copies of documents printed and organized by Ms. Romano were improperly discarded, and that information on Ms. Romano's cell phone and laptop was spoliated in what Mr. Amann seems to suggest may have been something of a cover-up tactic. *See* ECF No. 312 at 3-4, 6, 9, 18.

#### i. Hand-numbered Exhibits

First, Plaintiff's sanctions motion suggests that the discarding of copies of certain documents that Ms. Romano had collected for a "disciplinary file" constituted spoliation. Pl.'s Sanctions Mot. at 4. Plaintiff concedes that he has received a copy of the full set of documents from which Ms. Romano would have assembled her disciplinary file, *id*. at 15, but maintains that having the underlying information "is not the same as having the documents [Ms. Romano] decided were worth printing and using as an exhibit in her investigation." *Id*.

#### ii. Romano Phone & Laptop

Second, Plaintiff argues that information from Ms. Romano's laptop and cellphone, which Ms. Romano claims were stolen, was spoliated, as Defendants were unable to "retrieve or preserve the information from those devices." ECF No. 312 at 13. Although Mr. Amann might be able to show that information was not retrieved from those devices because the effort to access Ms. Romano's iCloud account "proved unsuccessful," *id*., it is not clear whether the underlying information held on those devices was not replaced and produced by alternative means. As

Defendants state, the text messages that would have been recovered from Ms. Romano's cell phone may have been obtained from other AGO employees' cell phones and subsequently produced, ECF No. 299 at 7, and any relevant information saved to Ms. Romano's laptop may have been saved electronically on AGO's servers and subsequently produced. *Id*. at 17. Mr. Amann maintains his concerns 1) regarding Ms. Romano's knowledge that emails can be permanently deleted and (2) whether the existence of any back-up files on AGO servers would not be "immaterial since [the] AGO has not been forthcoming with those emails." ECF No. 312 at 7. Thus, the inferences drawn from the events surrounding the loss of Ms. Romano's devices is particularly a matter of witness credibility.

### C. Notice of Intent Metadata and Delivery Notice

Next, Mr. Amann argues that Defendants' failure to preserve (or timely produce) certain information related to the September 8, 2016 Notice of Intent constituted sanctionable spoliation because such information "could prove his theory about retaliation." Pl.'s Sanctions Mot. at 8.

First, Mr. Amann argues that metadata from the September 8 Notice of Intent word-processing file, which the AGO had not produced by the time of the filing of his motion, *id*., was spoliated. However, as he acknowledges in reply, metadata for an underlying draft of the Notice of Intent was ultimately produced after the filing of his sanctions motion. ECF No. 312 at 16. Nonetheless, Mr. Amann remains dissatisfied because he contends that the file metadata provided "cannot be trusted[.]" *Id*. at 8. Defendants seek to excuse their late production of the information by explaining that they only discovered a key word search that revealed the draft document years into litigation, after Mr. Amann's sanctions motion was filed. *See* ECF No. 299 at 11.

Second, Mr. Amann sought from Defendants "the Proof of Service for the Notice of Intent to Terminate," sent by certified mail, which he seeks in support his argument that his firing was

8

retaliatory (based on the timing of the creation and delivery of the letter). Pl.'s Sanctions Mot. at 8. Defendants claim they were unable to locate such a proof of service certificate and produced instead a USPS Certified Mail Tracking Report showing that the Notice of Intent arrived at the USPS facility on September 8, 2016 (which would tend to undermine Plaintiff's theory of events). ECF No. 299 at 10. Here, again, Mr. Amann contests the authenticity of the Mail Tracking Report. *See* ECF No. 312 at 9-11. Thus, the inferences drawn from these pieces of evidence, or their reliability, is deeply fact-bound.

### D.  Spencer Austin Documents

The final argument in Mr. Amann's motion that the court addresses individually relates to "a hard copy file of documents regarding Mr. Amann" that had been collected by AGO employee Spencer Austin. Pl.'s Sanctions Mot. at 9. Although, as Defendants point out, that box has been produced to Mr. Amann, ECF No. 299 at 12-13, Mr. Amann responds that the delay in production was prejudicial to him insofar as it deprived him of "the ability to ask [Mr.] Austin in his deposition about the documents he maintained on Amann." ECF No. 312 at 11.

### II.   Defendants' Motion

Next, turning to Defendants' Motion for Sanctions Based on Plaintiff's Spoliation of Evidence, Defendants allege that Mr. Amann intentionally deleted relevant email and text correspondence pertaining to this suit after its initiation, and that such conduct constituted sanctionable spoliation of electronically stored information ("ESI") under Fed. R. Civ. P. 37(e). Of particular concern are email threads (a) between Mr. Amann and Jason Hanks (Mr. Amann's former co-worker at the AGO) and (b) between Mr. Amann and Lynn Packer (an investigative blogger). Defs.' Sanctions Mot. at 1-2.

Defendants move, pursuant to FED. R. CIV. P. 37(e)(2), for (1) a presumption by this court or an adverse inference instruction to the jury that certain emails deleted or not produced by Mr. Amann were unfavorable to him; (2) an order striking Jason Hanks as a witness on Amann's behalf; and (3) attorneys' fees incurred in connection with their motion. *See* Defs.' Sanctions Mot. at 2. The court begins by outlining Defendants' primary argument regarding Mr. Amann's email correspondence with Mr. Hanks before turning to the secondary and tertiary issues of the Lynn Packer emails and Mr. Amann's alleged recordings of meetings with AGO staff and supervisors.

### A. Jason Hanks Emails

Defendants' motion centers on their contention that Mr. Amann deleted relevant emails between himself and Jason Hanks relating to Cynthia Poulson, the grounds for his termination from the AGO, and this lawsuit. *See id*. at 7-10. The Defendants assert that Mr. Amann and Mr. Hanks acted in concert to research and complain about Cynthia Poulson's background and activities at the AGO, *id*. at 4, and that one or both men delivered the NCFI packet described above, thereby harassing Ms. Poulson. *Id*. at 5, 21.

During discovery, Mr. Hanks produced certain relevant emails between himself and Mr. Amann in response to the AGO's third-party subpoena. *Id*. at 8; *see* ECF Nos. 298-18, 298-19 ("Known Hanks Emails"). However, Mr. Amann, in his own response to Defendants' discovery requests, did not provide emails matching the Known Hanks Emails. Defs.' Sanctions Mot. at 8. This, the Defendants argue, coupled with Mr. Amann's statements during his deposition that he deleted emails between himself and Jason Hanks sent after the commencement of this lawsuit (including emails relating to the termination of his employment at the AGO), reasonably constitutes sanctionable destruction of ESI. *See* ECF No. 298-4 ("Amann Dep.") at 322:14-323:2; Defs.' Sanctions Mot. at 9.

10

Additionally, Defendants would have this court draw an inference from this admission that Mr. Amann also deleted relevant email correspondence (other than the Known Hanks Emails) between himself and Mr. Hanks, which emails "would likely have confirmed their involvement in the sending of the [NCFI] packet and whether others, such as [Mr.] Amann's wife, were also involved," Defs.' Sanctions Mot. at 17, or that the deleted emails were otherwise "unfavorable to Amann" and his credibility. *Id*. at 17, 20-21. In response, Mr. Amann reiterates his substantive legal argument that his firing was illegal, ECF No. 313 at 5-6, and argues that "[e]ven if the evidence Defendants believe existed actually did exist, it would not help them[,]" *id*. at 6, and that the emails would thus not be relevant to any claim or defense in this case. *Id*.

Relevance is properly determined by reference to Rule 401 of the Federal Rules of Evidence. To be relevant under the Federal Rules, evidence need only "have a tendency to make a fact more or less probable than it would be without the evidence" where such fact "is of consequence in determining the action." FED. R. EVID. 401. That is, evidence must be probative of a material fact. This bar is "not a high one." *United States v. Cerno*, 529 F.3d 926, 934 n.5 (10th Cir. 2008).

Although Mr. Amann concedes that Ms. Romano's conclusion that "Amann participat[ed] in the packet sent to NCFI," and that such packet "constituted a violation of the [AGO's] 'Anti-Harassment Policy,'" are among the Defendants' defenses for Mr. Amann's termination, ECF No. 313 at 6, Mr. Amann argues that the deleted emails would nevertheless be irrelevant because "Defendants are stuck with the fact that they terminated Amann despite a lack of evidence that he was engaged in the 'harassment' they terminated him for," *id*. at 8, and that what "Defendants characterize as 'harassment' is protected under the First Amendment and Utah's whistleblower statute." *Id*. at 6.

11

At bottom, then, Mr. Amann suggests that the deleted emails were irrelevant because they were probative of an immaterial fact—that is, that the emails were irrelevant because Defendants will not ultimately be able to prevail on their asserted defenses (in particular, that he was terminated for sending of the NCFI packet). But, contrary to Mr. Amann's argument, the court is not tasked at this juncture with determining which claims and defenses are meritorious and deriving materiality from there—instead, it is merely asked to conclude whether the evidence in question is probative of material facts. And, upon review, the court is satisfied that the Known Hanks Emails are relevant to several claims and defenses at issue in this case.[2]

For example, as Defendants argue, "the volume, nature[,] and timing of [] communications" regarding Ms. Poulson might tend to prove personal animosity held by Mr. Amann, "which [would tend to] undermine the alleged good-faith basis for [Mr.] Amann's purported whistleblowing." ECF No. 317 at 5; *see also* SAC ¶¶ 126-36 (Mr. Amann's Whistleblower Act claim); UTAH CODE ANN. § 67-21-3 (1)(b); *Guenon v. Midvale City*, 2010 UT App 51, ¶ 11, 230 P.3d 1032. The Known Hanks Emails alone, because they include disparaging remarks about Ms. Poulson, discuss the AGO's allegations of harassment against Mr. Amann, and relate to information Mr. Amann claims he "will use in [his] argument" about the same, *see* Known Hanks Emails, are relevant to a number of claims and defenses at issue in this case under the SAC.

---

[2] The same goes for Mr. Amann's substantive argument characterizing evidence as irrelevant "after-acquired evidence" under *Perkins v. Silver Mt. Sports Club & Spa, LLC*, 557 F.3d 1141, 1145 (10th Cir. 2009) and *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 360 (1995). The court is left with legion avenues to distinguish the instant case from the issues in those two cases; however, most importantly, as *Perkins* makes clear, even "after-acquired" evidence would be relevant to the issue of damages (if nothing else) and is therefore relevant under FED. R. EVID. 401. *See* 557 F.3d at 1145.

A duty to preserve evidence arises when a party knows, or should know, that litigation is imminent. *Moreno*, 587 F. App'x at 444. At the very latest, then, the duty is triggered by the filing of a lawsuit. Here, the Known Hanks Emails are dated April 24-25, 2019 and June 22, 2020, well after the initiation of this lawsuit. *See* Known Hanks Emails; SAC ¶ 14 (pleading that the initial complaint in this action was filed on May 30, 2017). Thus, they were sent and deleted after Mr. Amann had a duty to preserve documents and information pertaining to this lawsuit. Although Mr. Amann argues that he was not under any duty to disclose any such emails because they were irrelevant, his argument is unavailing for the reasons described above.[3]

Further, given Mr. Hanks' recurring role in Mr. Amann's complaint, *see* SAC ¶¶ 56-57, 65, 68, 74, 76, 83-94, 105, 109, 134, 141, 176, as well as Mr. Amann's disclosure of Mr. Hanks as a supporting witness, *see* ECF No. 317 at 5, Mr. Amann should have known that his post-filing communications with Mr. Hanks regarding the factual basis for the case would be sought in discovery. However, whether such duty was violated in bad faith is briefly discussed and resolved below. In any case, the inferences properly drawn from the deletion of the Hanks emails, including whether additional emails would have been deleterious to Mr. Amann's case or credibility, is ultimately a matter of fact and credibility that will necessarily be considered by the jury at trial.

---

[3] In his deposition, Mr. Amann argued that communications between himself and Mr. Hanks are covered by the attorney-client privilege. *See* Amann Dep. at 323:4-9. Mr. Amann has apparently abandoned this argument, as his opposition memorandum now only contests broadly that the communications are not relevant to this lawsuit, editing out the references to the privilege from its citation to Mr. Amann's deposition. *See* ECF No. 313 at 4. Thus, the court does not feel compelled to address the privilege issue. Similarly, Mr. Amann seems to have abandoned the contention, raised during his deposition, that the emails were deleted because Mr. Amann ran out of storage on his Gmail account. *See* Amann Dep. at 322:22-323:2; ECF No. 313 at 3-4 (raising the relevance argument in response to Defendants' recitation of that portion of the deposition). However, the court notes that Mr. Amann's account-space rationalization would be an insufficient excuse for the deletion of the emails, given his duty to suspend regular file-deletion policies and practices.

### B. Lynn Packer Emails

In addition to sanctions related to the intentional deletion of emails between Mr. Amann and Mr. Hanks, Defendants move for sanctions based on Mr. Amann's deletion of emails between himself and investigative blogger Lynn Packer, *see* Defs.' Sanctions Mot. at 10, arguing that the deletion of these emails deprived them of key credibility evidence and information regarding Mr. Amann's alleged "relentless[] target[ing]" of Ms. Poulson. *Id*. at 17. In his deposition, Mr. Amann testified that he had used a private email address to exchange emails with Mr. Packer, and that he received emails from Mr. Packer after the filing of this lawsuit, which he deleted upon receipt. *See* Amann. Dep. at 332:15-333:8. As with his email correspondence with Mr. Hanks, Mr. Amann defends against Defendants' motion primarily on the grounds of relevance, contending that the emails concerned only Sean Reyes's and the AGO's relationship with the legally embattled organization Operation Underground Railroad.[4] *See* Amann Dep. at 333:9-22; ECF No. 313 at 7. Defendants are skeptical, however, that no information relevant to this suit was contained in the deleted emails, noting that Mr. Packer had previously written reports regarding Ms. Poulson (that were cited in Mr. Amann's complaint, *see* SAC ¶¶ 32, 39). Defs.' Sanctions Mot. at 7-8. Thus, the inferences properly drawn from the deleted Lynn Packer emails ultimately turns on issues of witness credibility and characterization.

### C. Recordings

Finally, Defendants seek sanctions for Mr. Amann's loss of audio recordings of meetings he had with AGO personnel, including Sean Reyes. *See* Defs.' Sanctions Mot. at 11. But

---

[4] Namely, that Sean Reyes promoted the organization and that the organization obtains funding that is filtered to the Utah Internet Crimes Against Children Task Force.

14

Defendants' argument as to the loss of the recordings—and any prejudice they might have suffered as a result—is relatively thin. The court is left without significant guidance as to what inferences the Defendants would have the court draw regarding bad faith on the part of Mr. Amann, the prejudice faced by Defendants, or what sanctions would be appropriate.

### III. Appropriate Sanctions

As should be clear from the foregoing exposition of the parties' allegations and arguments, both motions are deeply intertwined with issues of fact and credibility that will ultimately be decided by the jury at trial. In fact, the issue of the parties' *bad faith* in the events leading up to this litigation (and bleeding into litigation conduct) will probably be among the most crucial questions for the jury to consider as it returns its verdict. And unlike a petit jury, the court was not, for the purposes of these motions, afforded "[t]he ceremony of trial" and the truth-denuding power it offers. *See Richard v. Firestone Tire & Rubber Co.*, 853 F.2d 1258, 1263 (5th Cir. 1988); *Palmer v. Valdez*, 560 F.3d 965, 969 n.4 (9th Cir. 2009). Thus, the parties ask the court, in essence, to adjudicate key issues of fact and credibility before trial and without trial's incomparable benefits.

This court is not ignorant of its inherent authority to sanction parties to litigation. *See, e.g.*, *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (citing *United States v. Hudson*, 7 Cranch 32, 34 (1812)); *Anderson v. Dunn*, 6 Wheat. 204, 227 (1821); *Link v. Wabash R. Co.*, 370 U.S. 626, 630-631 (1962); *Young v. United States ex rel. Vuitton et Fils S. A.*, 481 U.S. 787, 798 (1987); *Xyngular v. Schenkel*, 890 F.3d 868, 873 (10th Cir. 2018); *Towerridge, Inc. v. T.A.O., Inc.*, 111 F.3d 758, 765 (10th Cir. 1997); *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 106-07 (2d Cir. 2002). Neither is this court ignorant of its broad discretion to step into the role of factfinder for the purposes of doing so. *See, e.g.*, *Rossbach v. Montefiore Med. Ctr.*, 81 F.4th 124 (2d Cir. 2023).

However, in its discretion and upon consideration of the parties' briefing and oral argument, the court declines to find on the part of either party the bad faith requisite to enter default judgment, *see Max Int'l*, 638 F.3d at 1321, or to satisfy FED. R. CIV. P. 37(e)(2)'s "intent to deprive" standard. Whether *either* party harbored or acted in bad faith (e.g., through the failure to preserve emails or other documents, issue and circulate a litigation hold as requested, and so on), is deeply fact-bound and turns on questions of the parties' motives and witness credibility.

Because these determinations are so tightly wound up in the primary questions of this case *that will necessarily be determined by the jury*, the court declines to trespass any further into the province of the jury than is necessary to resolve these motions or otherwise risk throttling the jury's full range of motion in its fact-finding and deliberations. Rather than close the door through issuing terminating sanctions, the court will let this litigation run its proper course and permit the parties to develop evidence and argument regarding the preservation or possible spoliation of evidence and make their case to the jury about what inferences should or should not be had from the production or non-production of evidence.

Of course, the parties should be cautious about over-litigating tangential side-issues and will certainly not be permitted to linger in side-questions or narratives. But the court finds it appropriate to grant the parties some leeway to create for the jury the factual bases for inferences of counter-party bad faith by developing the arguments and inferences offered in these motions. Additionally, the court will consider the propriety of a permissive jury instruction upon the motion of the parties at the appropriate stage of litigation.[5]

---

[5] For example, that the jury may consider, in its discretion, whether they believe evidence proffered at trial might give rise to an inference that additional evidence not produced was spoliated, and whether negative implications of the parties' good or bad faith might be drawn therefrom.

The court's decision not to impose sanctions at this juncture or otherwise wade into determinations of fact and credibility (beyond its threshold ruling that neither party sufficiently demonstrated bad faith on the part of their counter-party through these motions) ultimately reflects the court's reverence for the wisdom of the instructional jury trial—"the mainspring and [] center wheel" of the Anglo-American juridical tradition. 1 Papers of John Adams 169 (R. Taylor ed. 1977).

## CONCLUSION & ORDER

For the foregoing reasons, Plaintiff's Motion for Default Judgment Based on Defendants' Spoliation of Evidence, ECF No. 286, and Defendants' Motion for Sanctions Based on Plaintiff's Spoliation of Evidence, ECF No. 297, are hereby **DENIED**.

DATED November 2, 2023.

BY THE COURT

_____

Jill N. Parrish
United States District Court Judge