IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| PAUL G. AMANN,<br><br>    Plaintiff,<br><br>v.<br><br>OFFICE OF THE UTAH ATTORNEY GENERAL; SEAN REYES; BRIDGET ROMANO; CRAIG BARLOW; SPENCER AUSTIN; TYLER GREEN; and DANIEL WIDDISON,<br><br>    Defendants. | **MEMORANDUM DECISION & ORDER OVERRULING PLAINTIFF'S OBJECTIONS**<br><br>Case No. 2:18-cv-00341-JNP-DAO<br><br>District Judge Jill N. Parrish<br><br>Magistrate Judge Daphne A. Oberg |

Before the court is an Objection to the Magistrate Judge's Order Denying Plaintiff's Motion to Reopen Discovery to take Sean Reyes' Deposition filed by Plaintiff Paul G. Amann ("Plaintiff" or "Amann"). ECF No. 399 ("Pl.'s Obj."). The court has reviewed Plaintiff's objections as well as Defendants' response. ECF No. 401 ("Defs.' Resp."). For the reasons set forth herein, Plaintiff's objections are **OVERRULED**.

## BACKGROUND

This action arises from a lawsuit filed by Plaintiff against Defendants Office of the Utah Attorney General ("the AGO"), Sean Reyes, Bridget Romano, Craig Barlow, Spencer Austin, Tyler Green, and Daniel Widdison (collectively, "Defendants"). Plaintiff asserts Defendants retaliated against him for engaging in protected whistleblower activity. Plaintiff's remaining claims after summary judgment include breach of contract and violation of the Utah Whistleblower Act. ECF No. 380 ("MSJ Order"). Prior to the court's ruling on summary judgment, Plaintiff moved to

compel a deposition of Reyes. At the time, Reyes was the Utah Attorney General. On a petition for writ of mandamus to prevent the deposition, the Tenth Circuit held that Reyes could not be deposed because Plaintiff failed to show extraordinary circumstances warranting his deposition. *See In re Off. Of the Utah AG*, 56 F.4th 1254 (10th Cir. 2022) (applying the extraordinary circumstances test originating in the Supreme Court case, *United States v. Morgan*, 313 U.S. 409 (1941)). The Tenth Circuit reasoned that "[t]he extraordinary circumstances rule is based on the notion that high ranking government officials have greater duties and time constraints than other witnesses and that, without appropriate limitations, such officials will spend an inordinate amount of time tending to pending litigation." *Id.* at 1259-60.

Now, Plaintiff moves to reopen discovery and compel a deposition of Reyes based on two changed circumstances: (1) Reyes is no longer in office and (2) Plaintiff discovered evidence that calls into question Reyes' responses to interrogatories. The magistrate judge assigned to this case, Judge Oberg, denied Plaintiff's request to reopen discovery, holding that the extraordinary circumstances test applies even after Reyes has left office and that Plaintiff failed to make a sufficient showing under that test. ECF No. 398 ("MJ Order"). Plaintiff filed an objection to Judge Oberg's order 14 days later. *See* Pl.'s Obj.

**LEGAL STANDARD**

A district court must consider timely objections to a magistrate judge's nondispositive order "and modify or set aside any part of the order that is clearly erroneous or is contrary to law." FED. R. CIV. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."). "The clearly erroneous standard . . . requires that the reviewing court affirm unless it 'on the entire evidence is left with the definite and firm

2

conviction that a mistake has been committed.'" *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). As the Seventh Circuit put it, "[t]o be clearly erroneous, a decision must strike us as more than just maybe or probably wrong; it must . . . strike us as wrong with the force of a five-week-old, unrefrigerated dead fish." *Parts & Electric Motors, Inc. v. Sterling Electric, Inc.*, 866 F.2d 228, 233 (7th Cir. 1988).

## ANALYSIS

Plaintiff raises two procedural objections to Judge Oberg's order. First, Plaintiff argues that Judge Oberg erred in applying federal law, rather than Utah law, to his request to depose Reyes. Second, Plaintiff contends that Judge Oberg failed to inquire into whether Plaintiff had good cause to reopen discovery before proceeding to the substantive question of whether a deposition of Reyes was permissible. Plaintiff argues that this prevented him from fully briefing the latter issue.

Plaintiff then offers two substantive arguments in support of his objection. First, Plaintiff argues that Judge Oberg erroneously applied the extraordinary circumstances test to a former official. Second, Plaintiff contends that Judge Oberg erroneously concluded that Plaintiff lacked sufficient evidence to satisfy the extraordinary circumstances test. The court will first address the two procedural issues before proceeding to Plaintiff's substantive arguments.

## I.     Federal Law Applies

As an initial matter, Plaintiff argues that state law should apply to whether Reyes may be deposed because the claims remaining after summary judgment are state law claims, and whether Reyes can be deposed "will significantly affect the outcome of the litigation." Pl.'s Obj. at 4. "The Erie doctrine instructs that federal courts must apply state substantive law and federal procedural law . . . when exercising pendent jurisdiction over state law claims." *Quintana v. Dodge*, 2024 U.S.

3

App. LEXIS 5810, at *17 (10th Cir. 2024). To determine whether an issue is substantive, courts will often ask "whether applying the law will significantly affect the outcome of the litigation." *Id.* at 18. In other words, if applying state law would change the outcome, the issue is substantive, and federal courts will apply state law.

Here, although Plaintiff argues for application of Utah law, he concedes that there is no Utah law governing this issue. Thus, there is no state law to dictate a substantive difference in the outcome of this litigation. Plaintiff errs in arguing that the outcome of the court's decision will significantly affect the case rather than comparing how state law will significantly affect the case if applied instead of federal law or vice versa. Further, matters of discovery are generally considered procedural questions. *See Free Conf. Call Holdings, Inc. v. Powerhouse Communs., LLC*, 2009 Dist. LEXIS 81408, at *7 (D. Utah 2009) ("[D]iscovery is a procedural matter that is governed in federal court by the Federal Rules of Civil Procedure. Thus, state discovery practices are usually irrelevant." (internal quotation marks omitted)). As the matter before the court concerns reopening discovery, the court concludes the issue is procedural. Consequently, the court will apply federal procedural law to this discovery dispute.

**II.     The Issue of Whether Judge Oberg Misapplied Rule 16(b)(4) is Irrelevant**

Plaintiff next argues that Judge Oberg failed to conduct a good cause inquiry, which requires analyzing whether there is good cause to reopen discovery before addressing the propriety of Plaintiff's request to depose Reyes. *See Smith v. United States*, 834 F.2d 166 (10th Cir. 1987). Judge Oberg concluded that "[w]here the Tenth Circuit concluded Mr. Reyes could not be deposed in this case, this court cannot reopen discovery for the purpose of deposing Mr. Reyes without first addressing whether this deposition is now permissible (based on Mr. Reyes' departure from office)." MJ Order at 8. The court agrees. If Judge Oberg found good cause did not exist to reopen

4

discovery, Plaintiff's motion would have been denied. On the other hand, if Judge Oberg found good cause existed, Plaintiff's motion would have still been denied. Thus, the court declines to opine on whether Judge Oberg was required to analyze whether Plaintiff had shown good cause to reopen discovery.

Further, Plaintiff moved to reopen discovery for the specific purpose of taking Reyes' deposition. That is how Plaintiff's motion was titled. *See* ECF No. 389 ("Pl.'s Mot."). Thus, Plaintiff should have briefed all issues relating to the court's decision on whether to reopen discovery for that purpose. And Plaintiff did address the extraordinary circumstances test in his reply. ECF No. 395 ("Pl.'s Reply") at 5-7. Therefore, Plaintiff's argument that Judge Oberg's lack of a good cause inquiry prevented him from fully briefing the issues is without merit.

**III.   The Extraordinary Circumstances Test Applies to Former Officials**

Next, the court proceeds to address Plaintiff's substantive arguments. Plaintiff first argues that the extraordinary circumstances test does not apply to former officials. The court disagrees.

As Judge Oberg noted in her order, the Tenth Circuit has yet to address whether the extraordinary circumstances test applies to former high-ranking officials. Plaintiff argues it does not because the reasoning behind the Tenth Circuit's holding that "high-ranking government officials have greater duties and time constraints than other witnesses" no longer applies once they leave office. *Office of the Utah Att'y Gen.*, 56 F.4th at 1260. Judge Oberg agreed that the time-constraint reasoning did not apply after Reyes left office.

But the Tenth Circuit did not explicitly limit its reasoning only to the consideration of the high-ranking official's time and resources. Judge Oberg also noted that the Tenth Circuit recognized the extraordinary circumstances test originated in *United States v. Morgan*, 313 U.S. 409 (1941). And the Tenth Circuit also recognized that *Morgan* reasoned that it was improper for

5

a court "to probe the mental processes of [a high-ranking official]. Just as a judge cannot be subjected to such a scrutiny, so the integrity of the administrative process must be equally respected." *Id.* at 422; *Office of the Utah Att'y Gen.*, 56 F.4th at 1260 ("Although the deposition had long since occurred by the time the case arrived at the Supreme Court, the Court [in *Morgan*] discouraged depositions of high-ranking officials concerning the reasons for their official actions."). Therefore, Judge Oberg's conclusion that the extraordinary circumstances test applies even though the official's time constraints are no longer of concern is not contrary to the Tenth Circuit's order.

This latter reasoning from *Morgan*, that it would be improper for a court to probe the mental processes of a high-ranking official, is still relevant even after an official leaves office. Here, Plaintiff seeks to depose Reyes to determine (1) whether Reyes was personally involved in the AGO's termination decision and (2) if so, whether Reyes' involvement in the decision was influenced by any personal animus he felt towards Plaintiff. This would indisputably involve probing into Reyes' mental processes and inquiring into the reasoning behind his official actions while he was the Utah Attorney General.

Further, although the Tenth Circuit has not ruled on this issue, many courts have recognized that the extraordinary circumstances test applies to former officials. *See, e.g.*, *In re United States Department of Education*, 25 F.4th 692, 705 (9th Cir. 2022) ("Our reasoning applies even though DeVos is no longer serving as secretary."); *Khan v. New York City*, 2024 U.S. Dist. LEXIS 209221, at *27 (E.D.N.Y. 2024) ("If the immunity Morgan affords is to have any meaning, the protections must continue upon the official's departure from public service." (internal quotation marks omitted)); *United States v. Newman*, 531 F. Supp. 3d 181, 188 (D.D.C. 2021) (applying the extraordinary circumstances test to depositions of former high-ranking government officials);

6

*Mitchell v. Arnold*, 2023 U.S. Dist. LEXIS 204534, at * (W.D. Ky. 2023), at *8-9 ("[F]ederal courts largely appear in agreement that the extraordinary circumstances protections apply equally to current and former high-ranking officials."); *Jarbo v. County of Orange*, 2010 U.S. Dist. LEXIS 142915 (C.D. Cal. 2010) ("Courts have extended [the extraordinary circumstance test] to cover depositions of former high-ranking officials."); *Presti v. City of N.Y.*, 609 F. Supp. 3d 204, 207 n.2 (E.D.N.Y. 2022) (noting that the Second Circuit applies the test to former officials).

Some courts reason the test continues to apply to former officials because it is improper for courts to inquire into the mental processes of high-ranking officials. *See Department of Education*, 25 F.4th at 705 ("The requested deposition concerns her actions taken during her tenure as secretary and [w]e note that the process-inquiry rationale of *Morgan* and its successors hardly becomes inapplicable upon an official's departure from [her] office."). Others have found that the time constraint reasoning is still applicable after officials leave office as indiscriminate depositions would discourage high-ranking officials from taking office in the first place. *See In re Gold King Mine Release in San Juan County*, 2021 U.S. Dist. LEXIS 145496 (D.N.M. 2021) ("Former high-ranking government officials have also been brought into the protections of the *Morgan* doctrine. One of the protections offered by the *Morgan* doctrine is to allow government officials to serve in their official capacity knowing that they will not be unduly entangled in civil litigation, both while in office and after they leave public service."); *United States v. Wal-Mart Stores*, 2002 U.S. Dist. LEXIS 6929 (D. Md. 2002) ("One of the driving principles of the *Morgan* decision is that the indiscriminate depositions of high-ranking government officials would be unduly burdensome upon said officials and likely discourage them from accepting positions as public servants.").

Of note, some courts find the reasoning behind *Morgan* less persuasive when applied to former officials. *See Sanstrom v. Rosa*, 1996 U.S. Dist. LEXIS 11923 (S.D.N.Y. 1996). But even

in *Sanstrom*, the court found that the deposition would have been allowed if the former official were still in office because he "possesse[d] particular information necessary to the development . . . of the [plaintiffs'] case, which [could not] be reasonably obtained by another discovery mechanism." *Id.* at *13. Thus, the holding in *Sanstrom* turned on the application of the third and fourth prong of the extraordinary circumstances test even though the court stated it would not apply the test. *See Office of the Utah Att'y Gen.*, 56 F.4th at 1264 ("(3) the deposition is essential to the party's case[;] and (4) the information cannot be obtained from an alternative source or via less burdensome means.").

In his objection, Plaintiff cites a string of Second Circuit and Ninth Circuit district court orders that did not apply the extraordinary circumstances test to former high-ranking officials. Pl.'s Obj. at 5 (citing *SEC v. Committee on Ways & Means*, 161 F. Supp. 3d 199, 252 (S.D.N.Y. 2015; *Toussie v. County of Suffolk*, 2006 WL 1982687 (E.D.N.Y. 2006); *Sanstrom v. Rosa,* No. 93 CIV. 7146 (RLC), 1996 WL 469589 (S.D.N.Y. 1996); *Givens v. Newsom*, 2021 U.S. Dist. LEXIS 3135 (E.D. Cal. Jan. 7, 2021)). But now, both the Ninth and Second Circuits have explicitly adopted the application of the exceptional circumstances test to former officials. *See Department of Education*, 25 F.4th at 705 (applying the exceptional circumstances test even though the Secretary was no longer in office); *Lederman v. N.Y. City Dep't of Parks & Rec.*, 731 F.3d 199, 203 (2d. Cir. 2013) (applying the exceptional circumstances test to the Mayor's former Deputy). And, as noted before, some courts state they are not applying the extraordinary circumstances test but then allow the deposition based on the elements of the test. *See Sanstrom*, 1996 U.S. Dist. LEXIS 11923. Therefore, the court does not find any of the cases cited by Plaintiff particularly persuasive.

Rather, the weight of persuasive authority applies the extraordinary circumstances test to former officials. The court thus concludes that the exceptional circumstances test applies in this

8

case because deposing Reyes would inevitably involve probing into the mental processes behind his official actions, one of the key rationales for the *Morgan* decision. Therefore, Judge Oberg's application of the extraordinary circumstances test to the issue of whether Reyes may be deposed is not "contrary to the law." FED. R. CIV. P. 72(a).

**IV.     Application of the Extraordinary Circumstances Test**

On a petition for writ of mandamus, the Tenth Circuit previously held that Plaintiff had not demonstrated extraordinary circumstances required to depose Reyes. Under that test, a party seeking to depose a former or current high-ranking official must show: "(1) the official has first-hand knowledge related to the claim being litigated; (2) the testimony will likely lead to the discovery of admissible evidence[;] (3) the deposition is essential to the party's case[;] and (4) the information cannot be obtained from an alternative source or via less burdensome means." *Office of the Utah Att'y Gen.*, 56 F.4th at 1264.

While the Tenth Circuit held that Plaintiff had met the first two elements, it concluded that Plaintiff failed to make a sufficient showing of the third and fourth elements. The Tenth Circuit reasoned that Plaintiff had not demonstrated that the deposition was essential to his claim and that Defendants Romano and Green provided adequate alternative sources of information as "they both testified Reyes had no involvement or influence in the decision to terminate Plaintiff." *Id.* at 1264. The court is bound by this conclusion to the extent it is based on the evidence that the Tenth Circuit considered at the time of its ruling. *Dish Network Corp. v. Arrowood Indem. Co.*, 772 F.3d 856, 864 (10th Cir. 2014) (holding that trial courts are bound by the decisions of their appellate court under the law of the case doctrine and the mandate rule).

But here, Plaintiff argues that newly discovered evidence that the Tenth Circuit did not consider compels a reassessment of the third and fourth factors. Plaintiff points to (1) Reyes'

9

interrogatory responses and (2) a 2015 access card log that shows his movements were being monitored at that time. Both pieces of evidence were obtained after the Tenth Circuit ruling. Plaintiff argues that, in the context of the facts on the record, previously undisclosed surveillance evidence, combined with Reyes' responses to interrogatories, "makes it highly likely (if not certain) that Mr. Reyes possesses unique insights no other witness can provide." Pl.'s Obj. at 7.

Plaintiff points to Reyes' response to an interrogatory explaining that Amann's name appeared on his "To Do List" because Amann was in an employment dispute with the AGO that the office was tracking. ECF No. 389-1 ("Reyes Responses") at 10. But Plaintiff argues that this shows Reyes recognized an employment dispute with Amann in July 2015 although none existed at the time. Pl.'s Obj. at 7. Indeed, the dispute Reyes referred to in the "To Do List" matches neither of the investigations into Amann during that time. In his other interrogatory response, Reyes identified only two investigations into Amann undertaken by AGO: "1) a DHRM investigation of a harassment complaint brought by Ann Skaggs against Paul Amann, which ultimately concluded that Mr. Amann had not engaged in harassment in violation of AGO policy; [and] 2) a complaint about an anonymous packet sent to an out-of-state training that Cindy Poulson attended." Reyes Responses at 6. But the former investigation was completed around December 2014 and the latter investigation did not begin until August 2015 when the anonymous packet was sent. The latter investigation ultimately led to Plaintiff's termination. Thus, Plaintiff argues, there was no reason why the AGO would be monitoring his movements in July 2015, and this reveals that the AGO had other motivations for Plaintiff's termination.

But Plaintiff has not offered sufficient evidence to connect Reyes to the 2015 card access log. Judge Oberg concluded that "[t]he access card log bears no apparent connection to Mr. Reyes himself" and that Plaintiff "offers no evidence suggesting Mr. Reyes has *any* first-hand knowledge

10

regarding the access card log—much less that he is the *only* available source of information regarding this log . . . ." MJ Order at 13. In his declaration, Reyes testified that he reviewed the 2015 access card log and maintains that he has never seen it, does not recognize the handwriting that annotated Plaintiff's movements, and does not know when or why the handwritten notes were made, or by whom. ECF No. 400-1 ("Reyes Decl.") ¶¶ 4-5.

Regarding the interrogatory response, the court also finds it is not sufficient to indicate extraordinary circumstances. The Tenth Circuit already considered Reyes' "To Do List" and concluded that it was not sufficient to find Reyes' deposition essential. *Office of the Utah Att'y Gen.*, 56 F.4th at 1256-57. Judge Oberg declined to consider this evidence, along with other evidence demonstrating Reyes' personal involvement, because "the Tenth Circuit already considered the same or similar evidence and found it insufficient to meet the extraordinary circumstances test in this case." MJ Order at 14. The only change here is Reyes' reasoning for Amann's name on that list. And this piece of evidence is not enough to overcome the Tenth Circuit's mandate. The interrogatory response does not overwhelmingly indicate that Reyes was intimately involved or that there are no other witnesses to testify about the purported employment dispute in July 2015. Thus, the court does not find Judge Oberg's conclusion that Plaintiff failed to make a sufficient showing under the extraordinary circumstances test "clearly erroneous or contrary to the law." FED. R. CIV. P. 72(a).

## CONCLUSION & ORDER

For the foregoing reasons, Plaintiff's Objections to Magistrate Judge's Memorandum Decision and Order Denying Plaintiff's Motion to Reopen Discovery to Take Sean Reyes's Deposition is **OVERRULED**. ECF No. 399.

DATED March 24, 2025

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge