IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| PAUL G. AMANN,<br><br>        Plaintiff,<br><br>v.<br><br>OFFICE OF THE UTAH ATTORNEY GENERAL,<br><br>        Defendant. | **MEMORANDUM DECISION AND ORDER PARTIALLY GRANTING AND PARTIALLY DENYING THE PARTIES' MOTIONS IN LIMINE**<br><br>Case No. 2:18-cv-00341-JNP-DAO<br><br>District Judge Jill N. Parrish<br><br>Magistrate Judge Daphne A. Oberg |

Before the court are motions in limine filed by Plaintiff Paul G. Amann ("Plaintiff" or "Amann"), ECF Nos. 422, 423, 424, 425, 426, 428, and Defendant Office of the Utah Attorney General ("the Attorney General's Office" or "Defendant"), ECF Nos. 413, 414, 415, 416, 417, 418, 419, 420, 438, in anticipation of their upcoming trial. This dispute stems from the Attorney General's Office's termination of Plaintiff in December 2016. Plaintiff claims he was retaliated against for engaging in protected activity under the Utah Whistleblower Act and that Defendant breached its contract with Plaintiff by retaliating against him. Defendant argues that Plaintiff was terminated because he harassed another coworker, Cynthia Poulson ("Poulson"), and that there was no contract between the Attorney General's Office and Plaintiff.

For the reasons presented herein, the court **GRANTS** Plaintiff's Motions in Limine Nos. 2, 3, 4, and 5 (ECF Nos. 423, 424, 425, 426) and **PARTIALLY GRANTS** and **PARTIALLY DENIES** Plaintiff's Motions in Limine Nos. 1 and 6 (ECF Nos. 422, 428). The court also **GRANTS** Defendant's Motions in Limine Nos. 1, 2, 8, and 9 (ECF Nos. 413, 414, 420, 438), **DENIES** Defendant's Motions in Limine Nos. 4, 5, and 7 (ECF Nos. 416, 417, 419), and

**PARTIALLY GRANTS** and **PARTIALLY DENIES** Defendant's Motions in Limine Nos. 3 and 6 (ECF No. 415, 418).

## DISCUSSION

Both parties argue that certain evidence should be excluded because it is either irrelevant or its probative value is substantially outweighed by the risk of unfair prejudice, confusing the issues, misleading the jury, or wasting time. The parties also argue that some evidence should be excluded under Rule 404 as prohibited character evidence.

Evidence is admissible only if it is relevant. FED. R. EVID. 402. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the actions." FED. R. EVID. 401. Even if evidence is relevant, a court may still exclude it "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403.

Under Rule 404, "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." FED. R. EVID. 404(a). Likewise, "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." FED. R. EVID. 404(b). However, "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.*

The court first examines and decides Plaintiff's motions in limine and then turns to Defendant's motions in limine.

2

I.      PLAINTIFF'S MOTIONS IN LIMINE

For the reasons set forth below, the court GRANTS Plaintiff's Motions in Limine Nos. 2,

3, 4, and 5 (ECF Nos. 423, 424, 425, 426) and PARTIALLY GRANTS and PARTIALLY DENIES

Plaintiff's Motions in Limine Nos. 1 and 6 (ECF Nos. 422, 428).

A.      **Motion to Exclude Packet Exhibits (No. 1)**

First, Plaintiff moves to exclude Defendant's Exhibits 272, 298, and 299, which consist of

packets sent to Poulson's husband, boxing gym and the Board of Pardons. The first two of these

packets were the subject of Plaintiff's Motion in Limine, ECF No. 422. Plaintiff indicated during

the final pre-trial conference that he also meant to include in his motion the packet sent to the

Board of Pardons. The court therefore also includes that exhibit in this ruling.

These packets contain similar information to that contained in the packet that Defendant

alleges Plaintiff sent to the National Computer Forensics Institute ("NCFI") conference. Defendant

argues that, because the packets are similar, the other packets are relevant to two material issues.

First, this evidence explains why Poulson felt harassed and decided to submit a complaint to the

Department of Human Resource Management ("DHRM") that ultimately led to Plaintiff's

termination. Second, if the jury finds Plaintiff responsible for sending those packets, that evidence

is highly probative of his good faith motive in engaging in protected activity, a critical element of

Plaintiff's Whistleblower Act claim.

But Defendant offers no evidence linking Plaintiff to the other packets and Defendant

acknowledges that their existence was not a factor in its decision to terminate Plaintiff's

employment. Thus, the probative value of the other packets is low. And the time it would take for

Defendant to introduce the other packets into evidence and then present evidence and argument as

3

to whether Plaintiff was responsible for sending them risks wasting time and confusing the issues. Given Defendant's admission that it has no evidence linking Plaintiff to the packets and the fact that they were not a factor in Plaintiff's termination, those risks substantially outweigh any potential probative value of the packets. The court acknowledges that the packets are mentioned in Poulson's harassment complaint. To the extent the packets are merely referenced in other exhibits or testimony, there is no danger in letting the jury know of their existence. But there is little to no additional probative value added by introducing every physical packet into evidence. Therefore, the court PARTIALLY GRANTS and PARTIALLY DENIES Plaintiff's Motion in Limine No. 1. ECF No. 422. Defendant may introduce evidence of the existence of the packets to the extent they are referenced in other evidence. But Defendant may not introduce each physical packet as the risk of wasting time and confusing the issues in doing so would substantially outweigh any probative value of the packets.

### B.    Motion to Exclude Corrective Action Plan (No. 2)

Next, Plaintiff moves to exclude a Corrective Action Plan ("the Plan"), Defendant's Exhibit 206, from 2010 under Rules 401, 402, and 403. ECF No. 423. Plaintiff argues that the Plan is irrelevant and highly prejudicial to him, particularly because he successfully completed the corrective action contemplated by the plan and his job performance was never identified by Defendant as a reason for his termination. The court agrees. Plaintiff's Whistleblower Act claim concerns his termination in 2016. Defendant stated that it was terminating Plaintiff because he was harassing Poulson, not because of his performance. Thus, the Plan, which concerns Plaintiff's performance in 2010, is not relevant to his termination in 2016.

4

However, if Plaintiff raises the issue of his performance during that period of time, then the Plan may be relevant for impeachment purposes. But it is only relevant if Plaintiff opens the door to his performance around 2010. The court notes that its decision to exclude this evidence is closely related to Plaintiff's request to exclude evidence as to the reason for his transfer from the ICAC task force. Given the concern expressed by plaintiffs' counsel at the final pretrial conference regarding their ability to complete the presentation of their evidence in the two weeks they requested for trial, the court encourages Plaintiff to focus solely on the issues the jury must determine in this case, lest he open the door to a floodgate of evidence that is only relevant if Plaintiff makes it so. Accordingly, the court provisionally GRANTS Plaintiff's Motion in Limine No. 2, ECF No. 423, but notes a willingness to reconsider its ruling if Plaintiff opens the door to consideration of evidence regarding his prior job performance or transfer within the office.

### C.    Motion to Exclude Jobs Available (No. 3)

Plaintiff next moves to exclude evidence relating to jobs available when he was terminated. Plaintiff argues that the job postings offered by Defendant are not admissible because they are irrelevant and highly prejudicial. Plaintiff also argues that none of the internet postings offered by Defendant can be authenticated under Rule 901 and the postings are hearsay under Rule 802. Specifically, Plaintiffs seeks to exclude Defendant's Exhibits 305, 306, 307, and 308.

Defendant argues that these exhibits are relevant to show Plaintiff failed to mitigate his damages, a defense on which it has the burden of proof. Indeed, in wrongful termination cases, the defendant "has the burden of proving in mitigation of damages that the employee obtained or might have obtained other employment of a similar character. Absence of such proof requires that the wages or salary contracted to be paid is the measure of damages." *Pratt v. Board of Educ.*, 564

5

P.2d 294, 298 (Utah 1977); *see also Flitton v. primary Residential Mortg., Inc.*, 2009 U.S. Dist. LEXIS 2146 (D. Utah 2009) ("A plaintiff in a Title VII [wrongful termination] action must take all reasonable steps to mitigate her damages. One of the principal requirements is that a plaintiff must seek comparable employment."). Thus, job postings are only relevant if they are "comparable" or "of a similar character" to the job Plaintiff lost as an Assistant Attorney General with 16 years of experience. *See id.* Job postings that are not comparable to an Assistant Attorney General position with experience comparable to Plaintiff is not relevant to Defendant's mitigation defense and risks wasting time and misleading the jury.

Exhibit 305 consists of job postings from the Utah Bar Journal. This exhibit has very little probative value because nearly all the jobs listed in this exhibit require much less experience than Amann had when he was terminated in 2016, or they required expertise in an area of law that Amann did not have as an Assistant Attorney General. Any probative value contained in this exhibit is substantially outweighed by the risk of wasting time and misleading the jury because none of the jobs offered in these postings were comparable to the job Amann lost.

Exhibit 306 contains articles from the Salt Lake Tribune related to the overall job market in 2018 and 2019. The articles note the low unemployment rates in Salt Lake City and how many jobs have been added to the market. But the articles do not speak specifically to the legal market in 2018 or 2019. Therefore, these articles are not probative of how many comparable jobs were available to Plaintiff at the time or whether he was able to mitigate damages after his termination. Whatever probative value the articles do have is substantially outweighed by a risk of wasting time and misleading the jury.

6

Exhibit 307 consists of an article from the Utah Business magazine discussing the influx of "big law" firms to Salt Lake City. Because this article discusses the legal market specifically, it is more probative than Exhibit 306. Still, Amann has no experience in big law, so it is doubtful he would have been privy to the opportunities discussed in the article. And the article does not mention specific jobs available. Therefore, Exhibit 307 has little probative value, which is substantially outweighed by a risk of wasting time and misleading the jury.

Finally, Exhibit 308 contains job postings from lawcrossing.com. As an initial matter, Amann secured new employment as a public defender in Arizona in 2020, four years after he was terminated in December 2016. Therefore, any jobs after 2020 would only be relevant if they are in Arizona and offer a higher pay than Plaintiff's job as a public defender. But the Arizona job postings offered by Defendant all provide wide salary ranges (i.e. $65,000 - $169,753, $65,000 - $169,753, $80,000 - $160,000). Thus, the jury cannot determine what Amann's approximate pay would have been in those jobs by looking at the postings. Therefore, these jobs are not probative of Defendant's mitigation defense.

As to the job listings prior to 2020 in Exhibit 308, Plaintiff argues that none of the postings are comparable jobs because they require different experience, either in terms of years or subject matter. The court agrees. None of the jobs listed in Exhibit 308 prior to 2020 are comparable to an Assistant Attorney General with 16 years of experience. They do not tend to make the fact that Plaintiff failed to mitigate damages any more likely because these jobs would not meet the standard for a comparable position under the law.

Any probative value added by these exhibits is substantially outweighed by the risk of misleading the jury and wasting time. Accordingly, the court GRANTS Plaintiff's Motion in Limine No. 3. ECF No. 424.

### D.    Motion to Exclude GRAMA Requests (No. 4)

Plaintiff next moves to exclude requests for information, Defendant's Exhibits 233-238, that he made pursuant to the Government Records Access and Management Act ("GRAMA"). Specifically, he moves to exclude GRAMA requests he made after he was terminated by the Attorney General's Office as well as argument that he used those requests to harass Poulson. Plaintiff argues that this evidence is inadmissible because it is irrelevant, prejudicial, a waste of time, and impermissible character evidence.

First, this evidence is inadmissible as character evidence to prove Plaintiff was harassing Poulson prior to his termination. *See* FED. R. EVID. 404(b) ("Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."). But Defendant argues that evidence of Plaintiff's actions subsequent to his termination is relevant to whether he acted in good faith prior to his termination. The court disagrees.

After Plaintiff was terminated, his motivations changed. The most obvious reason for Plaintiff submitting GRAMA requests after he was fired was to collect evidence in preparation for this instant litigation. To allow evidence of these GRAMA requests would highly prejudice Plaintiff and punish him for pursuing his right to participate in GRAMA proceedings. And the requests, because they happened after Plaintiff's termination, are simply not probative of Plaintiff's motive prior to his termination. At a minimum, any probative value they may have is substantially

8

outweighed by the danger of unfair prejudice to Plaintiff. Accordingly, the court GRANTS

Plaintiff's Motion in Limine No. 4. ECF No. 425.

### E.    Motion to Exclude Evidence of Extramarital Affair (No. 5)

Plaintiff next moves to exclude evidence of his extramarital affair and reasons for his

transfer from the Internet Crimes Against Children ("ICAC") division in April 2013. ECF No. 426.

Plaintiff also objects to Defendant's designations of the deposition testimony of Kirk Torgensen

because it discusses the ICAC transfer and the alleged affair. ECF No. 478. After reviewing the

deposition designations, the court concludes that the testimony is largely focused on the 2013

transfer and extramarital affair. Therefore, the court includes Torgensen's testimony in this order.

Plaintiff argues the extramarital affair is not relevant to his claims and highly prejudicial. The court

agrees.

This dispute stems from Plaintiff's termination in December 2016, and Defendant's reason

for that termination does not involve Amann's transfer from ICAC. Thus, evidence of the ICAC

transfer, which occurred over three years prior to Plaintiff's termination, has little probative value

to Plaintiff's claims at issue in this case.

Further, the reasons behind the ICAC transfer are highly contested. Defendant claims

Plaintiff was transferred because of an extramarital affair with his former supervisor. Plaintiff

claims he was transferred to open a spot for Poulson in ICAC. Given Plaintiff's reasoning,

Defendant argues that the ICAC transfer evidence is highly probative of Plaintiff's motive to harass

Poulson. But because the reasoning behind the ICAC transfer is disputed, any evidence and

argument surrounding the transfer risks wasting time and confusing the relevant issues at trial.

And, more importantly, evidence of Plaintiff's extramarital affair, which involves videotapes of

sexual acts between Plaintiff and his former supervisor who had since been appointed as a Utah state court judge, is highly prejudicial to Plaintiff. Therefore, the probative value of the ICAC transfer is substantially outweighed by a high risk of prejudice to Plaintiff, confusing the issues, and wasting time.

Again, however, the court notes that this ruling is provisional. If Plaintiff opens the door by suggesting that the Attorney General's Office transferred him out of ICAC to open up a spot for Poulson or that he was treated differently than his coworkers who also engaged in affairs with co-workers, then the court is willing to re-examine the admissibility of his affair and the reasons for his transfer from ICAC. In such an event, it would be unfair to prevent Defendant from cross-examining Plaintiff about those issues. But there is significant risk that opening the door to these peripheral issues will lengthen the trial beyond the time that the parties requested for trial. Thus, the court encourages the parties to stay focused on the relevant issues.

Plaintiff also argues that his affair is inadmissible character evidence under Rule 404, but the court disagrees. Defendant does not argue the evidence will be used to show Plaintiff acted in accordance with an adulterous character. Rather, Defendant argues that evidence of Plaintiff's affair is relevant to show the Attorney General's Office's motive in transferring him from ICAC and his motive in harassing Poulson, which would be admissible under Rule 404(b)(2). Accordingly, the court provisionally GRANTS Plaintiff's Motion in Limine No. 5. ECF No. 426. Evidence of Plaintiff's extramarital affair is only admissible if Plaintiff opens the door to the issue of his transfer from ICAC.

### F.    Motion to Exclude Poulson's 2010 Pardon (No. 6)

Finally, Plaintiff moves to exclude Poulson's 2010 pardon. As an initial matter, Plaintiff argues that the cover letter to the pardon should be excluded because it was never produced in discovery. The court agrees. Plaintiff then argues that the pardon itself should be excluded because it is irrelevant and risks wasting time and confusing the issues at trial. ECF No. 428.

But the issue of Poulson's 2010 pardon is central to one of Plaintiff's Whistleblower Act claims. The NCFI Packet, which ultimately led to Plaintiff's termination, alleges that the Utah Bureau of Criminal Identification "never should have granted any expungement based on [Poulson's] combination of offenses" and that Poulson "should not have access to any databases while attending [the NCFI] program." ECF No. 335-8 ("NCFI Packet"), at 3.

This places Poulson's 2010 pardon squarely at issue. For Amann to prevail in his Whistleblower Act claim on the NCFI Packet, the jury will need to determine whether the NCFI Packet "communicates in good faith . . . a violation or suspected violation of a law, rule, or regulation." UTAH CODE ANN. § 67-21-3(1)(a). Therefore, the jury must be able to determine whether the 2010 pardon referenced in Plaintiff's communication exists to determine whether the NCFI Packet is protected under the Whistleblower Act. Even if the 2010 pardon "suggest[s] incorrectly that Ms. Poulson obtained a 'full and unconditional pardon' at that time," Plaintiff may combat this by simply introducing Poulson's 2016 pardon and arguing that her 2010 pardon left out an expungement of an offense under a different name. ECF No. 428 at 3. Thus, the risk to misleading the jury is low.

Poulson's 2010 pardon is highly probative of Plaintiff's Whistleblower Act claim. To exclude Poulson's 2010 pardon, the court would have to exclude part of the communication in the NCFI Packet, which would prevent the jury from accurately determining whether the NCFI Packet

11

is protected under the Whistleblower Act. The court therefore PARTIALLY GRANTS and PARTIALLY DENIES Plaintiff's Motion to in Limine No. 6. ECF No. 428. The court excludes the cover letter to the pardon because it was never produced but admits the substance of Poulson's 2010 pardon.

## II.    DEFENDANTS' MOTIONS IN LIMINE

For the reasons set forth below, the court GRANTS Defendant's Motions in Limine Nos. 1, 2, 8, and 9 (ECF Nos. 413, 414, 420, 438), DENIES Defendant's Motions in Limine Nos. 4, 5, and 7 (ECF Nos. 416, 417, 419), and PARTIALLY GRANTS and PARTIALLY DENIES Defendant's Motions in Limine Nos. 3 and 6 (ECF No. 415, 418).

### A.  Motion to Exclude Legal Fees and Compliance with Procurement Code (No. 1)

Defendant first moves to exclude evidence of its legal fees, its hiring of outside counsel, and whether it complied with the procurement code. ECF No. 413. Defendant argues this evidence is not relevant to Plaintiff's claims and is highly prejudicial. Plaintiff responds that this evidence shows the Attorney General's Office unlawfully hired private counsel in violation of the Utah Procurement Code, which is probative of "the very corruption about which Plaintiff has been whistleblowing since the outset of this matter." ECF No. 454 at 7.

But Plaintiff does not point to any protected communication under the Whistleblower Act in which he alleges a violation of the Utah Procurement Code. Because Defendant's violation of the Utah Procurement Code is not one of the "violation[s] or suspected violation[s] of a law, rule, or regulation" that Plaintiff allegedly communicated under the Whistleblower Act, it is not relevant to Plaintiff's Whistleblower Act claim. UTAH CODE ANN. § 67-21-3(1)(a).

12

Further, evidence of the Attorney General's Office's alleged violation of the Utah Procurement Act is evidence of another bad act prohibited by Rule 404(b). Plaintiff argues that he intends to use this evidence for another permissible reason under Rule 404(b), but he provides no explanation as to how he would use this evidence. Instead, he indicates that the evidence is relevant to show the overall corruption within the Attorney General's Office which is probative of whether Defendant violated the Whistleblower Act. This is exactly what 404(b) prohibits. Accordingly, the court GRANTS Defendant's Motion in Limine No. 1. ECF No. 413.

### B.    Motion to Exclude Testimony of Lonny Pehrson (No. 2)

Defendant next moves to exclude testimony of Lonny Pehrson regarding the Attorney General's Office's responses to Plaintiff's GRAMA requests because the testimony is irrelevant. ECF No. 414. Plaintiff argues that "Pehrson's testimony is relevant to establishing Defendant's internal views of Mr. Amann's complaints, its treatment of evidence related to his claims, and its lack of candor with Plaintiff." ECF No. 459 at 3. Specifically, Plaintiff points to a Utah state court brief by Pehrson in which he refers to Amann's claims as "spurious." ECF No. 459-1 at 7.

Any evidence of the Attorney General's Office's internal views would tend to make Defendant's violation of the Whistleblower Act more likely. Plaintiff argues, among other things, that Defendant terminated him because of the complaints he alleged against the Attorney General's Office and his participation in GRAMA proceedings.

But Pehrson's testimony is only slightly probative of the Attorney General's Office's internal views. Pehrson is the GRAMA custodian. He is not the Attorney General. He does not have a high-ranking position in the Attorney General's Office that would qualify him to speak on behalf of the Office. And he did not play any part in Plaintiff's termination. Any probative value

13

of Pehrson's testimony is substantially outweighed by the risk of confusing the issues and needless

mini trials. Accordingly, the court GRANTS Defendant's Motion in Limine No. 2. ECF No. 414.

### C.    Motion to Exclude 2014 DHRM/Chris Earl Thumb Drive (No. 3)

Defendant next moves to exclude evidence of a thumb drive containing work emails and

created by the Attorney General's Office's IT Director, Chris Earl, as part of an investigation

conducted by the Department of Human Resource Management ("DHRM"). ECF No. 415.

Because the thumb drive contains inappropriate emails sent between Poulson and her

supervisor, Craig Barlow, the prejudice to Defendant is substantially high. But one of Plaintiff's

claims under the Whistleblower Act is his reporting of the alleged relationship between Poulson

and Barlow during the 2014 DHRM investigation. Thus, the contents of the thumb drive are

probative of Plaintiff's Whistleblower Act claim as it is evidence that an inappropriate relationship

existed. And to that extent, the probative value of the existence of the thumb drive substantially

outweighs any danger of unfair prejudice to Defendant.

But how the Attorney General's Office handled the thumb drive during this litigation is less

relevant to Plaintiff's Whistleblower Act claim. Plaintiff argues that the jury may use this evidence

to conclude that the thumb drive was misplaced or that the Attorney General's Office intentionally

withheld the thumb drive until Plaintiff sought sanctions. This is not only irrelevant to why Plaintiff

was terminated in 2016, but it is also inadmissible character evidence under Rule 404 as Plaintiff

seeks to use the evidence to show that Defendant is corrupt and deceitful.

Further, regarding any spoliation issues, because the thumb drive was ultimately produced

and not destroyed, there is no opportunity for the jury to make an adverse inference. Thus, the

thumb drive discovery issue is not relevant to spoliation. Plaintiff also objects to Defendant's

14

designation of Earl's testimony regarding whether Defendant complied with all litigation hold requirements. ECF No. 478. The testimony concerns Defendant's conduct regarding the thumb drive during discovery, which is irrelevant. Accordingly, the court PARTIALLY GRANTS and PARTIALLY DENIES Defendant's Motion in Limine No. 3. ECF No. 415. Evidence of the thumb drive is admissible, but how Defendant handled the thumb drive during discovery is inadmissible.

### D.    Motion to Exclude Argument that UPD Investigation was Retaliation (No. 4)

Defendant also moves to exclude argument that Defendant's participation in the Salt Lake Unified Police Department ("UPD") investigation into Plaintiff's conduct constituted retaliatory action against Plaintiff under the Whistleblower Act or a breach of the alleged contract. ECF No. 416. Defendant clarified during the final pretrial conference that it is not seeking to exclude evidence of the UPD investigation. It only seeks to exclude argument that its participation in the UPD investigation constitutes retaliation. But a motion in limine is not the proper vehicle for excluding an opposing party's argument. The court, however, may instruct the jury as to what constitutes retaliation under the Whistleblower Act or Plaintiff's breach of contract claim. Therefore, the proper vehicle for Defendant's argument is jury instructions. Accordingly, the court DENIES Defendant's Motion in Limine No. 4. ECF No. 416.

### E.    Motion to Exclude Argument that GRAMA Activities were Protected (No. 5)

Defendant next moves to exclude argument that Plaintiff's GRAMA activities were protected under the Whistleblower Act. ECF No. 417. Defendant argues that, as a matter of law, participation in GRAMA proceedings does not constitute protected communication under Section 67-21-3(1) of the Act. Again, the court will not exclude Plaintiff from making certain arguments. The court can, however, provide jury instructions defining what actions may constitute a violation

15

of the Whistleblower Act. Unlike the previous motion, Defendant did not clarify whether it is seeking to exclude the evidence relating to this argument. Therefore, the court addresses the relevance of Plaintiff's GRAMA requests submitted prior to his termination.

Plaintiff argues that participation in GRAMA proceedings falls within Section 67-21-3(4) of the Act which prohibits an employer from implementing

> rules or policies that unreasonably restrict an employee's ability to document (a) the waste or misuse of public funds, property, or manpower; (b) a violation or suspected violation of any law, rule, or regulation; or (c) as it relates to a state government employer: (A) gross mismanagement; (B) abuse of authority; or (C) unethical conduct.

UTAH CODE ANN. § 67-21-3(4). Plaintiff argues that Defendant's denial of his GRAMA requests constitute a rule or policy that unreasonably restricted his ability to document wrongdoing. Specifically, Plaintiff points to a deposition of Romano in which she indicated that Amann violated policy by pursuing his personal GRAMA requests using official letterhead and purporting to appear, not in his personal capacity, but as an Assistant Attorney General. Plaintiff also points to the Attorney General's Office's letter notifying Plaintiff of its intent to terminate him. The letter states that in failing to take leave to appear in court in furtherance of his personal GRAMA requests, Plaintiff also violated the Attorney General's Office's policy.

Thus, the two policies Plaintiff points to are (1) a policy against using official letterhead and official titles in personal GRAMA proceedings and (2) a policy requiring personnel to take leave for personal legal matters. Plaintiff has not demonstrated how either policy unreasonably restricted his ability to document the Attorney General's Office's misdeeds. And neither policy relates directly to the Attorney General's Office's denial of his GRAMA requests. The policies

16

were only referenced as examples of policies that Plaintiff violated. Thus, evidence of Plaintiff's participation in GRAMA proceedings is not probative of whether Defendant violated Section 67-21-3(4) of the Whistleblower Act.

Plaintiff also argues that evidence of his pre-termination GRAMA requests is probative of whether Defendant violated Section 67-21-3(2), which prohibits an employer from taking "adverse action against an employee because an employee participates or gives information in an investigation, hearing, court proceeding, legislative or other inquiry, or other form of administrative review held by the public body." UTAH CODE ANN. § 67-21-3(2). Defendant argues that the court proceedings Amann attended in pursuit of his GRAMA requests would not fall under this section. The court disagrees.

The plain language of the statute, "court proceeding," includes a court hearing that Plaintiff attended pursuant to his GRAMA request. Defendant argues that this reading of the statute "would lead to an absurd result where any public employees who participated in a divorce proceeding, for example, in their personal capacity could automatically be afforded 'whistleblower' protections." ECF No. 417 at 4.

Defendant's argument is unpersuasive. First, that statute contains no requirement that the participation in a court proceeding be in a non-personal capacity. Second, a divorce proceeding is not analogous to the GRAMA proceedings at issue here, especially in the context of the Whistleblower Act. These GRAMA proceedings, according to Plaintiff, represent his attempts to obtain information about the Attorney General's Office's violations of law, which is exactly the type of activity the Whistleblower Act seeks to protect. Thus, evidence that Plaintiff participated in GRAMA proceedings prior to his termination is highly probative of whether Defendant violated

17

Section 67-21-3(2) of the Act if Plaintiff can show that his participation in the GRAMA proceedings was a cause of his termination. Accordingly, the court DENIES Defendant's Motion in Limine No. 5. ECF No. 417. Evidence of Plaintiff's participation in GRAMA proceedings prior to his termination is highly probative of his claim under the Whistleblower Act.

### F.    Motion to Exclude Defendant's Alleged Retaliation against Hanks (No. 6)

Defendant next moves to exclude evidence of Defendant's alleged retaliation against Jason Hanks. ECF No. 418. Defendant argues that this evidence is inadmissible under Rules 402, 403, and 404(b). Hanks was employed by the Attorney General's Office until he resigned in 2015. Prior to his resignation, he made several complaints about sexual and gender harassment, a hostile workplace, and retaliation. Like Plaintiff, Hanks also complained about Poulson, her criminal history, her lack of qualifications for her position, and her alleged affair with Barlow.

Defendant's treatment of Hanks is highly probative of whether it retaliated against Plaintiff. Both made complaints about the work environment, mistreatment, and legal improprieties of the Attorney General's Office around the same time, when Attorney General Sean Reyes was in office. And both were placed on administrative leave by Bridget Romano before either resigning or being terminated. Further, Hanks has also filed a Whistleblower Act claim against the Attorney General's Office in state court. Thus, there is a sufficient "nexus" between the treatment of Hanks and Plaintiff, enough for Hanks' testimony to be highly probative of whether Plaintiff was similarly retaliated against for communicating protected information. *See Gaige v. SAIA Motor Freight Line, LLC*, 672 Fed. Appx. 787, 790 (10th Cir. 2016) ("Whether a logical nexus exists depends on many factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case." (internal quotation marks omitted)).

18

The court cautions, however, that evidence of Defendant's alleged retaliation against Hanks is impermissible character evidence under Rule 404(b) if it is used to show that Defendant also retaliated against Plaintiff. But the evidence may be used for another permissible purpose under Rule 404(b), for example, to show motive or intent. Plaintiff supported Hanks in filing grievances against the Attorney General's Office in 2015. Defendant's treatment of Hanks is also the subject of Plaintiff's Executive Branch Ethics Commission ("EBEC") complaint, which is one of the communications that Plaintiff alleges is protected under the Whistleblower Act. Thus, evidence of Defendant's alleged retaliation against Hanks and Plaintiff's reporting of it can be used to prove Defendant's motive or intent in firing Plaintiff.

During the final pretrial conference, Defendant expressed concern that introducing Hanks' long list of grievances would risk wasting time at trial. Plaintiff responded that he does not intend to introduce all of Hanks' grievances, only evidence that he was similarly placed on administrative leave after allegedly engaging in protected activity under the Whistleblower Act. Defendant did not object to Plaintiff's proposition. Accordingly, the court PARTIALLY GRANTS and PARTIALLY DENIES Defendant's Motion in Limine No. 6. ECF No. 418. Plaintiff may introduce evidence of Defendant's alleged retaliation against Hanks to show the Attorney General's Office's motive or intent in firing Amann.

### G.    Motion to Exclude the 2015 Performance Audit (No. 7)

Defendant next moves to exclude the 2015 Performance Audit of the Office of the Utah Attorney General ("the Audit") and its Implementation Status Report ("Status Report") in response the Audit. ECF No. 419. Defendant argues this evidence is irrelevant, inadmissible under Rule 404(b), and risks confusing the issues and wasting time. Plaintiff cites the Audit in his Executive

19

Branch Ethics Commission ("EBEC") complaint against Attorney General Sean Reyes, which alleges that Reyes made false claims in response to the Audit. Plaintiff argues that his EBEC complaint is protected activity under the Whistleblower Act. Thus, the EBEC complaint is highly relevant to Plaintiff's Whistleblower Act claim. And to the extent the Status Report is offered as evidence of false responses Reyes made to the Audit, it would be highly relevant to demonstrate Plaintiff's alleged protected communication under the Act. *See* UTAH CODE ANN. § 67-21-3(1)(a) (prohibiting an employer from retaliating against an employee for communicating in good faith "as it relates to a state government employer . . . unethical conduct").

Defendant also argues that the Audit is impermissible character evidence under Rule 404(b). Plaintiff responds that the Audit evidence "documents institutional patterns and practices related to whistleblowing. The Audit identified concerns [that the Attorney General's Office's] reporting processes were inadequate, particularly when an employee needed to report misconduct by a superior in their chain of command. These inadequacies illustrate the Attorney General's Office's pattern of disregarding Amann and other employees' whistleblowing complaints." ECF No. 449 at 5. And "[e]vidence of . . . an organization's routine practice may be admitted to prove that on a particular occasion the . . . organization acted in accordance with the habit or routine practice." FED. R. EVID. 406. The audit itself states that "[a]reas of concern identified in this report have been long standing issues that preceded the current [Attorney General]." ECF No. 419-1 at 14. Thus, the Audit is evidence of the Attorney General's Office's longstanding practices. To the extent the Audit is used to prove Defendant's routine practice, it is admissible under Rule 406.

Finally, Plaintiff notes that "[t]he Status Report has not been identified as an exhibit and thus could and would only be used as impeachment evidence." ECF No. 449 at 2. The Status

Report discusses how Defendant implemented the Audit's recommendations, including whistleblower reporting recommendations. And one of the allegations Plaintiff makes in his EBEC complaint is the fact that Reyes lied about the whistleblower reporting measures that the Attorney General's Office implemented following the Audit. Thus, the Status Report is relevant to prove which measures were implemented following the Audit to determine whether Plaintiff's allegation regarding Reyes' responses to the Audit are protected communication. Accordingly, the court DENIES Defendant's Motion in Limine No. 7. ECF No. 419.

### H.    Motion to Quash Trial Subpoena to Former Attorney General Reyes (No. 8)

Defendant next moves to quash the trial subpoena to former Attorney General Sean Reyes. ECF No. 420. During the discovery phase of the case, the Tenth Circuit held that Plaintiff had failed to make a sufficient showing under the extraordinary circumstances test to depose General Reyes given his position as an important public official. ECF No. 408.

Under the extraordinary circumstances test, before a plaintiff may depose an important public official, the plaintiff must show: "(1) the official has first-hand knowledge related to the claim being litigated; (2) the testimony will likely lead to the discovery of admissible evidence[;] (3) the deposition is essential to the party's case[;] and (4) the information cannot be obtained from an alternative source or via less burdensome means." *Id.* at 1264. While Plaintiff made a showing of the first and second elements, he failed to show that a deposition was essential to his case and that the information could not be obtained from an alternative source or via less burdensome means. Therefore, the Tenth Circuit ordered that Plaintiff was not entitled to depose General Reyes. Following the Tenth Circuit's ruling, Plaintiff followed the alternative and less burdensome means of propounding interrogatories to General Reyes.

21

Plaintiff has now subpoenaed General Reyes to testify at trial. And Defendant again objects based on the extraordinary circumstances test, arguing that Plaintiff has failed to show that the testimony he seeks is essential to his case and cannot be obtained by alternative or less burdensome means. The rationale behind the extraordinary circumstances test applies equally to deposition and trial testimony. *See In re Off. Of the Utah AG*, 56 F.4th 1254 (10th Cir. 2022) ("Other circuits have concluded that high-ranking executive officials should not, absent extraordinary circumstances, *be called to testify* or be deposed concerning issues relating to their official duties." (emphasis added)).

But the extraordinary circumstances test contemplates that a plaintiff seeking essential evidence through the testimony of an important public official is entitled to obtain that evidence through an alternative source or through less burdensome means. In this case, Defendant has produced several emails tying General Reyes to Plaintiff's termination even though General Reyes has denied any involvement in the termination decision. Plaintiff seeks to admit these emails to demonstrate that General Reyes harbored a retaliatory animus toward him which resulted in his termination.

The court finds that introducing these emails is essential to Plaintiff's case. But for reasons that Defendant was either unable or unwilling to articulate at the final pretrial conference, Defendant refuses to stipulate to the authenticity and admissibility of these emails—even though they were produced by Defendant in discovery and Defendant's prior interrogatory responses

22

confirm that they were written and sent by General Reyes.[1] Given the lack of any articulated basis for objecting to their authenticity or admissibility, the court overrules Defendant's objection to their admission and finds that their admission is a less burdensome means for presenting this essential evidence to the jury than calling General Reyes as a witness. The court will therefore quash the subpoena to General Reyes, but only upon the condition that the emails be admitted into evidence.

The court also takes this opportunity to address the question of the admissibility of General Reyes' answers to interrogatories. At the final pretrial conference, Defendant argued that it should be able to introduce the interrogatory answers into evidence. Plaintiff objected that the answers constitute inadmissible hearsay unless offered by Plaintiff as an admission of a party opponent. The court agrees with Plaintiff and sustains its objection.

Reyes' answers to interrogatories would be hearsay if offered by Defendant in this case. The Federal Rules of Evidence provide that "[a]n answer to an interrogatory may be used to the extent allowed by the Federal Rules of Evidence." FED. R. EVID. 33(c). If Defendant offers Reyes' interrogatory answers to provide an explanation for the statements in the emails, it would be offering those statements to prove the truth of the matters asserted in them. *See* FED. R. EVID. 801.

---

[1]For example, Reyes admits in his answer to Interrogatory No. 12 that he sent the text stating that Plaintiff wants to "burn us to the ground" to his campaign consultant. ECF No. 389-1 at 11. And Reyes admits in his answer to Interrogatory No. 11 that he placed Plaintiff on a to do list because of an employment dispute and that he emailed that list to his personal email from his home computer. *Id.* at 10-11. Because Reyes sent the email to himself, he is the *only* potential witness who can testify as to its authenticity.

And those reasons would be offered to the jury without any opportunity for Plaintiff to cross-examine General Reyes, which is the very purpose of the hearsay rule. *United States v. Cesareo-Ayala*, 576 F.3d 1120, 1130 (10th Cir. 2009) ("The role of the hearsay rule . . . is to protect against statements that cannot be challenged by cross-examining the speaker. Cross-examination can expose problems with the speaker's perception, memory, or truthfulness."). On the other hand, Plaintiff may admit any prior statement of Reyes as an opposing party's statement. *See* FED. R. EVID. 802(d)(2). Thus, if offered by Plaintiff, Reyes' interrogatory answers are not hearsay.

Nothing in the Tenth Circuit's prior ruling regarding the extraordinary circumstances test allows the court to depart from the Federal Rules of Evidence or the fundamental principles of the American judicial system. The purpose of the extraordinary circumstances test is to provide an alternative to the deposition or testimony of high-ranking officials *if called to testify* by an opposing party. But nothing in the extraordinary circumstances test prevents a public official (or in this case a former public official) from choosing to testify voluntarily to help his case or to explain evidence that may be harmful to his case. Therefore, to the extent General Reyes wishes to explain the emails to the jury, he as the *option*, but not the obligation, of appearing voluntarily to testify at trial. But he may not avoid cross-examination by offering his interrogatory answers in lieu of his testimony. Accordingly, the court GRANTS Defendant's Motion in Limine No. 8. ECF No. 420.

### Motion to Exclude Evidence of Relationships (No. 9)

Finally, Defendant moves to exclude evidence of other relationships that Barlow or Poulson may have engaged in with coworkers in the Attorney General's office. ECF No. 438. Defendant is not seeking to exclude evidence of any relationship Barlow or Poulson had with each other, but

24

rather any evidence of relationships they had with other members of the office. Defendant argues this evidence is inadmissible under Rules 401, 402, 403, and 404(b).

Plaintiff argues that evidence of Poulson's and Barlow's affairs with other people is relevant to show Defendant did not apply disciplinary standards consistently. Any inconsistency, Plaintiff argues, would violate the Attorney General's Office's Policy. Thus, the affairs may be relevant to Plaintiff's breach of contract claim. But the issue of inconsistent treatment would only be relevant if Plaintiff's transfer from ICAC became an issue, which the court previously noted, will only be admitted if Plaintiff opens the door. *See supra* §I(E). Therefore, the court will admit evidence of such relationships only if Plaintiff opens the door to Defendant's treatment of Plaintiff following his affair.

If Plaintiff admits evidence of Poulson's or Barlow's relationships with other people to show disparate treatment, then Plaintiff would not be admitting the evidence to show Poulson or Barlow acted in accordance with a certain character trait. Thus, this evidence is admissible under Rule 404(b) as long as Plaintiff uses it to call into question the stated motive of Defendant in transferring him from ICAC. Accordingly, the court provisionally GRANTS Defendant's Motion in Limine No. 9. ECF No. 438. The evidence is excluded as long as the parties do not open the door to Defendant's reason for transferring Plaintiff from ICAC in 2013.

## CONCLUSION & ORDER

For the foregoing reasons, the court the court **GRANTS** Plaintiff's Motions in Limine Nos. 2, 3, 4, and 5 (ECF Nos. 423, 424, 425, 426) and **PARTIALLY GRANTS** and **PARTIALLY DENIES** Plaintiff's Motions in Limine Nos. 1 and 6 (ECF Nos. 422, 428). The court also **GRANTS** Defendant's Motions in Limine Nos. 1, 2, 8, and 9 (ECF Nos. 413, 414, 420, 438), **DENIES** Defendant's Motions in Limine Nos. 4, 5, and 7 (ECF Nos. 416, 417, 419), and **PARTIALLY GRANTS** and **PARTIALLY DENIES** Defendant's Motions in Limine Nos. 3 and 6 (ECF No. 415, 418).

DATED May 7, 2025

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge