IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| PAUL G. AMANN,<br><br>     Plaintiff,<br><br>v.<br><br>OFFICE OF THE UTAH ATTORNEY GENERAL,<br><br>     Defendant. | MEMORANDUM DECISION AND ORDER DENYING PLAINTIFF'S MOTION FOR A NEW TRIAL UNDER RULE 60 AND AFFIRMING THE CLERK'S TAXATION OF COSTS<br><br>Case No. 2:18-cv-00341-JNP<br><br>Chief District Judge Jill N. Parrish |

A jury found in favor of Defendant the Office of the Utah Attorney General (the "Office") on Plaintiff Paul Amann's ("Amann") claims for breach of contract and violation of the Utah Whistleblower Act ("Whistleblower Act"), Utah Code Ann. §§ 67-21-1 to -10. ECF No. 520 ("Jury Verdict"). The court has already denied Amann's motion for a new trial under Federal Rule of Civil Procedure 59. ECF No. 541 ("Pl.'s Rule 59 Mot."); ECF No. 584 ("Mem. Decision & Order Denying Pl.'s Rule 59 Mot."). Now before the court are two additional post-trial motions brought by Amann: (1) a motion for relief from the final judgment under Federal Rule of Civil Procedure 60; and (2) a motion raising objections to the clerk of court's taxation of costs under Federal Rule of Civil Procedure 54(d)(1). ECF No. 567 ("Pl.'s Rule 60 Mot."); ECF No. 569 ("Pl.'s Costs Mot."); ECF No. 565 ("Taxation of Costs"). For the reasons below, the court DENIES Amann's motion for relief under Rule 60 and OVERRULES Amann's objections to the taxation of costs.

## BACKGROUND[1]

This case arises from an employment dispute where Amann alleged that he was unlawfully terminated by his employer, the Office—who, in turn, maintained that it legally terminated Amann for harassing another employee, Cynthia Poulson ("Poulson"). Chief Civil Deputy Bridget Romano ("Romano") placed Amann on administrative leave in late 2015 and issued a notice of intent to terminate Amann's employment based on her conclusion that Amann had harassed Poulson by sending a disparaging packet to a conference that Poulson had attended. After reviewing Romano's recommendation and reaching the same conclusion, Solicitor General Tyler ("Green") officially terminated Amann in 2016.

Amann brought suit, denying that he sent the packet and alleging that he had been unlawfully terminated for participating in official investigations and court proceedings that constituted protected whistleblower activity. ECF No. 2-1 ("First Am. Compl."); ECF No. 89 ("Second Am. Compl."). He brought claims against the Office, Attorney General Sean Reyes ("Reyes"), and various officials allegedly involved in his termination. Second Am. Compl. The court entered summary judgment on all of Amann's claims, except for the claims brought against the Office under the Whistleblower Act and for breach of contract. ECF No. 380 ("Summ. J. Order") at 27. Following an eight-day trial, the jury returned a verdict against Amann on his remaining claims. Jury Verdict.

After filing a motion for a new trial under Federal Rule of Civil Procedure 59—which has already been reviewed by the court and denied—Amann filed two additional motions. First,

---

[1] For a more detailed discussion of the relevant background, see Mem. Decision & Order Denying Pl.'s Rule 59 Mot. at 1–4.

Amann moves for relief under Federal Rule of Civil Procedure Rule 60 based on evidence that was discovered by the Office and disclosed to Amann after trial. Pl.'s Rule 60 Mot. This new evidence is a file labeled "Children's Justice Division Internal Review" that consists of the following: (1) the cover of the folder; (2) a typed document, dated January 13, 2014, listing "points of contacts" and "issues"; (3) a sticky note, labeled "Personnel: Barlow Internal Review"; (4) a page of notes written by Reyes regarding allegations that Poulson was engaging in misconduct with another Office employee, Craig Barlow ("Barlow"); and (5) copies of articles, published by a blogger Lynn Packer ("Packer") in January 2014, raising the allegations regarding Poulson and Barlow. ECF No. 567-7 ("New Evidence"). Based on this evidence, Amann asks the court to award a new trial or grant his previously filed motion for default judgment. Pl.'s Rule 60 Mot. at 10; ECF 268 ("Pl.'s Mot. for Default J."). Second, Plaintiff moves for the court to review and retax the costs taxed by the clerk under Federal Rule of Civil Procedure 54(d)(1) based on his objections. Pl.'s Costs Mot. The court considers these requests in turn.

## DISCUSSION

### I.      Rule 60 Motion

Under Rule 60, "the court may relieve a party . . . from a final judgment, order, or proceeding" based on a variety of enumerated factors—including "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)"—and "any other reason that justifies relief." FED. R. CIV. P. 60(b). Rule 60 "provides [the] court[] with a 'grand reservoir of equitable power to do justice in a particular case'" and, accordingly, the court "has substantial discretion to grant relief as justice requires." *F.D.I.C. v. United Pac. Ins. Co.*, 152 F.3d 1266, 1272 (10th Cir. 1998) (quoting *In re Gledhill*, 76 F.3d 1070, 1080 (10th Cir. 1996)). But, at the same time, "such relief 'is extraordinary and may only be

granted in exceptional circumstances.'" *Id.* (quoting *Bud Brooks Trucking, Inc. v. Bill Hodges Trucking Co.*, 909 F.2d 1437, 1440 (10th Cir. 1990)).

In order "[f]or newly discovered evidence to provide a basis for a new trial under Rule 60(b)(2), the moving party must show" the following:

> (1) the evidence was newly discovered since the trial; (2) the moving party was diligent in discovering the new evidence; (3) the newly discovered evidence could not be merely cumulative or impeaching; (4) the newly discovered evidence is material; and (5) that a new trial with the newly discovered evidence would probably produce a different result.

*Zurich N. Am. v. Matrix Serv., Inc.*, 426 F.3d 1281, 1290 (10th Cir. 2005) (citation modified); *Graham by Graham v. Wyeth Lab'ys, Div. of Am. Home Prods. Corp.*, 906 F.2d 1399, 1416 (10th Cir. 1990). Amann falls well short of these requirements.

As an initial matter, the evidence is cumulative because Amann already had received information in discovery indicating that Reyes had suspected that Amann had been the source of the leak to Packer. ECF No. 576-16 ("Def.'s Ex. 17") at 7 ("[I]t is General Reyes' recollection that Mr. Amann and others were suspected of being involved in the release of information to Packer."). It also is immaterial because the notes written by Reyes in 2014 are not linked to Green's decision to terminate Amann in 2016. And, more fatally, Amann comes nowhere close to demonstrating that this new evidence would likely lead to a different result at trial.

Even if the evidence somehow shed meaningful light on Reyes's "knowledge of, interest in, and feelings about . . . Amann's whistleblowing"—as Amann suggests—a jury could easily conclude that it is still irrelevant on the basis that Reyes played no role in the decision to discipline and terminate Amann. Pl.'s Rule 60 Mot. at 13; ECF No. 526 ("Trial Tr. Vol. 4") at 906; ECF No. 527 ("Trial Tr. Vol. 5") at 966–67. Reyes's feelings toward Amann, however forceful and extreme,

are simply beside the point insofar as Reyes was not involved with the conduct at issue in Amann's claims.

Separately, Amann's argument regarding the importance of this new evidence fails because it rests on the false assumption that his theory of the case was "that he was retaliated against starting in 2014 due to the misconception that he was responsible for the black eye . . . Reyes'[s] new administration suffered due to the information provided to blogger Lynn Packer about . . . Poulson and . . . Barlow." Pl.'s Rule 60 Mot. at 17. But as a matter of fact, Amann alleged that he was terminated for his participation in formal investigations and legal proceedings, which had nothing to do with Packer and occurred later in time. ECF No. 89 ("Second Am. Compl.") ¶¶ 126–39. Thus, even if the evidence "establishes . . . Reyes's motive to retaliate against . . . Amann" for disclosing information to Packer, it still does not establish a connection to the protected activity at issue in Amann's claims—and may even undermine the claims he advanced at trial by suggesting an alternative causal explanation as to why he was terminated. Pl.'s Rule 60 Mot. at 17.

And as the court previously noted, this new evidence does not "undermine the crucial fact that the jury had ample credible evidence to simply disbelieve Amann's trial testimony that he did not send the . . . packet [disparaging Poulson] and conclude that Amann was, therefore, lawfully terminated for harassing a fellow employee." Mem. Decision & Order Denying Pl.'s Rule 59 Mot. at 25–26.

In short, Amann's present argument, which emphasizes the importance of Reyes and Packer's reporting, is simply inconsistent with the claims and evidence that he brought to the court over the course of three years of litigation. Having presided over Amann's trial for eight days and carefully reviewed the evidence presented therein, the court finds it vanishingly unlikely that the

new evidence would lead to a different outcome. Equity and justice demand much more than such metaphysical doubt to justify the enormous costs of a new trial.

Without clearly identifying the applicable legal standard, Amann also suggests that the court should revisit a previous order and "grant a default judgment against [the Office] for its failure to implement a litigation hold and produce requested relevant documents in discovery." Pl.'s Rule 60 Mot. at 19. The argument is without merit. Previously, Amann moved for default judgment as a sanction on the grounds that the Office had failed to adequately implement a litigation hold. ECF No. 286 ("Pl.'s Mot. for Sanctions"). Finding that Amann had failed to establish bad faith on the part of the Office, the court denied the motion. ECF No. 325 ("Mem. Decision & Order Denying Cross Mots. for Sanctions"). The newly discovered evidence fails to shift the calculus and establish bad faith given the reality of litigation where inadvertent discovery mistakes frequently occur.[2]

Accordingly, Amann's motion for Rule 60 relief is DENIED. Rule 60 relief is reserved for extraordinary circumstances, and nothing is more ordinary than some evidence of only marginal relevance slipping through the cracks of discovery.

---

[2] In connection to this request for default judgment, Amann raises additional arguments based on false characterizations of the new evidence. First, Amann argues that the new evidence would have changed the outcome of the Tenth Circuit's extraordinary circumstances test. Pl.'s Rule 60 Mot. at 19–22. But the court rejects this argument for the reasons discussed in its previous order. *See* Mem. Decision & Order Denying Pl.'s Rule 59 Mot. at 24. Second, Amann argues that the new evidence would have allowed Amann's First Amendment claims to survive summary judgment. Pl.'s Rule 60 Mot. at 22–24. But this argument in fact invokes a First Amendment claim—that Amann was terminated "for purportedly providing information about . . . Poulson's criminal history to the NCFI"—which has never been raised until this motion. *Id.* at 23; Second Am. Compl. ¶¶ 146–59. And, apart from these problems, Amann fails to explain why default judgment is the appropriate remedy merely because events may have turned out differently if the evidence had been timely disclosed. Surely, a losing party cannot be entitled to default judgment whenever he learns that his opponent has engaged in misconduct that may have altered the course of the litigation.

## II.    Objections to Taxation of Costs

Amann objects to the taxation of costs entered by the clerk of court under Federal Rule of Civil Procedure 54(d)(1) and asks the court to either (1) deny all costs to the Office or (2) substantially reduce the taxed costs based on the applicable statute. Pl.'s Costs Mot. at 2. The court denies both requests, overrules Amann's objections, and affirms the clerk's taxation of costs.

After carefully reviewing the Office's proposed bill of costs and Amann's objections, the clerk of court taxed $38,068.96 in costs pursuant to 28 U.S.C. § 1920. Taxation of Costs; ECF No. 367 ("Def.'s Bil of Costs"); ECF No. 538 ("Def.'s Bill of Costs Supporting Me."); ECF No. 539 ("Pl.'s Objs. to Def.'s Bill of Costs"). These costs, which Amann must reimburse, consist of the following: (1) $689 for filing and pro hac vice admissions fees; (2) $485 for service of subpoenas and witnesses; (3) $22,296.81 for printed or electronically recorded transcripts; and (4) $14,887.15 for exemplification and the costs of making copies. Taxation of Costs at 2–6. Under § 1920, some costs—such as costs for transcripts and exemplification—are only taxable to the extent that they are "necessarily obtained for use in the case." 28 U.S.C. § 1920 (2), (4). This standard requires the court to determine the extent to which materials are "reasonably necessary to the litigation of the case" based "on the particular facts and circumstances at the time the expense was incurred" without "the benefit of hindsight." *In re Williams Sec. Litig.-WCG Subclass*, 558 F.3d 1144, 1148 (10th Cir. 2009) (citation modified).

At the outset, Amann argues that the court should exercise its discretion and deny costs in full, even to the extent that they are available under § 1920 and were reasonably necessary. *See* Pl.'s Costs Mot. at 3–4. While the court retains some discretion to order otherwise, "Rule 54(d) creates a presumption that the prevailing party shall recover costs." *Klein v. Grynberg*, 44 F.3d 1497, 1506 (10th Cir. 1995). Indeed, denying costs to the prevailing party is a "severe penalty"

and should be limited to rare circumstances, such the following: "(1) the prevailing party is only partially successful, (2) the prevailing party was obstructive and acted in bad faith during the course of the litigation, (3) damages are only nominal, (4) the nonprevailing party is indigent, (5) costs are unreasonably high or unnecessary, or (6) the issues are close and difficult." *Debord v. Mercy Health Sys. of Kansas, Inc.*, 737 F.3d 642, 659–60 (10th Cir. 2013) (citation modified). Amann suggests that the Office acted in bad faith by failing to disclose evidence and failing to comply with Utah's procurement statute when it hired counsel. Pl.'s Costs Mot. at 3–4. But Amann does not demonstrate that either alleged omission reflected any bad faith—let alone enough bad faith to justify severe sanctions. Nor does Amann establish a nexus between these supposed acts of bad faith and the taxed costs. And while Amann briefly notes that "the issues were clearly 'close and difficult,'" this cursory speculation does not justify sanctions against the Office. *Id.* at 3.

In the alternative, Amann argues that "significant reductions [to the taxed costs] are warranted because [the Office] has not carried its burden to show that the largest categories were necessarily obtained for use in the case, rather than incurred for convenience or generalized trial preparation." *Id.* at 4. But these arguments are to no avail.

First, Amann asserts that the clerk erroneously taxed the filing fee because "Amann filed this case originally in state court" and "[i]t was not necessary for [the Office] to remove the case to federal court and incur another filing fee." *Id.* at 4. However, § 1920 itself indicates that "[f]ees of the clerk" are taxable without any showing of necessity. *See* 28 U.S.C. § 1920(1). And courts have taxed filings fees associated with removal without requiring any strict showing that removal was necessary. *See, e.g.*, *Peterson v. Exide Techs.*, No. 09-4122-SAC, 2012 WL 3245469, at *2 (D. Kan. Aug. 9, 2012). In any event, the court concludes that the Office's decision to file a notice of

removal—while certainly contestable—is well "within the bounds of vigorous advocacy" and merits reimbursement. *In re Williams*, 558 F.3d at 1148 (citation modified).

Second, Amann argues that the clerk erroneously taxed $130 for "private service charge[s] to AT&T and T-Mobile" without a showing of necessity, especially given that "subpoenas to third-party providers can often be effectuated without personal service." Pl.'s Costs Mot. at 4–5. But "[c]ourts generally allow service fees to private process servers as taxable up to the amount that would have been incurred if the [United States Mashall Service] had effected service" and, here, the clerk of the court has determined that the private service charges fall within this permissible range. *CleanCut, LLC v. Rug Dr.*, No. 2:08CV836, 2015 WL 5599880, at *2 (D. Utah Sept. 22, 2015); Taxation of Costs at 2–3. Amann does not challenge this determination. Moreover, the AT&T and T-Mobile phone records were appropriately presented at trial. *See* ECF No. 579 ("Def.'s Opp'n to Pl.'s Costs Mot.") at 5–6 (collecting trial evidence). Thus, the court concludes that the private service charges were reasonably necessary and properly taxed.

Third, Amann challenges the taxation of transcript costs on the grounds that (1) it included costs for obtaining hearing transcripts, which are not necessary "since hearings are followed by an order as a matter of course"; and (2) the charges for trial transcripts included an unnecessary "next-day" charge to receive the transcripts on an expedited basis. Pl.'s Costs Mot. at 5–6. But as the Office explains in detail, hearing transcripts were necessary to understand the full parameters of the court's orders and Amann's legal positions. Def.'s Opp'n to Pl.'s Costs Mot. at 7–8. And the Office's request for expedited daily transcripts "were reasonably necessary for AGO to cross-examine witnesses (including Amann who testified twice on three separate days), draft Rule 50 motions, and to prepare closing argument to accurately represent testimony after nearly two weeks of trial." *Id.* at 6.

Fourth, Amann argues that the taxation of exemplification and copying is improper because the Office "has not provided a verified and reasonably detailed itemization that would permit meaningful review of the claimed exemplification and copying costs." Pl.'s Costs Mot. at 6. However, the Tenth Circuit has held that "a description of each copy, replete with an explication of its use, is not necessarily required" and that "the burden of justifying copy costs is not a high one." *In re Williams*, 558 F.3d at 1149 (citation modified). The court agrees with the clerk of court and holds that the Office has provided adequate justification in its briefing. *See* Taxation of Costs at 5–6; ECF No. 552 ("Def.'s Bill of Costs Reply") at 11–14. Amann's arguments to the contrary grossly inflate the applicable standard.

Thus, Amann's objections are OVERRULED. The court AFFIRMS and ADOPTS IN FULL the clerk's taxation of costs.[3]

## CONCLUSION AND ORDER

For the reasons above, the court DENIES Amann's motion for a new trial under Rule 60 and OVERRULES Amann's objections to the clerk of court's taxation, which are AFFIRMED and ADOPTED IN FULL.

---

[3] Because Amann's Rule 59 and Rule 60 motions are denied, Amann's request for the court to stay enforcement of a cost award until after it has decided these motions is moot and need not be addressed. *Compare* Pl.'s Costs Mot. at 2 *with* Def.'s Opp'n to Pl.'s Costs Mot. at 12 (disagreeing over whether such a stay would be proper).

DATED July 28, 2026

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge